# WITNESS AND EXHIBIT LIST

| | |
|---|---|
| | UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF TEXAS<br>HOUSTON DIVISION |
| **Case No. 23-34815** | In re Galleria 2425 Owner, LLC |
| | COURTROOM STAFF: |
| | DATE: July 24, 2024, 11:00 a.m. |
| | **PARTY'S NAME: 2425 WL, LLC** |
| | ATTORNEY'S NAME: H. Gray Burks, IV |
| | ATTORNEY'S PHONE: 713-897-1297 |
| | NATURE OF PROCEEDINGS:<br>Hearing on Trustee's Objection to Claim No. 7 of 2425 WL LLC [ECF No. 402] |
| **WITNESSES:** | |
| Ali Choudhri | |
| Mona E. Dajani | |
| | |
| | |
| | |

| NO. | DESCRIPTION OF EXHIBITS | Offered | Objection | Admitted | Disposition After Trial |
|---|---|---|---|---|---|
| 1 | Proof of Claim of 2425 WL, LLC filed 03/21/2024 (Claim No. 7-1) | | | | |
| 2 | Amended Proof of Claim of 2425 WL, LLC filed 06/28/2024 (Claim No. 7-2) | | | | |
| 3 | Promissory Note dated May 23, 2018 | | | | |
| 4 | Deed of Trust dated May 23, 2018 | | | | |
| 5 | Settlement Statement dated May 24, 2018 | | | | |
| 6 | Notice of Foreclosure Sale by 2425 WL, LLC on second lien | | | | |
| 7 | Substitute Trustee's Deed with Trustee's Affidavit of Sale | | | | |
| 8 | Agency Agreement | | | | |
| 9 | NBK Credit Proposal Summary dated March 8, 2018 | | | | |
| 10 | 2425 WL, LLC Lis Pendens | | | | |
| 11 | Order Expunging 2425 WL, LLC Lis Pendens | | | | |
| 12 | Final Judgment in Divorce Proceeding | | | | |

Respectfully submitted,

*/s/ H. Gray Burks, IV*
H. Gray Burks, IV
State Bar No. 03418320
BurksBaker, PLLC

001343

950 Echo Ln, Suite 300
Houston, Texas 77024
(713) 897-1297
(713) 869-9100 Fax
Email: gray.burks@burksbaker.net
ATTORNEYS FOR 2425 WL, LLC

<u>CERTIFICATE OF SERVICE</u>

I certify that on July 22, 2024, I caused the foregoing document along with exhibits 1-12 to be delivered to the Electronic Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ H. Gray Burks, IV*
H. Gray Burks, IV

Fill in this information to identify the case:

Debtor 1  **Galleria 2425 Owner, LLC**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Southern District of Texas

Case number  **23-34815**

Official Form 410
# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

2425 WL, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Stephen W. Sather
Name

7320 N. MoPac Expwy., Suite 400
Number       Street

Austin                    TX            78731
City                      State        ZIP Code

Contact phone  512-649-3243

Contact email  ssather@bn-lawyers.com

Where should payments to the creditor be sent? (if different)

Name

Number       Street

Austin                    US            78731
City                      State        ZIP Code

Contact phone  5126493243

Contact email  ssather@bn-lawyers.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____ |

| | |
|---|---|
| 7. How much is the claim? | $ _____22,968,231.58_____ . Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Real Esate Lien |

| | |
|---|---|
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**    Deed of Trust<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property:    $ _____<br>Amount of the claim that is secured:    $ _____<br>Amount of the claim that is unsecured:  $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition:    $ _____<br><br>Annual Interest Rate (when case was filed) 10.00 %<br>☑ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____ |

| | |
|---|---|
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

001346

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*    **Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $_____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $_____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.    $_____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    03/21/2024
                     MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

Name    **Ali Choudhri**
         First name    Middle name    Last name

Title    **Manager**

Company    **2425 WL, LLC**
           Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    **2425 West Loop South, 11th Floor**
           Number    Street
           **Houston**    **TX**    **77027**
           City    State    ZIP Code

Contact phone    _____    Email    _____

| | |
|---|---|
| Principal | $ 14,780,332.38 |
| Interest Rate | 10% |
| Start Date | 5/23/2018 |
| Petition Date | 12/5/2023 |
| Intrest Accrued | $  8,187,899.20 |
| Total | $ 22,968,231.58 |

RP-2021-258619
05/11/2021  ER  $66.00

# Deed of Trust

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security number or your driver's license number.**

## Basic Information

**Date:** May 23, 2018

**Grantor:** Galleria 2425 Owner, LLC, a Delaware limited liability company

**Grantor's Mailing Address:** 1001 West Loop South Suite 700, Houston, TX 77027

**Trustee:** Michael O'Connor

**Trustee's Mailing Address:** 11509 S Lonati Dr., Houston, TX 77024

**Lender:** 2425 WL, LLC, a New York limited liability company

**Lender's Mailing Address:** 11509 S Lonati Dr, Houston, TX 77024

**Obligation**

> **Note**
>
> > **Date:** May 23, 2018
> >
> > **Original principal amount:** $14,450,332.38
> >
> > **Borrower:** Galleria 2425 Owner, LLC
> >
> > **Lender:** 2425 WL, LLC
> >
> > **Maturity date:** June 1, 2021
>
> **Other Debt:** N/A

**Property** (including any improvements): that certain real property described on <u>Exhibit A</u> attached hereto.

**Other Exceptions to Conveyance and Warranty:** N/A

## A. Granting Clause

For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property,

1

521550.000001 24808189.2

001349

subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

**B. Grantor's Obligations**

B.1. Grantor agrees to maintain all property and liability insurance coverages with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender, and as to property loss, that are payable to Lender under policies containing standard mortgagee clauses, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender before execution of this deed of trust and again at least ten days before the expiration of the Required Insurance Coverages.

B.2. Grantor agrees to—

a. keep the Property in good repair and condition;

b. pay all taxes and assessments on the Property before delinquency, not authorize a taxing entity to transfer its tax lien on the Property to anyone other than Lender, and not request a deferral of the collection of taxes pursuant to section 33.06 of the Texas Tax Code;

c. defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

d. obey all laws, ordinances, and restrictive covenants applicable to the Property;

e. keep any buildings occupied as required by the Required Insurance Coverages; and

f. notify Lender of any change of address.

**C. Lender's Rights**

C.1. Lender or Lender's mortgage servicer may appoint in writing one or more substitute trustees, succeeding to all rights and responsibilities of Trustee.

C.2. If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

C.3. Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the property insurance proceeds available to Grantor for repairs.

2

*C.4.*    Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

*C.5.*    If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

*C.6.*    **COLLATERAL PROTECTION INSURANCE NOTICE**

In accordance with the provisions of section 307.052(a) of the Texas Finance Code, the Beneficiary hereby notifies the Grantor as follows:

    **(A)**    the Grantor is required to:

        **(i)**    keep the collateral insured against damage in the amount the Lender specifies;

        **(ii)**    purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and

        **(iii)**    name the Lender as the person to be paid under the policy in the event of a loss;

    **(B)**    the Grantor must, if required by the Lender, deliver to the Lender a copy of the policy and proof of the payment of premiums; and

    **(C)**    if the Grantor fails to meet any requirement listed in Paragraph (A) or (B), the Lender may obtain collateral protection insurance on behalf of the Grantor at the Grantor's expense.

*C.7.*    If a default exists in payment of the Obligation or performance of Grantor's obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may—

    a.    declare the unpaid principal balance and earned interest on the Obligation immediately due;

    b.    exercise Lender's rights with respect to rent under the Texas Property Code as then in effect;

    c.    direct Trustee to foreclose this lien, in which case Lender or Lender's

UNOFFICIAL COPY

3

521550.000001 24808189.2



agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

d.    purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

C.8.    Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

### D.    Trustee's Rights and Duties

If directed by Lender to foreclose this lien, Trustee will—

*D.1.*    either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

*D.2.*    sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

*D.3.*    from the proceeds of the sale, pay, in this order—

a.    expenses of foreclosure, including a reasonable commission to Trustee;

b.    to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

c.    any amounts required by law to be paid before payment to Grantor; and

d.    to Grantor, any balance; and

*D.4.*    be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

### E.    General Provisions

*E.1.*    If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor does not, Grantor will be a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

*E.2.*    Recitals in any trustee's deed conveying the Property will be presumed to be true.

*E.3.*    Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.



521550.000001 24808189.2

4

*E.4.*   This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

*E.5.*   If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

*E.6.*   Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

*E.7.*   Grantor collaterally assigns to Lender all present and future rent from the Property and its proceeds. Grantor warrants the validity and enforceability of the assignment. Grantor will apply all rent to payment of the Obligation and performance of this deed of trust, but if the rent exceeds the amount due with respect to the Obligation and the deed of trust, Grantor may retain the excess. If a default exists in payment of the Obligation or performance of this deed of trust, Lender may exercise Lender's rights with respect to rent under the Texas Property Code as then in effect. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent collected under this paragraph as required by the Texas Property Code as then in effect. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies.

*E.8.*   Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

*E.9.*   In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

*E.10.*   Grantor may not sell, transfer, or otherwise dispose of any Property, whether voluntarily or by operation of law, without the prior written consent of Lender. If granted, consent may be conditioned upon (a) the grantee's integrity, reputation, character, creditworthiness, and management ability being satisfactory to Lender; and (b) the grantee executing, before such sale, transfer, or other disposition, a written assumption agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other

5

modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor may not cause or permit any Property to be encumbered by any liens, security interests, or encumbrances other than the liens securing the Obligation and the liens securing ad valorem taxes not yet due and payable without the prior written consent of Lender. If granted, consent may be conditioned upon Grantor's executing, before granting such lien, a written modification agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, an approval fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor may not grant any lien, security interest, or other encumbrance (a "Subordinate Instrument") covering the Property that is subordinate to the liens created by this deed of trust without the prior written consent of Lender. If granted, consent may be conditioned upon the Subordinate Instrument's containing express covenants to the effect that—

     the Subordinate Instrument is unconditionally subordinate to this deed of trust;

  b.  if any action is instituted to foreclose or otherwise enforce the Subordinate Instrument, no action may be taken that would terminate any occupancy or tenancy without the prior written consent of Lender, and that consent, if granted, may be conditioned in any manner Lender determines;

  c.  rents, if collected by or for the holder of the Subordinate Instrument, will be applied first to the payment of the Obligation then due and to expenses incurred in the ownership, operation, and maintenance of the Property in any order Lender may determine, before being applied to any indebtedness secured by the Subordinate Instrument;

  d.  written notice of default under the Subordinate Instrument and written notice of the commencement of any action to foreclose or otherwise enforce the Subordinate Instrument must be given to Lender concurrently with or immediately after the occurrence of any such default or commencement; and

  e.  in the event of the bankruptcy of Grantor, all amounts due on or with respect to the Obligation and this deed of trust will be payable in full before any payments on the indebtedness secured by the Subordinate Instrument.

Grantor may not cause or permit any of the following events to occur without the prior written consent of Lender: if Grantor is (a) a corporation, the termination of the corporation or the sale, pledge, encumbrance, or assignment of any shares of its stock; (b) a limited liability company, the termination of the company or the sale, pledge, encumbrance, or assignment of any of its membership interests; (c) a general partnership or joint venture, the termination of the

6

partnership or venture or the sale, pledge, encumbrance, or assignment of any of its partnership or joint venture interests, or the withdrawal from or admission into it of any general partner or joint   enture; or (d) a limited partnership, (i) the termination of the partnership, (ii) the sale, pledge, encumbrance, or assignment of any of its general partnership interests, or the withdrawal from or admission into it of any general partner, (iii) the sale, pledge, encumbrance, or assignment of a controlling portion of its limited partnership interests, or (iv) the withdrawal from or admission into it of any controlling limited partner or partners. If granted, consent may be conditioned upon (a) the integrity, reputation, character, creditworthiness, and management ability of the person succeeding to the ownership interest in Grantor (or security interest in such ownership) being satisfactory to Lender; and (b) the execution, before such event, by the person succeeding to the interest of Grantor in the Property or ownership interest in Grantor (or security interest in such ownership) of a written modification or assumption agreement containing such terms as Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

E.11.   When the context requires, singular nouns and pronouns include the plural.

E.12.   The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.



E.13.   This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

E.14.   If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

E.15.   Grantor and each surety, endorser, and guarantor of the Obligation waive, to the extent permitted by law, all (a) demand for payment, (b) presentation for payment, (c) notice of intention to accelerate maturity, (d) notice of acceleration of maturity, e protest, (f) notice of protest, and (g) rights under sections 51.003, 51.004, and 51.005 of the Texas Property Code.

E.16.   Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if an attorney is retained for its enforcement.

E.17.   If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

E.18.   The term *Lender* includes any mortgage servicer for Lender.

E.19.   Grantor hereby grants Lender a right of first refusal with respect to Grantor's power to authorize any third party (other than Lender pursuant to its rights as set forth in this instrument) to pay ad valorem taxes on the Property and authorize a taxing entity to transfer its tax lien on the Property to that third party. Grantor's authorization to any third party (other than Lender) to pay the ad valorem taxes and receive transfer of a taxing entity's lien for ad valorem taxes shall be null and void and of no force and effect unless Lender, within ten days after

7

521550.000001 24808189.2

receiving written notice from Grantor, fails to pay the ad valorem taxes pursuant to Lender's rights as set forth in this instrument.

*E.20.* Grantor represents that this deed of trust and the Note are given for the following purposes: evidence and secure the Obligation.

**GRANTOR**:

**GALLERIA 2425 OWNER, LLC,**
a Delaware limited liability company

By:     Galleria 2425 JV, LLC,
          a Delaware limited liability company,
          its Managing Member

By:     Galleria West Loop Investments II LLC,
          its Managing Member

By: _____
Name: Ali Choudhri
Title: Manager

STATE OF TEXAS          §
                                      §
COUNTY OF Harris        §

This instrument was acknowledged before me on this _____ day of _____, 2021, by Ali Choudhri, the Manager of Galleria West Loop Investments II LLC, the Managing Member of Galleria 2425 JV, LLC, a Delaware limited liability company, the Managing Member of Galleria 2425 Owner, LLC, a Delaware limited liability company, on behalf of said limited liability companies.

[SEAL]



Notary Public in and for the
STATE OF TEXAS



STEPHANIE ALVAREZ
Public, State of Texas
Comm. Expires 04-06-2021
Notary ID 131078509

EXHIBIT A
PROPERTY DESCRIPTION

**TRACT 1: FEE TRACT**

BEING 2.4462 ACRES (106,557 SQUARE FEET) OF LAND OUT OF THE WILLIAM WHITE SURVEY, ABSTRACT NO. 836, HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED TO 2425 WEST LOOP, LP BY SPECIAL WARRANTY DEED RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472, SAID TRACT CONVEYED BY DEED TO ONE WEST LOOP PLAZA, LTD. UNDER HCCF NO. S547896 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE WESTHEIMER ROAD (ROW VARIES) BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR. TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST, TO A 1/2 INCH IRON ROD FOUND AT THE NORTHEAST CORNER OF THE 2.3468 ACRE PARCEL BEING THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED PARCEL AND THE POINT OF BEGINNING:

THENCE, WESTERLY ALONG THE COMMON LINE OF THE 2.3468 ACRE PARCEL TO THE SOUTH AND THE HEREIN DESCRIBED PARCEL TO THE NORTH, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 464.50 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY (ROW) LINE OF INTERSTATE 610 WEST LOOP AND THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL FROM, WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST 2.42 FEET;

THENCE, NORTHERLY ALONG THE EASTERLY RIGHT OF WAY LINE OF INTERSTATE 610 WEST LOOP (ROW 350 FEET) NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 251.27 FEET TO AN "X" SET IN CONCRETE BEING THE SOUTHWEST CORNER OF A 7.8998 ACRE PARCEL AS SHOWN ON THE HOUSTON VENTURE PLAT UNRESTRICTED RESERVE "A" FILED IN THE HARRIS COUNTY MAP RECORDS AS FILM CODE NUMBER 356074, AND THE NORTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL;

THENCE, EASTERLY ALONG THE COMMON LINE OF THE ABOVE INDICATED 7.8998 ACRE PARCEL TO THE NORTH AND THE HEREIN DESCRIBED PARCEL TO THE SOUTH NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 406.61 FEET TO AN "X"

9

FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND CONVEYED TO RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

THENCE, SOUTHERLY ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST AND THE HEREIN DESCRIBED PARCEL TO THE WEST, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 244.64 FEET TO THE POINT OF BEGINNING CONTAINING 106,557 SQUARE FEET, 2.4462 ACRES MORE LESS.

**TRACT 2, EASEMENT TRACT:** -20 FOOT NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND NORTHERLY OF AND 20 FEET WIDE ALONG THE ENTIRE NORTHERLY BOUNDARY LINE OF TRACT I; SAID EASEMENT CREATED AND GRANTED BY VI IAN L. SMITH, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF R. E. SMITH, DECEASED IN THAT CERTAIN GENERAL WARRANTY DEED DATED JULY 5, 1977 FILED IN HCCF NO. F216562 AND DESCRIBED IN HCCF NO. G748294, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS INC. IN A DEED RECORDED IN HCCF NO. S056346 AND

THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO A 1/2 INCH IRON ROD FOUND FOR THE SOUTHEAST CORNER OF TRACT I;

THENCE CONTINUING NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 244.64 FEET ALONG A COMMON LINE OF A PREVIOUSLY NOTED 3.4385 ACRE PARCEL OF LAND TO THE EAST AND TRACT I TO THE WEST TO AN "X" FOUND FOR THE NORTHEAST CORNER OF TRACT I AND THE POINT OF BEGINNING;

THENCE, WESTERLY SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 406.61 FEET ALONG THE NORTHERLY LINE OF TRACT 1 TO AN "X" SET ON THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP (350 FEET WIDE);

10

001358



THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO A POINT;

THENCE, EASTERLY 20.00 FEET NORTHERLY FROM AND PARALLEL TO THE NORTHERLY LINE OF TRACT 1, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 401.88 FEET TO A POINT;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST 20.00 FEET TO THE POINT OF BEGINNING AND CONTAINING 0.1856 ACRES OR 8,085 SQUARE FEET OF LAND MORE OR LESS.

**TRACT 3 EASEMENT TRACT:** 20 FOOT NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT;

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND SOUTHERLY OF AND 20.00 FEET WIDE ALONG THE ENTIRE SOUTHERN BOUNDARY LINE OF TRACT 1, SAID EASEMENT CREATED AND GRANTED ON FEBRUARY 16, 1979, FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED FILED IN HCCF NO. G041310, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 184.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING, WHENCE THE SOUTHEAST CORNER OF TRACT 1 BEARS NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 20.02 FEET;

THENCE, WESTERLY 20.00 FEET SOUTHERLY FROM AND PARALLEL TO THE SOUTHERLY LINE OF TRACT 1, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 469.23 FEET TO A POINT IN THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP;

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST, 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO THE

11

SOUTHWEST CORNER FOR TRACT 1 FROM WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST, 2.42 FEET;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 464.80 FEET ALONG THE SOUTHERLY LINE OF TRACT 1 TO A 1/2 INCH IRON ROD FOUND AT THE SOUTHEAST CORNER OF TRACT 1;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 20.02 FEET ALONG THE A COMMON LINE BETWEEN A PREVIOUSLY DESCRIBED 2.3468 ACRES PARCEL TO THE WEST AND A 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING AND CONTAINING 0.2144 ACRES OR 9,337 SQUARE FEET OF LAND, MORE OR LESS.

**TRACT 4 EASEMENT TRACT:** 28 FOOT ROADWAY AND PEDESTRIAN EASEMENT;

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT ACROSS EASTERLY 28 FEET OF A 2.3468 ACRE TRACT ADJACENT TO AND SOUTHERLY OF TRACT 1, CREATED AND GRANTED IN THAT CERTAIN ROAD AND PEDESTRIAN EASEMENT DATED FEBRUARY 16, 1979 FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED, FILED IN HCCF NO. G041313, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULBER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS;

BEGINNING AT A FOUND 5/8 INCH IRON ROD IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, WESTERLY SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, 28.00 FEET ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD TO A POINT;

THENCE, NORTHERLY 28.00 FEET WESTERLY OF AND PARALLEL TO THE EASTERLY LINE OF SAID 2.3468 ARE TRACT NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 205.08 FEET TO A POINT ON THE SOUTHERLY LINE OF TRACT 1;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 28.00 FEET ALONG THE SOUTHERLY LINE OF TRACT 1 TO A 1/2 INCH IRON ROD FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND PRESENTLY OWNED BY RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

12

001360

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 204.61 FEET ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST SAID THE PREVIOUSLY DESCRIBED 2.3468 ACRE PARCEL TO THE WEST, TO THE POINT OF BEGINNING, CONTAINING 0.1317 ACRES OR 5,735 SQUARE FEET (CALLED 5,740) OF LAND MORE OR LESS.

**TRACT 5 EASEMENT TRACT**: 5 FOOT STORM SEWER EASEMENT

A 1,025 SQUARE FOOT TRACT OF LAND, BEING THAT SAME TRACT UN PROPERTIES, LIMITED, RECORDED IN HCCF NUMBER G041311, LOCATED IN THE WILLIAM WHITE SURVEY, ABSTRACT NUMBER 836, CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY (ROW) OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. 5056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR. TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE ALONG THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, A DISTANCE OF 16.00 FEET TO THE SOUTHEAST CORNER OF SAID EASEMENT AND THE HEREIN DESCRIBED TRACT;

THENCE CONTINUING ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST A DISTANCE OF 5.00 FEET, THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING SAID WESTHEIMER ROAD, NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, A DISTANCE OF 204.96 FEET, TO A POINT IN THE SOUTHERLY LINE OF A 2.4462 ACRE TRACT CONVEYED BY DEED TO HB 2425 WEST LOOP, LP RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472;

THENCE ALONG THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST A DISTANCE OF 5.00 FEET TO THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, A DISTANCE OF 204.88 FEET TO THE POINT OF BEGINNING AND CONTAINING 1,025 SQUARE FEET OF LAND, MORE OR LESS.

13

521550.000001 24808189.2

RP-2021-258619
# Pages 14
05/11/2021 12:19 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
TENESHIA HUDSPETH
COUNTY CLERK
Fees  $66.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

001362

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor 1</td><td>Galleria 2425 Owner, LLC</td></tr>
<tr><td>Debtor 2<br>(Spouse, if filing)</td><td></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>Southern District of Texas</td></tr>
<tr><td>Case number</td><td>23-34815</td></tr>
</table>

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:   Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | 2425 WL, LLC<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes.  From whom? _____ |

| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent? (if different)** |
|---|---|---|
| | Stephen W. Sather<br>Name | <br>Name |
| | 7320 N. MoPac Expwy., Suite 400<br>Number     Street | <br>Number     Street |
| | Austin     TX     78731<br>City     State     ZIP Code | Austin     US     78731<br>City     State     ZIP Code |
| | Contact phone 512-649-3243 | Contact phone 5126493243 |
| | Contact email ssather@bn-lawyers.com | Contact email ssather@bn-lawyers.com |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| 4. **Does this claim amend one already filed?** | ☐ No<br>☑ Yes.  Claim number on court claims registry (if known) 7-1 | Filed on <u>03/21/2024</u><br>    MM / DD  / YYYY |
|---|---|---|
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ | |

Official Form 410

**Proof of Claim**

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

7. **How much is the claim?**    $_____22,968,231.58_. Does this amount include interest or other charges?

   ☐ No

   ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

   Limit disclosing information that is entitled to privacy, such as health care information.

   Real Esate Lien

9. **Is all or part of the claim secured?**

   ☐ No

   ☑ Yes.    The claim is secured by a lien on property.

   **Nature of property:**

   ☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

   ☐ Motor vehicle

   ☐ Other. Describe: _____

   **Basis for perfection:**    Deed of Trust

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:**    $_____

   **Amount of the claim that is secured:**    $_____

   **Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:**    $_____

   **Annual Interest Rate** (when case was filed) 10.00 %

   ☑ Fixed
   ☐ Variable

10. **Is this claim based on a lease?**

    ☑ No

    ☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**

    ☑ No

    ☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $_____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $_____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. $_____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   04/10/2024
　　　　　　　　　　　MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Ali Choudhri | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Manager | | |
| Company | 2425 WL, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 2425 West Loop South, 11th Floor | | |
| | Number　　　Street | | |
| | Houston | TX | 77027 |
| | City | State | ZIP Code |
| Contact phone | _____ | Email | _____ |

| | |
|---|---|
| Principal | $ 14,780,332.38 |
| Interest Rate | 10% |
| Start Date | 5/23/2018 |
| Petition Date | 12/5/2023 |
| Intrest Accrued | $ 8,187,899.20 |
| Total | $ 22,968,231.58 |

## PROMISSORY NOTE

**$14,730,332.38 (USD)**

<strong>Houston, Texas<br>May 23, 2018</strong>

**FOR VALUE RECEIVED, Galleria 2425 Owner, LLC** ("Borrower"), a Delaware limited liability company with an address at 1001 W. Loop South, Suite 700 Houston Texas 77027, through its managing member **Galleria 2425 JV, LLC**, a Delaware limited liability company, hereby unconditionally promises to pay to the order of **2425 WL, LLC**, a New York limited liability company, having an address at 11509 S Lou Al Dr Houston Texas 77024 ("Lender"), or at such other place as the holder hereof may from time to time designate in writing, the maximum principal sum of **FOURTEEN MILLION SEVEN HUNDRED AN THIRTY THOUSAND THREE HUNDRED AND THIRTY TWO AND 38/100 DOLLARS ($14,730,332.38)** in lawful money of the United States of America with interest thereon to be computed from the date of this Note at the Applicable Interest Rate, and to be paid in accordance with the terms of this Note, and the Deed of Trust (the "Deed of Trust"), dated as of the date hereof, between Borrowers and Lender (the "Loan Agreement"). All capitalized terms not defined herein shall have the meanings set forth in the Deed of Trust. This Note and the Deeds of Trust are sometimes collectively referred to as the "Loan Documents" or singly as "Loan Document."

### ARTICLE 1 - Payment Terms

Borrowers agree to pay the principal sum of this Note, together with all accrued and unpaid interest thereon, all at the stated regular rate of ten percent (10.00%) per annum (the "Applicable Rate") on or before May 22, 2021 (the "Maturity Date"). Commencing May 23, 2018 and continuing on the 23rd of each subsequent May until the Maturity Date, Borrower agrees to pay to Lender interest-only payments based on the principal sum of this Note and the Applicable Rate.

If Borrowers fail to pay the amount stated in the preceding paragraph, together with all accrued and unpaid interest thereon on or before the Maturity Date, Borrower shall pay to Lender additional interest at the Default Rate of the lesser of eighteen percent (18.00%) per annum (the "Default Rate") or the maximum amount allowed by the laws for the State of New York.

### ARTICLE 2 - Default And Acceleration

The Debt shall without notice become immediately due and payable at the option of Lender if any payment of principal or interest required in this Note is not paid on or prior to the date when due or if not paid on the Maturity Date or on the happening of any other Event of Default and in addition, Lender shall be entitled to receive interest on the entire unpaid principal sum at the Default Rate pursuant to the terms of the Loan Agreement. This Article 2, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

### ARTICLE 3 - Loan Documents

This Note is secured by the Deed of Trust. All of the terms, covenants and conditions contained in any other Loan Document are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein.

### ARTICLE 4 - Savings Clause

This Note and the other Loan Documents are subject to the express condition that at no time shall Borrowers be obligated or required to pay interest on the principal balance of the Loan at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the Maximum Legal Rate. If, by the terms of this Note or any other Loan Document, Borrowers are at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of the Maximum Legal Rate, the Applicable Interest Rate or the Default Rate, as the case may be, shall be deemed to be immediately reduced to the Maximum Legal Rate and all previous payments in excess of the Maximum Legal Rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the sums due under the Loan, shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan until payment in full so that the rate or amount of interest on account of the Loan does not exceed the Maximum Legal Rate of interest from time to time in effect and applicable to the Loan for so long as the Loan is outstanding.

### ARTICLE 5 - No Oral Change

This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrowers or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

### ARTICLE 6 - Waivers

Borrowers and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, notice of intent to accelerate, notice of acceleration, protest, notices of protest and/or of non-payment and any and all other notices of any kind except any such notice expressly required by this Note. No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note or any other Loan Documents made by agreement between Lender or any other Person shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrowers, and any other Person who may become liable for the payment of all or any part of the Debt, under this Note, the Loan Agreement or the other Loan Documents.

No notice to or demand on Borrowers shall be deemed to be a waiver of the obligation of Borrowers or of the right of Lender to take further action without further notice or demand as provided for in this Note, the Loan Agreement or the other Loan Documents. In the case of

- 2 -

001368

Grove, the agreements herein contained shall remain in force and be applicable, notwithstanding any changes in the members comprising Grove, and the term "Borrower" as used herein, shall include any alternate or successor limited liability company, but any predecessor limited liability company shall not thereby be released from any liability. (Nothing in the foregoing sentence shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in such partnership, corporation or limited liability company which may be set forth in any Loan Document.)

## ARTICLE 7 - Transfer

Upon the transfer of this Note, Borrowers hereby waiving notice of any such transfer, Lender may deliver all the collateral mortgaged, granted, pledged or assigned pursuant to the Loan Documents, or any part thereof, to the transferee who shall thereupon become vested with all the rights herein or under applicable law given to Lender with respect thereto, and Lender shall thereafter forever be relieved and fully discharged from any liability or responsibility in the matter accruing from and after the date of the transfer; but Lender shall retain all rights hereby given to it with respect to any liabilities and the collateral not so transferred.

## ARTICLE 8 - Governing Law

This Note shall be governed in accordance with the laws of the State of New York.

## ARTICLE 9 - Notices

All notices or other written communications hereunder shall be delivered to the respective addresses for each such party shown hereinabove, unless the party to whom notice is directed has given notice that its address has changed and provided the party from whom notice is given its new address.

## ARTICLE 10 -

[Intentionally omitted.]

## ARTICLE 11 - Liability

The obligations and liabilities of each Borrower hereunder shall be joint and several.

## [NO FURTHER TEXT ON THIS PAGE]

- 3 -

001369

IN WITNESS WHEREOF, EFFECTIVE as of the day and year first above written.

**BORROWER:**

**GALLERIA 2425 OWNER, LLC,**
a Delaware limited partnership

By: **GALLERIA 2425 JV, LLC**
Its Managing Member

By:_____
Its Authorized Agent

RP-2021-258619
05/11/2021   ER   $66.00

# Deed of Trust

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security number or your driver's license number.**

## Basic Information

**Date:**  May 23, 2018

**Grantor:**      Galleria 2425 Owner, LLC, a Delaware limited liability company

**Grantor's Mailing Address:** 1001 West Loop South Suite 700, Houston, TX 77027

**Trustee:**      Michael O'Connor

**Trustee's Mailing Address:** 11509 S Lou Al Dr., Houston, TX 77024

**Lender:**      2425 WL, LLC, a New York limited liability company

**Lender's Mailing Address:** 11509 S Lou Al Dr., Houston, TX 77024

**Obligation**

> **Note**
>
> > **Date:**  May 23, 2018
> >
> > **Original principal amount:** $14,730,332.38
> >
> > **Borrower:**    Galleria 2425 Owner, LLC.
> >
> > **Lender:**      2425 WL, LLC
> >
> > **Maturity date:**      June 1, 2021
>
> **Other Debt:** N/A

**Property** (including any improvements): that certain real property described on Exhibit A attached hereto.

**Other Exceptions to Conveyance and Warranty:** N/A

**A.      Granting Clause**

For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property,

1

521550.000001 24808189.2

001371

subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

**B.    Grantor's Obligations**

*B.1.*    Grantor agrees to maintain all property and liability insurance coverages with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender, and as to property loss, that are payable to Lender under policies containing standard mortgagee clauses, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender before execution of this deed of trust and again at least ten days before the expiration of the Required Insurance Coverages.

*B.2.*    Grantor agrees to—

    a.    keep the Property in good repair and condition;

    b.    pay all taxes and assessments on the Property before delinquency, not authorize a taxing entity to transfer its tax lien on the Property to anyone other than Lender, and not request a deferral of the collection of taxes pursuant to section 33.06 of the Texas Tax Code;

    c.    defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

    d.    obey all laws, ordinances, and restrictive covenants applicable to the Property;

    e.    keep any buildings occupied as required by the Required Insurance Coverages; and

    f.    notify Lender of any change of address.

**C.    Lender's Rights**

*C.1.*    Lender or Lender's mortgage servicer may appoint in writing one or more substitute trustees, succeeding to all rights and responsibilities of Trustee.

*C.2.*    If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

*C.3.*    Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the property insurance proceeds available to Grantor for repairs.

2

521550.000001 24808189.2

001372

C.4.    Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

C.5.    If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

C.6.    **COLLATERAL PROTECTION INSURANCE NOTICE**

**In accordance with the provisions of section 307.052(a) of the Texas Finance Code, the Beneficiary hereby notifies the Grantor as follows:**

**(A)     the Grantor is required to:**

**(i)                    keep the collateral insured against damage in the amount the Lender specifies;**

**(ii)                   purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and**

**(iii)                  name the Lender as the person to be paid under the policy in the event of a loss;**

**(B)     the Grantor must, if required by the Lender, deliver to the Lender a copy of the policy and proof of the payment of premiums; and**

**(C)     if the Grantor fails to meet any requirement listed in Paragraph (A) or (B), the Lender may obtain collateral protection insurance on behalf of the Grantor at the Grantor's expense.**

C.7.    If a default exists in payment of the Obligation or performance of Grantor's obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may—

a.    declare the unpaid principal balance and earned interest on the Obligation immediately due;

b.    exercise Lender's rights with respect to rent under the Texas Property Code as then in effect;

c.    direct Trustee to foreclose this lien, in which case Lender or Lender's

3

RP-2021-258619

agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

d.    purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

*C.8.*    Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

### D.    Trustee's Rights and Duties

If directed by Lender to foreclose this lien, Trustee will—

*D.1.*    either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

*D.2.*    sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

*D.3.*    from the proceeds of the sale, pay, in this order—

a.    expenses of foreclosure, including a reasonable commission to Trustee;

b.    to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

c.    any amounts required by law to be paid before payment to Grantor; and

d.    to Grantor, any balance; and

*D.4.*    be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

### E.    General Provisions

*E.1.*    If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor does not, Grantor will be a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

*E.2.*    Recitals in any trustee's deed conveying the Property will be presumed to be true.

*E.3.*    Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

RP-2021-258619

4

001374

*E.4.*    This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

*E.5.*    If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

*E.6.*    Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

*E.7.*    Grantor collaterally assigns to Lender all present and future rent from the Property and its proceeds. Grantor warrants the validity and enforceability of the assignment. Grantor will apply all rent to payment of the Obligation and performance of this deed of trust, but if the rent exceeds the amount due with respect to the Obligation and the deed of trust, Grantor may retain the excess. If a default exists in payment of the Obligation or performance of this deed of trust, Lender may exercise Lender's rights with respect to rent under the Texas Property Code as then in effect. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent collected under this paragraph as required by the Texas Property Code as then in effect. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies.

*E.8.*    Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

*E.9.*    In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

*E.10.*    Grantor may not sell, transfer, or otherwise dispose of any Property, whether voluntarily or by operation of law, without the prior written consent of Lender. If granted, consent may be conditioned upon (a) the grantee's integrity, reputation, character, creditworthiness, and management ability being satisfactory to Lender; and (b) the grantee's executing, before such sale, transfer, or other disposition, a written assumption agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other

5

RP-2021-258619

modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor may not cause or permit any Property to be encumbered by any liens, security interests, or encumbrances other than the liens securing the Obligation and the liens securing ad valorem taxes not yet due and payable without the prior written consent of Lender. If granted, consent may be conditioned upon Grantor's executing, before granting such lien, a written modification agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, an approval fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor may not grant any lien, security interest, or other encumbrance (a "Subordinate Instrument") covering the Property that is subordinate to the liens created by this deed of trust without the prior written consent of Lender. If granted, consent may be conditioned upon the Subordinate Instrument's containing express covenants to the effect that—

a.  the Subordinate Instrument is unconditionally subordinate to this deed of trust;

b.  if any action is instituted to foreclose or otherwise enforce the Subordinate Instrument, no action may be taken that would terminate any occupancy or tenancy without the prior written consent of Lender, and that consent, if granted, may be conditioned in any manner Lender determines;

c.  rents, if collected by or for the holder of the Subordinate Instrument, will be applied first to the payment of the Obligation then due and to expenses incurred in the ownership, operation, and maintenance of the Property in any order Lender may determine, before being applied to any indebtedness secured by the Subordinate Instrument;

d.  written notice of default under the Subordinate Instrument and written notice of the commencement of any action to foreclose or otherwise enforce the Subordinate Instrument must be given to Lender concurrently with or immediately after the occurrence of any such default or commencement; and

e.  in the event of the bankruptcy of Grantor, all amounts due on or with respect to the Obligation and this deed of trust will be payable in full before any payments on the indebtedness secured by the Subordinate Instrument.

Grantor may not cause or permit any of the following events to occur without the prior written consent of Lender: if Grantor is (a) a corporation, the termination of the corporation or the sale, pledge, encumbrance, or assignment of any shares of its stock; (b) a limited liability company, the termination of the company or the sale, pledge, encumbrance, or assignment of any of its membership interests; (c) a general partnership or joint venture, the termination of the

RP-2021-258619

6

partnership or venture or the sale, pledge, encumbrance, or assignment of any of its partnership or joint venture interests, or the withdrawal from or admission into it of any general partner or joint    enture; or (d) a limited partnership, (i) the termination of the partnership, (ii) the sale, pledge, encumbrance, or assignment of any of its general partnership interests, or the withdrawal from or admission into it of any general partner, (iii) the sale, pledge, encumbrance, or assignment of a controlling portion of its limited partnership interests, or (iv) the withdrawal from or admission into it of any controlling limited partner or partners. If granted, consent may be conditioned upon (a) the integrity, reputation, character, creditworthiness, and management ability of the person succeeding to the ownership interest in Grantor (or security interest in such ownership) being satisfactory to Lender; and (b) the execution, before such event, by the person succeeding to the interest of Grantor in the Property or ownership interest in Grantor (or security interest in such ownership) of a written modification or assumption agreement containing such terms as Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

> *E.11.*    When the context requires, singular nouns and pronouns include the plural.

> *E.12.*    The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

> *E.13.*    This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

> *E.14.*    If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

> *E.15.*    Grantor and each surety, endorser, and guarantor of the Obligation waive, to the extent permitted by law, all (a) demand for payment, (b) presentation for payment, (c) notice of intention to accelerate maturity, (d) notice of acceleration of maturity, € protest, (f) notice of protest, and (g) rights under sections 51.003, 51.004, and 51.005 of the Texas Property Code.

> *E.16.*    Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if an attorney is retained for its enforcement.

> *E.17.*    If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

> *E.18.*    The term *Lender* includes any mortgage servicer for Lender.

> *E.19.*    Grantor hereby grants Lender a right of first refusal with respect to Grantor's power to authorize any third party (other than Lender pursuant to its rights as set forth in this instrument) to pay ad valorem taxes on the Property and authorize a taxing entity to transfer its tax lien on the Property to that third party. Grantor's authorization to any third party (other than Lender) to pay the ad valorem taxes and receive transfer of a taxing entity's lien for ad valorem taxes shall be null and void and of no force and effect unless Lender, within ten days after

UNOFFICIAL COPY

RP-2021-258619

7

receiving written notice from Grantor, fails to pay the ad valorem taxes pursuant to Lender's rights as set forth in this instrument.

   *E.20.*   Grantor represents that this deed of trust and the Note are given for the following purposes: evidence and secure the Obligation.

**GRANTOR**:

**GALLERIA 2425 OWNER, LLC,**
a Delaware limited liability company

By:   Galleria 2425 JV, LLC,
      a Delaware limited liability company,
      its Managing Member

By:   Galleria West Loop Investments II LLC,
      its Managing Member

By: _____
Name: Ali Choudhri
Title: Manager

STATE OF TEXAS          §
                        §
COUNTY OF Harris        §

   This instrument was acknowledged before me on this _____ day of _____, 2021, by Ali Choudhri, the Manager of Galleria West Loop Investments II LLC, the Managing Member of Galleria 2425 JV, LLC, a Delaware limited liability company, the Managing Member of Galleria 2425 Owner, LLC, a Delaware limited liability company, on behalf of said limited liability companies.

[SEAL]                          _____
                                Notary Public in and for the
                                STATE OF TEXAS



STEPHANIE ALVAREZ
Public State of Texas
Comm. Expires 04-06-2021
Notary ID 131078509

8

521550.000001 24808189.2

001378

EXHIBIT A
PROPERTY DESCRIPTION

**TRACT 1: FEE TRACT**

BEING 2.4462 ACRES (106,557 SQUARE FEET) OF LAND OUT OF THE WILLIAM WHITE SURVEY, ABSTRACT NO. 836, HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED TO 2425 WEST LOOP, LP BY SPECIAL WARRANTY DEED RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472, SAID TRACT CONVEYED BY DEED TO ONE WEST LOOP PLAZA, LTD. UNDER HCCF NO. S547896 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE WESTHEIMER ROAD (ROW VARIES) BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST, TO A 1/2 INCH IRON ROD FOUND AT THE NORTHEAST CORNER OF THE 2.3468 ACRE PARCEL BEING THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED PARCEL AND THE POINT OF BEGINNING:

THENCE, WESTERLY ALONG THE COMMON LINE OF THE 2.3468 ACRE PARCEL TO THE SOUTH AND THE HEREIN DESCRIBED PARCEL TO THE NORTH, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 464.50 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY (ROW) LINE OF INTERSTATE 610 WEST LOOP AND THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL FROM. WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST 2.42 FEET;

THENCE, NORTHERLY ALONG THE EASTERLY RIGHT OF WAY LINE OF INTERSTATE 610 WEST LOOP (ROW 350 FEET) NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 251.27 FEET TO AN "X" SET IN CONCRETE BEING THE SOUTHWEST CORNER OF A 7.8998 ACRE PARCEL AS SHOWN ON THE HOUSTON VENTURE PLAT UNRESTRICTED RESERVE "A" FILED IN THE HARRIS COUNTY MAP RECORDS AS FILM CODE NUMBER 356074, AND THE NORTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL;

THENCE, EASTERLY ALONG THE COMMON LINE OF THE ABOVE INDICATED 7.8998 ACRE PARCEL TO THE NORTH AND THE HEREIN DESCRIBED PARCEL TO THE SOUTH NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 406.61 FEET TO AN "X"

9

FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND CONVEYED TO RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

THENCE, SOUTHERLY ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST AND THE HEREIN DESCRIBED PARCEL TO THE WEST, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 244.64 FEET TO THE POINT OF BEGINNING CONTAINING 106,557 SQUARE FEET, 2.4462 ACRES MORE LESS.

**TRACT 2 EASEMENT TRACT**: 20 FOOT NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND NORTHERLY OF AND 20 FEET WIDE ALONG THE ENTIRE NORTHERLY BOUNDARY LINE OF TRACT I; SAID EASEMENT CREATED AND GRANTED BY VI IAN L. SMITH, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF R. E. SMITH, DECEASED IN THAT CERTAIN GENERAL WARRANTY DEED DATED JULY 5, 1977 FILED IN HCCF NO. F216562 AND DESCRIBED IN HCCF NO. G743294, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS INC. IN A DEED RECORDED IN HCCF NO. S056346 AND

THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO A 1/2 INCH IRON ROD FOUND FOR THE SOUTHEAST CORNER OF TRACT I;

THENCE CONTINUING NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 244.64 FEET ALONG A COMMON LINE OF A PREVIOUSLY NOTED 3.4385 ACRE PARCEL OF LAND TO THE EAST AND TRACT I TO THE WEST TO AN "X" FOUND FOR THE NORTHEAST CORNER OF TRACT I AND THE POINT OF BEGINNING;

THENCE, WESTERLY SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 406.61 FEET ALONG THE NORTHERLY LINE OF TRACT 1 TO AN "X" SET ON THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP (350 FEET WIDE);

10

521550.000001 24808189.2

RP-2021-258619



THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO A POINT;

THENCE, EASTERLY 20.00 FEET NORTHERLY FROM AND PARALLEL TO THE NORTHERLY LINE OF TRACT 1, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 401.88 FEET TO A POINT;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST 20.00 FEET TO THE POINT OF BEGINNING AND CONTAINING 0.1856 ACRES OR 8,085 SQUARE FEET OF LAND MORE OR LESS.


**TRACT 3 EASEMENT TRACT**: 20 FOOT NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT;

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND SOUTHERLY OF AND 20.00 FEET WIDE ALONG THE ENTIRE SOUTHERN BOUNDARY LINE OF TRACT 1, SAID EASEMENT CREATED AND GRANTED ON FEBRUARY 16, 1979, FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED FILED IN HCCF NO. G041310, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 184.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING, WHENCE THE SOUTHEAST CORNER OF TRACT I BEARS NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 20.02 FEET;

THENCE, WESTERLY 20.00 FEET SOUTHERLY FROM AND PARALLEL TO THE SOUTHERLY LINE OF TRACT 1, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 469.23 FEET TO A POINT IN THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP;

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST, 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO THE

RP-2021-258619

001381

SOUTHWEST CORNER FOR TRACT 1 FROM WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST, 2.42 FEET;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 464.50 FEET ALONG THE SOUTHERLY LINE OF TRACT 1 TO A 1/2 INCH IRON ROD FOUND AT THE SOUTHEAST CORNER OF TRACT 1;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 20.02 FEET ALONG THE A COMMON LINE BETWEEN A PREVIOUSLY DESCRIBED 2.3468 ACRES PARCEL TO THE WEST AND A 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING AND CONTAINING 0.2144 ACRES OR 9,337 SQUARE FEET OF LAND, MORE OR LESS.


**TRACT 4 EASEMENT TRACT**: 28 FOOT ROADWAY AND PEDESTRIAN EASEMENT;

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT ACROSS EASTERLY 28 FEET OF A 2.3468 ACRE TRACT ADJACENT TO AND SOUTHERLY OF TRACT I, CREATED AND GRANTED IN THAT CERTAIN ROAD AND PEDESTRIAN EASEMENT DATED FEBRUARY 16, 1979 FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED, FILED IN HCCF NO. G041313, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS;

BEGINNING AT A FOUND 5/8 INCH IRON ROD IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, WESTERLY SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, 28.00 FEET ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD TO A POINT;

THENCE, NORTHERLY 28.00 FEET WESTERLY OF AND PARALLEL TO THE EASTERLY LINE OF SAID 2.3468 ARE TRACT NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 205.08 FEET TO A POINT ON THE SOUTHERLY LINE OF TRACT I;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 28.00 FEET ALONG THE SOUTHERLY LINE OF TRACT I TO A 1/2 INCH IRON ROD FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND PRESENTLY OWNED BY RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

RP-2021-258619

521550.000001 24808189.2

001382

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 204.61 FEET ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST SAID THE PREVIOUSLY DESCRIBED 2.3468 ACRE PARCEL TO THE WEST, TO THE POINT OF BEGINNING, CONTAINING 0.1317 ACRES OR 5,735 SQUARE FEET (CALLED 5,740) OF LAND MORE OR LESS.

**TRACT 5 EASEMENT TRACT**: 5 FOOT STORM SEWER EASEMENT

A 1,025 SQUARE FOOT TRACT OF LAND, BEING THAT SAME TRACT UN PROPERTIES, LIMITED, RECORDED IN HCCF NUMBER G041311, LOCATED IN THE WILLIAM WHITE SURVEY, ABSTRACT NUMBER 836, CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY (ROW) OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. 5056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR. TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE ALONG THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, A DISTANCE OF 16.00 FEET TO THE SOUTHEAST CORNER OF SAID EASEMENT AND THE HEREIN DESCRIBED TRACT;

THENCE CONTINUING ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST A DISTANCE OF 5.00 FEET, THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING SAID WESTHEIMER ROAD, NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, A DISTANCE OF 204.96 FEET, TO A POINT IN THE SOUTHERLY LINE OF A 2.4462 ACRE TRACT CONVEYED BY DEED TO HE 2425 WEST LOOP, LP RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472;

THENCE ALONG THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST A DISTANCE OF 5.00 FEET TO THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, A DISTANCE OF 204.88 FEET TO THE POINT OF BEGINNING AND CONTAINING 1,025 SQUARE FEET OF LAND, MORE OR LESS.

13

521550.000001 24808189.2

RP-2021-258619

RP-2021-258619

RP-2021-258619
# Pages 14
05/11/2021 12:19 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
TENESHIA HUDSPETH
COUNTY CLERK
Fees $66.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

001384

A. **Settlement Statement**

**B. Type of Loan**

| 1 ☐ FHA  2 ☐ FmHA   3 ☐ Conv Unins | 6. File Number | 7 Loan Number | 8 Mortgage Ins Case Number |
|---|---|---|---|
| 4 ☐ VA    5 ☐ Conv Ins   6. ☐ Seller Finance | 12000990 | | |
| 7 ☐ Cash Sale | | | |

C. Note:   This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing, they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower | E. Name & Address of Seller | F Name & Address of Lender |
|---|---|---|
| Galleria 2425 Owner, LLC, a Delaware limited liability company<br>60 W 2nd St<br>Freeport, NY 11520 | 2425 WL, LLC, a New York Limited Liability Company<br>2500 West Loop South, Suite 255<br>Houston, TX 77027 | National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch<br>299 Park Avenue<br>New York, NY 10171 |

| G Property Location | H. Settlement Agent Name | |
|---|---|---|
| TR 31D ABST 836 W WHITE<br>2425 W Loop S<br>Houston , TX 77027 | TransAct Title - Galleria<br>6117 Richmond Ave, Suite 250<br>Houston, TX 77057  Tax ID: 45-3483105<br>Underwritten By: WFG National Title Insurance Company | |
| | Place of Settlement<br>TransAct Title - Galleria<br>6117 Richmond Ave, Suite 250<br>Houston, TX 77057 | I Settlement Date<br>5/23/2018<br>Fund. |

| J. Summary of Borrower's Transaction | | | K. Summary of Seller's Transaction | | |
|---|---|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | | **400. Gross Amount Due to Seller** | | |
| 101  Contract Sales Price | | | 401  Contract Sales Price | | $79,500,000.00 |
| 102. Personal Property | | | 402.  Personal Property | | |
| 103. Settlement Charges to borrower | | | 403. | | |
| 104 | | | 404 | | |
| 105 | | | 405 | | |
| **Adjustments for items paid by seller in advance** | | | **Adjustments for items paid by seller in advance** | | |
| 106. City property taxes | | | 406. City property taxes | | |
| 107. County property taxes | | | 407. County property taxes | | |
| 108. Assessment Taxes | | | 408. Assessment Taxes | | |
| 109. School property taxes | | | 409. School property taxes | | |
| 110. MUD taxes | | | 410. MUD taxes | | |
| 111. Other taxes | | | 411. Other taxes | | |
| 112. | | | 412 | | |
| 113 | | | 413 | | |
| 114 | | | 414 | | |
| 115 | | | 415 | | |
| 116 | | | 416 | | |
| **120. Gross Amount Due From Borrower** | | | **420. Gross Amount Due to Seller** | | $79,500,000.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | | **500. Reductions In Amount Due to Seller** | | |
| 201  Deposit or earnest money | | | 501  Excess Deposit | | |
| 202. Principal amount of new loan(s) | | | 502.  Settlement Charges to Seller (line 1400) | | $206,079.65 |
| 203. Existing loan(s) taken subject to | | | 503. Existing Loan(s) Taken Subject to | | |
| 204  Mezzanine financing | | | 504  Payoff of first mortgage loan | | $46,174,360.27 |
| 205. | | | 505. Payoff of second mortgage loan | | $3,039,880.50 |
| 206. | | | 506. Escrow Reserve (Lee et al) | | $50,000.00 |
| 207. Earnest Money pd directly | | | 507. Earnest Money pd directly | | $100.00 |
| 208. | | | 508  CPatc Family Investment Payoff | | $608,007.88 |
| 209.  . | | | 509. CC Multifamily G.P. Payoff | | $608,007.88 |
| **Adjustments for items unpaid by seller** | | | **Adjustments for items unpaid by seller** | | |
| 210. City property taxes | | | 510. City property taxes | | |
| 211. County property taxes    01/01/18 05/23/18 | | | 511.  County property taxes       01/01/18 05/23/18 | | $363,777.29 |
| 212. Assessment Taxes | | | 512. Assessment Taxes | | |
| 213. School property taxes | | | 513. School property taxes | | |
| 214. MUD taxes | | | 514. MUD taxes | | |
| 215. Other taxes | | | 515. Other taxes | | |
| 216 | | | 516 | | |
| 217. | | | 517 | | |
| 218. SELLER CREDIT TO BUYER | | | 518. SELLER CREDIT TO BUYER | | $14,730,332.38 |
| 219. | | | 519. | | |
| **220. Total Paid By/For Borrower** | | | **520. Total Reduction Amount Due Seller** | | $65,779,745.85 |
| **300. Cash At Settlement From/To Borrower** | | | **600. Cash At Settlement To/From Seller** | | |
| 301. Gross Amount due from borrower (line 120) | | | 601. Gross Amount due to seller (line 420) | | $79,500,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | | | 602. Less reductions in amt. due seller (line 520) | | $65,779,745.85 |
| **303. Cash  Borrower** | | | **603. Cash To Seller** | | $13,720,254.15 |

Page 1

001385

File No. 12000990

| L. Settlement Charges | | | | |
|---|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price | @ % = | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
| Division of Commission (line 700) as follows: | | | | |
| 701. | to | | | |
| 702. | to | | | |
| 703. | | | | |
| 800. Items Payable in Connection with Loan | | | | |
| 801. Loan Origination Fee    % | to | | | |
| 802. Loan Discount    % | to | | | |
| 803. Appraisal Fee | to | | | |
| 804. Attorney Fees (Invoice needed) | to  Baker & McKenzie LLP | | | |
| 805. Senior Loan | to  Polsinelli | | | |
| 806. Mezzanine Loan | to  Polsinelli | | | |
| 807. Equity / Joint Venture | to  Polsinelli | | | |
| 808. Commitment fee (Mezzanie lender) | to  Naissance Galleria, LLC | | | |
| 809. Interest 5/24/18 end 5/29/18 | to  National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch | | | |
| 810. Interest 5/29/18 and 6/1/18 | to  National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch | | | |
| 811. Interest Reserve Deposit | to  National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch | | | |
| 812. 50 bps Upfront Fee | to  National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch | | | |
| 900. Items Required by Lender To Be Paid in Advance | | | | |
| 901. Interest from    5/23/2018   to   6/1/2018 @ $0/day | | | | |
| 902. Mortgage Insurance Premium for months | to | | | |
| 903. Hazard Insurance Premium for years | to  HANDLED OUTSIDE OF | | | |
| 1000. Reserves Deposited With Lender | | | | |
| 1001. Hazard insurance | months @ | per month | | |
| 1002. Mortgage insurance | months @ | per month | | |
| 1003. City property taxes | months @ | per month | | |
| 1004. County property taxes | months @ | per month | | |
| 1005. Assessment Taxes | months @ | per month | | |
| 1006. School property taxes | months @ | per month | | |
| 1007. MUD taxes | months @ | per month | | |
| 1008. Other taxes | months @ | per month | | |
| 1011. Aggregate Adjustment | | | | |
| 1100. Title Charges | | | | |
| 1101. Settlement or closing fee | to  TransAct Title, LLC-Settlement Fees | | | $2,500.00 |
| 1102. Abstract or title search | to | | | |
| 1103. Title examination | to | | | |
| 1104. Title insurance binder | to  TransAct Title, LLC | | | |
| 1105. Document preparation (Curative) | to  Umatiya Law Firm, LLC | | | $1,250.00 |
| 1106. Notary fees | to | | | |
| 1107. Attorney's fees | to | | | |
| (includes above items numbers: | | ) | | |
| 1108. Title insurance | to  TransAct Title, LLC | | | $175,601.00 |
| (includes above items numbers: | | ) | | |
| 1109. Lender's coverage | $51,675,000.00/$13,533.10 | | | |
| 1110. Owner's coverage | $79,500,000.00/$237,161.35 | | | |
| 1111. Escrow fee | to  TransAct Title, LLC | | | |
| 1112. Guaranty Assessment Recoupment Fee | to  Texas Title Insurance Guaranty Association | | | $4.50 |
| 1113. Courier Service | to  TransAct Title-Courier | | | $575.00 |
| 1114. Erecording Fee | to  TransAct Title, LLC-Recording | | | $20.00 |
| 1115. Document Review | to  Umatiya Law Firm, PLLC | | | |
| 1116. Non-Imputation Endorsement | to  TransAct Title, LLC | | | |
| 1117. Adjustable Mortgage Loan | to  TransAct Title, LLC | | | |
| 1118. Survey Amendment (OTP only) | to  TransAct Title, LLC | | | $26,340.15 |
| 1119. Not yet due/payable (MTP & DIN | to  TransAct Title, LLC | | | |
| 1120. T19 Non-Res. Endorsemen | to  TransAct Title, LLC | | | |
| 1121. Access Endorsement | to  TransAct Title, LLC | | | |
| 1122. Contiguity Endorsement | to  TransAct Title, LLC | | | |
| 1123. MSD MTP T-19.2 End | to  TransAct Title, LLC | | | |
| 1124. MSD MTP T-19.3 End | to  TransAct Title, LLC | | | |
| 1125. REM OTP T-19 1 No Amendment | to  TransAct Title, LLC | | | |
| 1126. MSD OTP T-19.2 End | to  TransAct Title, LLC | | | |
| 1127. MSD OTP T-19.3 End | to  TransAct Title, LLC | | | |
| 1200. Government Recording and Transfer Charges | | | | |
| 1201. Recording Fees   Deed $44.00 ; Mortgage $184.00 ; Rel $200.80   to TransAct Title, LLC-Recording | | | | $200.00 |
| 1202. City/county tax/stamps   Deed ; Mortgage | to | | | |
| 1203. State tax/stamps   Deed ; Mortgage | to | | | |
| 1204. Tax certificates | to  Kirby TaxNet, Inc. | | | $89.00 |

001386

| 1205 | | to | | | |
|------|---|----|---|---|---|
| **1300. Additional Settlement Charges** | | | | | |
| 1301 | Survey | to | South Texas Surveying & Associates, Inc. | | |
| 1302 | Pest Inspection | to | | | |
| 1303 | HOA Transfer Fee | to | | | |
| 1304 | Home Warranty | to | | | |
| 1305 | Third Parties - Appraisal | to | Jack W. Bass II, MAI | | |
| 1306 | Promotion | to | NAZAR (INVOICE NEEDED) | | |
| 1307 | Promotion | to | Eastil Secured LLC | | |
| 1308 | BBG Third Parties - ESA | to | AWA, LLC dba BBG Assessment | | |
| 1309 | BBG Third Parties - PCA | to | AWA, LLC dba BBG Assessment | | |
| 1310 | Third Parties - Valuations | to | Hibco Services, LLC | | |
| 1311 | UCCPlus Policy Premium | to | UCCPlus Insurance | | |
| 1312 | | to | | | |
| 1313 | | to | | | |
| 1314 | | to | | | |
| 1315 | | to | | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | | | | $286,079.65 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1, 2 and 3 of this HUD-1 Settlement Statement

**GALLERIA 2425 OWNER, LLC**
a Delaware limited liability company

By:  Galleria 2425 JV, LLC
    a Delaware limited liability company,
    its sole member

    By:  Naissance Capital Real Estate, LLC
        a Delaware limited liability company
        its Managing Member

        By:_____
            Azeemeh Zaheer, Managing Member

**2425 WL LLC,**
a New York Limited Liability Company

By:_____
    **Adam Broder, Sole Member**

SETTLEMENT AGENT CERTIFICATION
The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement

_____        5-24-18
Settlement Agent                          Date

001387

A. **Settlement Statement**

| B. Type of Loan | | |
|---|---|---|
| 1. □ FHA   2. □ FmHA   3. □ Conv Unins | 6. File Number | 7. Loan Number |
| 4. □ VA   5. □ Conv Ins.   6. □ Seller Finance | 12000998 | |
| 7. □ Cash Sale | | 8. Mortgage Ins Case Number |

C. Note:  This form is furnished to give you a statement of actual settlement costs.  Amounts paid to and by the settlement agent are shown.  Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: | E. Name & Address of Seller | F. Name & Address of Lender |
|---|---|---|
| Galleria 2425 Owner, LLC, a Delaware limited liability company | 2425 WL, LLC, a New York Limited Liability Company | National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch |
| 60 W 2nd St | 2500 West Loop South, Suite 255 | 299 Park Avenue |
| Freeport, NY 11520 | Houston, TX 77027 | New York, NY 10171 |

| G. Property Location | H. Settlement Agent Name |
|---|---|
| TR 31D ABST 836 W WHITE | TransAct Title - Galleria |
| 2425 W Loop S | 6117 Richmond Ave, Suite 250 |
| Houston , TX 77027 | Houston, TX 77057   Tax ID: 45-3483105 |
| | Underwritten By: WFG National Title Insurance Company |

| | |
|---|---|
| | Place of Settlement |
| | TransAct Title - Galleria |
| | 6117 Richmond Ave, Suite 250 |
| | Houston, TX 77057 |

| I. Settlement Date |
|---|
| 5/23/2018 |
| Fund: |

| J. Summary of Borrower's Transaction | | | K. Summary of Seller's Transaction | | |
|---|---|---|---|---|---|
| 100. Gross Amount Due from Borrower | | | 400. Gross Amount Due to Seller | | |
| 101. Contract Sales Price | $79,588,000.00 | | 401. Contract Sales Price | | |
| 102. Personal Property | | | 402. Personal Property | | |
| 103. Settlement Charges to borrower | $3,369,209.67 | | 403. | | |
| 104. | | | 404. | | |
| 105. | | | 405. | | |
| Adjustments for items paid by seller in advance | | | Adjustments for items paid by seller in advance | | |
| 106. City property taxes | | | 406. City property taxes | | |
| 107. County property taxes | | | 407. County property taxes | | |
| 108. Assessment Taxes | | | 408. Assessment Taxes | | |
| 109. School property taxes | | | 409. School property taxes | | |
| 110. MUD taxes | | | 410. MUD taxes | | |
| 111. Other taxes | | | 411. Other taxes | | |
| 112. | | | 412. | | |
| 113. | | | 413. | | |
| 114. | | | 414. | | |
| 115. | | | 415. | | |
| 116. | | | 416. | | |
| 120. Gross Amount Due From Borrower | $82,969,209.67 | | 420. Gross Amount Due to Seller | | |
| 200. Amounts Paid By Or In Behalf Of Borrower | | | 500. Reductions In Amount Due To Seller | | |
| 201. Deposit or earnest money | | | 501. Excess Deposit | | |
| 202. Principal amount of new loan(s) | $51,875,000.00 | | 502. Settlement Charges to Seller (line 1400) | | |
| 203. Existing loan(s) taken subject to | | | 503. Existing Loan(s) Taken Subject to | | |
| 204. Mezzanine financing | $16,100,000.00 | | 504. Payoff of first mortgage loan | | |
| 205. | | | 505. Payoff of second mortgage loan | | |
| 206. | | | 506. | | |
| 207. Earnest Money pd directly | $100.00 | | 507. Earnest Money pd directly | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| Adjustments for items unpaid by seller | | | Adjustments for items unpaid by seller | | |
| 210. City property taxes | | | 510. City property taxes | | |
| 211. County property taxes     01/01/18  05/23/18 | $363,777.29 | | 511. County property taxes     01/01/18  05/23/18 | | |
| 212. Assessment Taxes | | | 512. Assessment Taxes | | |
| 213. School property taxes | | | 513. School property taxes | | |
| 214. MUD taxes | | | 514. MUD taxes | | |
| 215. Other taxes | | | 515. Other taxes | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| 220. Total Paid By/For Borrower | $68,138,877.29 | | 520. Total Reduction Amount Due Seller | | |
| 300. Cash At Settlement From/To Borrower | | | 600. Cash At Settlement To/From Seller | | |
| 301. Gross Amount due from borrower (line 120) | $82,969,209.67 | | 601. Gross Amount due to seller (line 420) | | |
| 302. Less amounts paid by/for borrower (line 220) | $68,138,877.29 | | 602. Less reductions in amt. due seller (line 520) | | |
| 303. Cash From Borrower | $14,730,332.38 | | 603. Cash To Seller | | |



001388

File No. 12000990

**L. Settlement Charges**

| | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | @ ½ = | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. | to | | | |
| 702. | to | | | |
| 703. | | | | |
| **800. Items Payable in Connection with Loan** | | | | |
| 801. Loan Origination Fee   % | to | | | |
| 802. Loan Discount   % | to | | | |
| 803. Appraisal Fee | to | | | |
| 804. Attorney Fees (Invoice needed) | to | Baker & McKenzie LLP | $150,237.25 | |
| 805. Senior Loan | to | PolsinelH | $67,200.25 | |
| 806. Mezzanie Loan | to | PolsinelH | $64,340.80 | |
| 807. Equity / Joint Venture | to | PolsinelH | $35,417.80 | |
| 808. Commitment fee (Mezzanie lender) | to | Naissance Galleria, LLC | $161,000.80 | |
| 809. Interest 5/24/18 end 5/29/18 | to | National Bank of Kuwait, S.A.K.P., New York Branch, a banking corparation organized under the laws of Kuwait, acting through its New York branch | $31,308.29 | |
| 810. Interest 5/29/18 end 6/1/18 | to | National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch | $24,287.25 | |
| 811. Intrest Reserve Deposit | to | National Bank of Kuwait, S.A.K.P., New York Branch, a banking corparation organized under the laws of Kuwait, acting through its New York branch | $2,500,000.80 | |
| 812. 50 bps Upfront Fee | to | National Bank of Kuwait, S.A.K.P., New York Branch, a banking corperation organized under the laws of Kuwait, acting through its New York branch | $253,375.00 | |
| **900. Items Required by Lender To Be Paid In Advance** | | | | |
| 901. Interest from    @ $0/day | | | | |
| 902. Mortgage Insurance Premium for months | to | | | |
| 903. Hazard Insurance Preuium for years | to | HANDLED OUTSIDE OF SETTLEMENT | | |
| **1000. Reserves Deposited With Lender** | | | | |
| 1001. Hazard insurance | months @ | per month | | |
| 1002. Mortgage insurance | months @ | per month | | |
| 1003. City property taxes | months @ | per month | | |
| 1004. County property taxes | months @ | per month | | |
| 1005. Assessment Taxes | months @ | per month | | |
| 1006. School property taxes | months @ | per month | | |
| 1007. MUD taxes | months @ | per month | | |
| 1008. Other taxes | months @ | per month | | |
| 1011. Aggregate Adjustment | | | | |
| **1100. Title Charges** | | | | |
| 1101. Settlement or closing fee | to | TransAct Title, LLC-Settlement fees | $2,500.00 | |
| 1102. Abstract or title search | to | | | |
| 1103. Title examination | to | | | |
| 1104. Title Insurance binder | to | TransAct Title, LLC | | |
| 1105. Doctumeni preparation (Curative) | to | Umatiya Law Firm, LLC | | |
| 1106. Notary fees | to | | | |
| 1107. Attorney's fees | to | | | |
| (Includes above items numbers: | | ) | | |
| 1108. Title Insurance | to | TransAct Title, LLC | $100.00 | |
| (Includes above items numbers: | | ) | | |
| 1109. Lender's coverage | $51,675,000.00/$13,533.10 . | | | |
| 1110. Owner's coverage | $79,500,000.00/$237,161.35 | | | |
| 1111. Escrow fee | to | TransAct Title, LLC | | |
| 1112. Guaranty Assessment Recoupment Fee | to | Texas Title Insurance Guaranty Association | $4.50 | |
| 1113. Courier Service | to | TransAct Title-Courier | $150.00 | |
| 1114. Erecording Fee | to | TransAct Title, LLC-Recording | $20.00 | |
| 1115. Document Review | to | Umatiya Law Firm, PLLC | | |
| 1116. Non-Imputation Endorsement | to | TransAct Title, LLC | $6,780.05 | |
| 1117. Adjustable Mortgage Loan | to | TransAct Title, LLC | $20.00 | |
| 1118. Survey Amendment (OTP only) | to | TransAct Title, LLC | | |
| 1119. Not yet due/payable (MTP & BIN | to | TransAct Title, LLC | $5.00 | |
| 1120. T19 Non-Res. Endorsemen | to | TransAct Title, LLC | $13,103.10 | |
| 1121. Access Endorsement | to | TransAct Title, LLC | $100.00 | |
| 1122. Contiguity Endorsement | to | TransAct Title, LLC | $100.00 | |
| 1123. MSD MTP T-19.2 End | to | TransAct Title, LLC | $50.00 | |
| 1124. MSD MTP T-19.3 End | to | TransAct Title, LLC | $50.00 | |
| 1125. REM OTP T-19.1 No Amendment | to | TransAct Title, LLC | $26,548.15 | |
| 1126. MSD OTP T-19.2 End | to | TransAct Title, LLC | $50.00 | |
| 1127. MSD OTP T-19.3 End | to | TransAct Title, LLC | $50.00 | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Recording Fees   Deed $44.00 ; Mortgage $184.00 ; Rel $200.00   to TransAct Title, LLC-Recording | | | $228.00 | |
| 1202. City/county tax/stamps   Deed ; Mortgage | to | | | |
| 1203. State tax/stamps   Deed ; Mortgage | to | | | |



| | | | | |
|---|---|---|---|---|
| 1204. Tax certificates | to | Kirby TaxNet, Inc. | | |
| 1205. | to | | | |
| 1300. Additional Settlement Charges | | | | |
| 1301. Survey | to | South Texas Surveying & Associates, Inc. | $3,193.38 | |
| 1302. Pest Inspection | to | | | |
| 1303. HOA Transfer Fee | to | | | |
| 1304. Home Warranty | to | | | |
| 1305. Third Parties - Appraisal | to | Jack W. Bass II, MAI | $1,000.00 | |
| 1306. Promotion | to | NAZAR (INVOICE NEEDED) | $1,200.00 | |
| 1307. Promotion | to | Eastil Secured LLC | $5,979.00 | |
| 1308. BBG Third Parties -ESA | to | AWA, LLC dba BBG Assessment | $1,450.00 | |
| 1309. BBG Third Parties - PCA | to | AWA, LLC dba BBG Assessment | $1,650.00 | |
| 1310. Third Parties - Valuations | to | Hibco Services, LLC | $3,731.00 | |
| 1311. UCCPlus Policy Premium | to | UCCPlus Insurance | $11,185.45 | |
| 1312. | to | | | |
| 1313. | to | | | |
| 1314. | to | | | |
| 1315. | to | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | $3,369,209.67 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1, 2 and 3 of this HUD-1 Settlement Statement.

**GALLERIA 2425 OWNER, LLC**
a Delaware limited liability company

By: Galleria 2425 JV, LLC
   a Delaware limited liability company,
   its sole member

   By: Naissance Capital Real Estate, LLC
      a Delaware limited liability company
      its Managing Member

     By: _____
     Azeemeh Zaheer, Managing Member

**2425 WL LLC,**
**a New York Limited Liability Company**

By: _____
   **Adam Broder, Sole Member**

SETTLEMENT AGENT CERTIFICATION
The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

_____    _____
Settlement Agent              Date
Warning: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

001390

# Interest Calculator

| Initial investment | 14,730,332.38 |
| Annual contribution | 0 |
| Monthly contribution | 0 |

Contribute at the ○ beginning ○ end
of each compounding period

| Interest rate | 10 |
| Compound | annually ▾ |
| Investment length | 5 years   8 months |
| Tax rate ⑦ | 0 |
| Inflation rate | 0 |

**Calculate**    Clear



| Results | |
| --- | --- |
| **Ending balance** | **$25,279,652.27** |
| Total principal | $14,730,332.38 |
| **Total interest** | **$10,549,319.89** |

■ Initial investment
▨ Interest

42%   58%

# Accumulation Schedule

**Annual Schedule**   <u>**Monthly Schedule**</u>

| Year | Deposit | Interest | Ending balance |
| --- | --- | --- | --- |
| 1 | $14,730,332.38 | $1,473,033.24 | $16,203,365.62 |
| 2 | $0.00 | $1,620,336.56 | $17,823,702.18 |
| 3 | $0.00 | $1,782,370.22 | $19,606,072.40 |
| 4 | $0.00 | $1,960,607.24 | $21,566,679.64 |
| 5 | $0.00 | $2,156,667.96 | $23,723,347.60 |
| 6 | $0.00 | $1,556,304.67 | $25,279,652.27 |



by Calculator.net

001391

## PROMISSORY NOTE

**$14,730,332.38 (USD)**                                    **Houston, Texas**
                                                             **May 23, 2018**

      **FOR VALUE RECEIVED**, **Galleria 2425 Owner, LLC** ("Borrower"), a Delaware limited liability company with an address at 1001 W. Loop South, Suite 700 Houston Texas 77027, through its managing member **Galleria 2425 JV, LLC**, a Delaware limited liability company, hereby unconditionally promises to pay to the order of **2425 WL, LLC**, a New York limited liability company, having an address at 11509 S Lou Al Dr Houston Texas 77024 ("Lender"), or at such other place as the holder hereof may from time to time designate in writing, the maximum principal sum of **FOURTEEN MILLION SEVEN HUNDRED AN THIRTY THOUSAND THREE HUNDRED AND THIRTY TWO AND 38/100 DOLLARS ($14,730,332.38)** in lawful money of the United States of America with interest thereon to be computed from the date of this Note at the Applicable Interest Rate, and to be paid in accordance with the terms of this Note, and the Deed of Trust (the "Deed of Trust"), dated as of the date hereof, between Borrowers and Lender (the "Loan Agreement"). All capitalized terms not defined herein shall have the meanings set forth in the Deed of Trust. This Note and the Deeds of Trust are sometimes collectively referred to as the "Loan Documents" or singly as "Loan Document."

### ARTICLE 1 - Payment Terms

      Borrowers agree to pay the principal sum of this Note, together with all accrued and unpaid interest thereon, all at the stated regular rate of ten percent (10.00%) per annum (the "Applicable Rate") on or before May 22, 2021 (the "Maturity Date"). Commencing May 23, 2018 and continuing on the 23rd of each subsequent May until the Maturity Date, Borrower agrees to pay to Lender interest-only payments based on the principal sum of this Note and the Applicable Rate.

      If Borrowers fail to pay the amount stated in the preceding paragraph, together with all accrued and unpaid interest thereon on or before the Maturity Date, Borrower shall pay to Lender additional interest at the Default Rate of the lesser of eighteen percent (18.00%) per annum (the "Default Rate") or the maximum amount allowed by the laws for the State of New York.

### ARTICLE 2 - Default And Acceleration

      The Debt shall without notice become immediately due and payable at the option of Lender if any payment of principal or interest required in this Note is not paid on or prior to the date when due or if not paid on the Maturity Date or on the happening of any other Event of Default and in addition, Lender shall be entitled to receive interest on the entire unpaid principal sum at the Default Rate pursuant to the terms of the Loan Agreement. This Article 2, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

## ARTICLE 3 - Loan Documents

This Note is secured by the Deed of Trust. All of the terms, covenants and conditions contained in any other Loan Document are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein.

## ARTICLE 4 - Savings Clause

This Note and the other Loan Documents are subject to the express condition that at no time shall Borrowers be obligated or required to pay interest on the principal balance of the Loan at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the Maximum Legal Rate. If, by the terms of this Note or any other Loan Document, Borrowers are at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of the Maximum Legal Rate, the Applicable Interest Rate or the Default Rate, as the case may be, shall be deemed to be immediately reduced to the Maximum Legal Rate and all previous payments in excess of the Maximum Legal Rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the sums due under the Loan, shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan until payment in full so that the rate or amount of interest on account of the Loan does not exceed the Maximum Legal Rate of interest from time to time in effect and applicable to the Loan for so long as the Loan is outstanding.

## ARTICLE 5 - No Oral Change

This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrowers or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

## ARTICLE 6 - Waivers

Borrowers and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, notice of intent to accelerate, notice of acceleration, protest, notices of protest and/or of non-payment and any and all other notices of any kind except any such notice expressly required by this Note. No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note or any other Loan Documents made by agreement between Lender or any other Person shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrowers, and any other Person who may become liable for the payment of all or any part of the Debt, under this Note, the Loan Agreement or the other Loan Documents.

No notice to or demand on Borrowers shall be deemed to be a waiver of the obligation of Borrowers or of the right of Lender to take further action without further notice or demand as provided for in this Note, the Loan Agreement or the other Loan Documents. In the case of

- 2 -

Grove, the agreements herein contained shall remain in force and be applicable, notwithstanding any changes in the members comprising Grove, and the term "Borrower" as used herein, shall include any alternate or successor limited liability company, but any predecessor limited liability company shall not thereby be released from any liability. (Nothing in the foregoing sentence shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in such partnership, corporation or limited liability company which may be set forth in any Loan Document.)

## ARTICLE 7 - Transfer

Upon the transfer of this Note, Borrowers hereby waiving notice of any such transfer, Lender may deliver all the collateral mortgaged, granted, pledged or assigned pursuant to the Loan Documents, or any part thereof, to the transferee who shall thereupon become vested with all the rights herein or under applicable law given to Lender with respect thereto, and Lender shall thereafter forever be relieved and fully discharged from any liability or responsibility in the matter accruing from and after the date of the transfer; but Lender shall retain all rights hereby given to it with respect to any liabilities and the collateral not so transferred.

## ARTICLE 8 - Governing Law

This Note shall be governed in accordance with the laws of the State of New York.

## ARTICLE 9 - Notices

All notices or other written communications hereunder shall be delivered to the respective addresses for each such party shown hereinabove, unless the party to whom notice is directed has given notice that its address has changed and provided the party from whom notice is given its new address.

## ARTICLE 10 -

[Intentionally omitted.]

## ARTICLE 11 - Liability

The obligations and liabilities of each Borrower hereunder shall be joint and several.

## [NO FURTHER TEXT ON THIS PAGE]

- 3 -

IN WITNESS WHEREOF, EFFECTIVE as of the day and year first above written.

**BORROWER:**

**GALLERIA 2425 OWNER, LLC,**
a Delaware limited partnership

By: **GALLERIA 2425 JV, LLC**
Its Managing Member

By:_____
Its Authorized Agent

RP-2021-258619
05/11/2021   ER   $66.00



# Deed of Trust

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security number or your driver's license number.**

## Basic Information

**Date:**  May 23, 2018

**Grantor:**      Galleria 2425 Owner, LLC, a Delaware limited liability company

**Grantor's Mailing Address:** 1001 West Loop South Suite 700, Houston, TX 77027

**Trustee:**     Michael O'Connor

**Trustee's Mailing Address:** 11509 S Lou Al Dr., Houston, TX 77024

**Lender:**     2425 WL, LLC, a New York limited liability company

**Lender's Mailing Address:** 11509 S Lou Al Dr., Houston, TX 77024

**Obligation**

  **Note**

   **Date:**  May 23, 2018

   **Original principal amount:** $14,730,332.38

   **Borrower:**   Galleria 2425 Owner, LLC.

   **Lender:**    2425 WL, LLC

   **Maturity date:**    June 1, 2021

  **Other Debt:** N/A

**Property** (including any improvements): that certain real property described on <u>Exhibit A</u> attached hereto.

**Other Exceptions to Conveyance and Warranty:** N/A

**A.    Granting Clause**

     For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property,

1

521550.000001 24808189.2

001396

subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

**B.      Grantor's Obligations**

*B.1.*      Grantor agrees to maintain all property and liability insurance coverages with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender, and as to property loss, that are payable to Lender under policies containing standard mortgagee clauses, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender before execution of this deed of trust and again at least ten days before the expiration of the Required Insurance Coverages.

*B.2.*      Grantor agrees to—

   a.   keep the Property in good repair and condition;

   b.   pay all taxes and assessments on the Property before delinquency, not authorize a taxing entity to transfer its tax lien on the Property to anyone other than Lender, and not request a deferral of the collection of taxes pursuant to section 33.06 of the Texas Tax Code;

   c.   defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

   d.   obey all laws, ordinances, and restrictive covenants applicable to the Property;

   e.   keep any buildings occupied as required by the Required Insurance Coverages; and

   f.   notify Lender of any change of address.

**C.      Lender's Rights**

*C.1.*      Lender or Lender's mortgage servicer may appoint in writing one or more substitute trustees, succeeding to all rights and responsibilities of Trustee.

*C.2.*      If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

*C.3.*      Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the property insurance proceeds available to Grantor for repairs.

2

521550.000001 24808189.2

001397

*C.4.*    Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

*C.5.*    If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

*C.6.*    **COLLATERAL PROTECTION INSURANCE NOTICE**

**In accordance with the provisions of section 307.052(a) of the Texas Finance Code, the Beneficiary hereby notifies the Grantor as follows:**

**(A)    the Grantor is required to:**

**(i)            keep the collateral insured against damage in the amount the Lender specifies;**

**(ii)            purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and**

**(iii)            name the Lender as the person to be paid under the policy in the event of a loss;**

**(B)    the Grantor must, if required by the Lender, deliver to the Lender a copy of the policy and proof of the payment of premiums; and**

**(C)    if the Grantor fails to meet any requirement listed in Paragraph (A) or (B), the Lender may obtain collateral protection insurance on behalf of the Grantor at the Grantor's expense.**

*C.7.*    If a default exists in payment of the Obligation or performance of Grantor's obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may—

a.    declare the unpaid principal balance and earned interest on the Obligation immediately due;

b.    exercise Lender's rights with respect to rent under the Texas Property Code as then in effect;

c.    direct Trustee to foreclose this lien, in which case Lender or Lender's

3

RP-2021-258619

001398

agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

d.  purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

*C.8.*  Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

## D.  Trustee's Rights and Duties

If directed by Lender to foreclose this lien, Trustee will—

*D.1.*  either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

*D.2.*  sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

*D.3.*  from the proceeds of the sale, pay, in this order—

a.  expenses of foreclosure, including a reasonable commission to Trustee;

b.  to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

c.  any amounts required by law to be paid before payment to Grantor; and

d.  to Grantor, any balance; and

*D.4.*  be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

## E.  General Provisions

*E.1.*  If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor does not, Grantor will be a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

*E.2.*  Recitals in any trustee's deed conveying the Property will be presumed to be true.

*E.3.*  Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4

RP-2021-258619

*E.4.* This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

*E.5.* If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

*E.6.* Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

*E.7.* Grantor collaterally assigns to Lender all present and future rent from the Property and its proceeds. Grantor warrants the validity and enforceability of the assignment. Grantor will apply all rent to payment of the Obligation and performance of this deed of trust, but if the rent exceeds the amount due with respect to the Obligation and the deed of trust, Grantor may retain the excess. If a default exists in payment of the Obligation or performance of this deed of trust, Lender may exercise Lender's rights with respect to rent under the Texas Property Code as then in effect. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent collected under this paragraph as required by the Texas Property Code as then in effect. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies.

*E.8.* Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

*E.9.* In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

*E.10.* Grantor may not sell, transfer, or otherwise dispose of any Property, whether voluntarily or by operation of law, without the prior written consent of Lender. If granted, consent may be conditioned upon (a) the grantee's integrity, reputation, character, creditworthiness, and management ability being satisfactory to Lender; and (b) the grantee's executing, before such sale, transfer, or other disposition, a written assumption agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other

521550.000001 24808189.2

001400

modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor may not cause or permit any Property to be encumbered by any liens, security interests, or encumbrances other than the liens securing the Obligation and the liens securing ad valorem taxes not yet due and payable without the prior written consent of Lender. If granted, consent may be conditioned upon Grantor's executing, before granting such lien, a written modification agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, an approval fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor may not grant any lien, security interest, or other encumbrance (a "Subordinate Instrument") covering the Property that is subordinate to the liens created by this deed of trust without the prior written consent of Lender. If granted, consent may be conditioned upon the Subordinate Instrument's containing express covenants to the effect that—

a.    the Subordinate Instrument is unconditionally subordinate to this deed of trust;

b.    if any action is instituted to foreclose or otherwise enforce the Subordinate Instrument, no action may be taken that would terminate any occupancy or tenancy without the prior written consent of Lender, and that consent, if granted, may be conditioned in any manner Lender determines;

c.    rents, if collected by or for the holder of the Subordinate Instrument, will be applied first to the payment of the Obligation then due and to expenses incurred in the ownership, operation, and maintenance of the Property in any order Lender may determine, before being applied to any indebtedness secured by the Subordinate Instrument;

d.    written notice of default under the Subordinate Instrument and written notice of the commencement of any action to foreclose or otherwise enforce the Subordinate Instrument must be given to Lender concurrently with or immediately after the occurrence of any such default or commencement; and

e.    in the event of the bankruptcy of Grantor, all amounts due on or with respect to the Obligation and this deed of trust will be payable in full before any payments on the indebtedness secured by the Subordinate Instrument.

Grantor may not cause or permit any of the following events to occur without the prior written consent of Lender: if Grantor is (a) a corporation, the termination of the corporation or the sale, pledge, encumbrance, or assignment of any shares of its stock; (b) a limited liability company, the termination of the company or the sale, pledge, encumbrance, or assignment of any of its membership interests; (c) a general partnership or joint venture, the termination of the

6

RP-2021-258619

UNOFFICIAL COPY

partnership or venture or the sale, pledge, encumbrance, or assignment of any of its partnership or joint venture interests, or the withdrawal from or admission into it of any general partner or joint    enture; or (d) a limited partnership, (i) the termination of the partnership, (ii) the sale, pledge, encumbrance, or assignment of any of its general partnership interests, or the withdrawal from or admission into it of any general partner, (iii) the sale, pledge, encumbrance, or assignment of a controlling portion of its limited partnership interests, or (iv) the withdrawal from or admission into it of any controlling limited partner or partners. If granted, consent may be conditioned upon (a) the integrity, reputation, character, creditworthiness, and management ability of the person succeeding to the ownership interest in Grantor (or security interest in such ownership) being satisfactory to Lender; and (b) the execution, before such event, by the person succeeding to the interest of Grantor in the Property or ownership interest in Grantor (or security interest in such ownership) of a written modification or assumption agreement containing such terms as Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

*E.11.*    When the context requires, singular nouns and pronouns include the plural.

*E.12.*    The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

*E.13.*    This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

*E.14.*    If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

*E.15.*    Grantor and each surety, endorser, and guarantor of the Obligation waive, to the extent permitted by law, all (a) demand for payment, (b) presentation for payment, (c) notice of intention to accelerate maturity, (d) notice of acceleration of maturity, € protest, (f) notice of protest, and (g) rights under sections 51.003, 51.004, and 51.005 of the Texas Property Code.

*E.16.*    Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if an attorney is retained for its enforcement.

*E.17.*    If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

*E.18.*    The term *Lender* includes any mortgage servicer for Lender.

*E.19.*    Grantor hereby grants Lender a right of first refusal with respect to Grantor's power to authorize any third party (other than Lender pursuant to its rights as set forth in this instrument) to pay ad valorem taxes on the Property and authorize a taxing entity to transfer its tax lien on the Property to that third party. Grantor's authorization to any third party (other than Lender) to pay the ad valorem taxes and receive transfer of a taxing entity's lien for ad valorem taxes shall be null and void and of no force and effect unless Lender, within ten days after

RP-2021-258619

UNOFFICIAL COPY

7

receiving written notice from Grantor, fails to pay the ad valorem taxes pursuant to Lender's rights as set forth in this instrument.

*E.20.* Grantor represents that this deed of trust and the Note are given for the following purposes: evidence and secure the Obligation.

**GRANTOR**:

**GALLERIA 2425 OWNER, LLC,**
a Delaware limited liability company

By:    Galleria 2425 JV, LLC,
       a Delaware limited liability company,
       its Managing Member

By:    Galleria West Loop Investments II LLC,
       its Managing Member

By: _____
Name: Ali Choudhri
Title: Manager

STATE OF TEXAS      §
                        §
COUNTY OF Harris   §

This instrument was acknowledged before me on this _____ day of _____, 2021, by Ali Choudhri, the Manager of Galleria West Loop Investments II LLC, the Managing Member of Galleria 2425 JV, LLC, a Delaware limited liability company, the Managing Member of Galleria 2425 Owner, LLC, a Delaware limited liability company, on behalf of said limited liability companies.

[SEAL]                   _____
                            Notary Public in and for the
                            STATE OF Texas



STEPHANIE ALVAREZ
Public State of Texas
Comm. Expires 04-06-2021
Notary ID 131078509

RP-2021-258619

8

001403

EXHIBIT A
PROPERTY DESCRIPTION

**TRACT 1: FEE TRACT**

BEING 2.4462 ACRES (106,557 SQUARE FEET) OF LAND OUT OF THE WILLIAM WHITE SURVEY, ABSTRACT NO. 836, HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED TO 2425 WEST LOOP, LP BY SPECIAL WARRANTY DEED RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472, SAID TRACT CONVEYED BY DEED TO ONE WEST LOOP PLAZA, LTD. UNDER HCCF NO. S547896 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE WESTHEIMER ROAD (ROW VARIES) BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR. TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST, TO A 1/2 INCH IRON ROD FOUND AT THE NORTHEAST CORNER OF THE 2.3468 ACRE PARCEL BEING THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED PARCEL AND THE POINT OF BEGINNING:

THENCE, WESTERLY ALONG THE COMMON LINE OF THE 2.3468 ACRE PARCEL TO THE SOUTH AND THE HEREIN DESCRIBED PARCEL TO THE NORTH, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 464.50 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY (ROW) LINE OF INTERSTATE 610 WEST LOOP AND THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL FROM. WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST 2.42 FEET;

THENCE, NORTHERLY ALONG THE EASTERLY RIGHT OF WAY LINE OF INTERSTATE 610 WEST LOOP (ROW 350 FEET) NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 251.27 FEET TO AN "X" SET IN CONCRETE BEING THE SOUTHWEST CORNER OF A 7.8998 ACRE PARCEL AS SHOWN ON THE HOUSTON VENTURE PLAT UNRESTRICTED RESERVE "A" FILED IN THE HARRIS COUNTY MAP RECORDS AS FILM CODE NUMBER 356074, AND THE NORTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL;

THENCE, EASTERLY ALONG THE COMMON LINE OF THE ABOVE INDICATED 7.8998 ACRE PARCEL TO THE NORTH AND THE HEREIN DESCRIBED PARCEL TO THE SOUTH NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 406.61 FEET TO AN "X"

9

RP-2021-258619

001404

FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND CONVEYED TO RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

THENCE, SOUTHERLY ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST AND THE HEREIN DESCRIBED PARCEL TO THE WEST, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 244.64 FEET TO THE POINT OF BEGINNING CONTAINING 106,557 SQUARE FEET, 2.4462 ACRES MORE LESS.

**TRACT 2 EASEMENT TRACT**: 20 FOOT NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND NORTHERLY OF AND 20 FEET WIDE ALONG THE ENTIRE NORTHERLY BOUNDARY LINE OF TRACT I; SAID EASEMENT CREATED AND GRANTED BY VI IAN L. SMITH, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF R. E. SMITH, DECEASED IN THAT CERTAIN GENERAL WARRANTY DEED DATED JULY 5, 1977 FILED IN HCCF NO. F216562 AND DESCRIBED IN HCCF NO. G743294, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS INC. IN A DEED RECORDED IN HCCF NO. S056346 AND

THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO A 1/2 INCH IRON ROD FOUND FOR THE SOUTHEAST CORNER OF TRACT I;

THENCE CONTINUING NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 244.64 FEET ALONG A COMMON LINE OF A PREVIOUSLY NOTED 3.4385 ACRE PARCEL OF LAND TO THE EAST AND TRACT I TO THE WEST TO AN "X" FOUND FOR THE NORTHEAST CORNER OF TRACT I AND THE POINT OF BEGINNING;

THENCE, WESTERLY SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 406.61 FEET ALONG THE NORTHERLY LINE OF TRACT 1 TO AN "X" SET ON THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP (350 FEET WIDE);

RP-2021-258619

10

521550.000001 24808189.2

001405



THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO A POINT;

THENCE, EASTERLY 20.00 FEET NORTHERLY FROM AND PARALLEL TO THE NORTHERLY LINE OF TRACT 1, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 401.88 FEET TO A POINT;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST 20.00 FEET TO THE POINT OF BEGINNING AND CONTAINING 0.1856 ACRES OR 8,085 SQUARE FEET OF LAND MORE OR LESS.


**TRACT 3 EASEMENT TRACT**: 20 FOOT NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT;

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND SOUTHERLY OF AND 20.00 FEET WIDE ALONG THE ENTIRE SOUTHERN BOUNDARY LINE OF TRACT 1, SAID EASEMENT CREATED AND GRANTED ON FEBRUARY 16, 1979, FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED FILED IN HCCF NO. G041310, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R HOUCK, JR., TO RESTPROP, LTD.IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 184.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING, WHENCE THE SOUTHEAST CORNER OF TRACT I BEARS NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 20.02 FEET;

THENCE, WESTERLY 20.00 FEET SOUTHERLY FROM AND PARALLEL TO THE SOUTHERLY LINE OF TRACT 1, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 469.23 FEET TO A POINT IN THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP;

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST, 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO THE

RP-2021-258619

521550.000001 24808189.2

11

001406

SOUTHWEST CORNER FOR TRACT 1 FROM WHICH A FOUND RAILROAD
SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST, 2.42 FEET;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 464.50
FEET ALONG THE SOUTHERLY LINE OF TRACT 1 TO A 1/2 INCH IRON ROD FOUND
AT THE SOUTHEAST CORNER OF TRACT 1;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 20.02
FEET ALONG THE A COMMON LINE BETWEEN A PREVIOUSLY DESCRIBED 2.3468
ACRES PARCEL TO THE WEST AND A 3.4385 ACRE PARCEL TO THE EAST TO THE
POINT OF BEGINNING AND CONTAINING 0.2144 ACRES OR 9,337 SQUARE FEET OF
LAND, MORE OR LESS.

**TRACT 4 EASEMENT TRACT**: 28 FOOT ROADWAY AND PEDESTRIAN EASEMENT;

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT ACROSS EASTERLY
28 FEET OF A 2.3468 ACRE TRACT ADJACENT TO AND SOUTHERLY OF TRACT I,
CREATED AND GRANTED IN THAT CERTAIN ROAD AND PEDESTRIAN EASEMENT
DATED FEBRUARY 16, 1979 FROM WEST LOOP HOTEL, LIMITED TO FIN
PROPERTIES, LIMITED, FILED IN HCCF NO. G041313, BEING THE SAME PROPERTY
EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL
WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY
CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY
METES AND BOUNDS AS FOLLOWS;

BEGINNING AT A FOUND 5/8 INCH IRON ROD IN THE NORTHERLY RIGHT OF WAY
LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF
A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE
COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO.
S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED
BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF
NO. R228886;

THENCE, WESTERLY SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, 28.00
FEET ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD TO A POINT;

THENCE, NORTHERLY 28.00 FEET WESTERLY OF AND PARALLEL TO THE
EASTERLY LINE OF SAID 2.3468 ARE TRACT NORTH 02 DEGREES 23 MINUTES 52
SECONDS WEST, 205.08 FEET TO A POINT ON THE SOUTHERLY LINE OF TRACT I;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST,
28.00 FEET ALONG THE SOUTHERLY LINE OF TRACT I TO A 1/2 INCH IRON ROD
FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND PRESENTLY
OWNED BY RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

RP-2021-258619

12

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 204.61 FEET ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST SAID THE PREVIOUSLY DESCRIBED 2.3468 ACRE PARCEL TO THE WEST, TO THE POINT OF BEGINNING, CONTAINING 0.1317 ACRES OR 5,735 SQUARE FEET (CALLED 5,740) OF LAND MORE OR LESS.

**TRACT 5 EASEMENT TRACT**: 5 FOOT STORM SEWER EASEMENT

A 1,025 SQUARE FOOT TRACT OF LAND, BEING THAT SAME TRACT UN PROPERTIES, LIMITED, RECORDED IN HCCF NUMBER G041311, LOCATED IN THE WILLIAM WHITE SURVEY, ABSTRACT NUMBER 836, CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY (ROW) OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. 5056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR. TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE ALONG THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, A DISTANCE OF 16.00 FEET TO THE SOUTHEAST CORNER OF SAID EASEMENT AND THE HEREIN DESCRIBED TRACT;

THENCE CONTINUING ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST A DISTANCE OF 5.00 FEET, THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING SAID WESTHEIMER ROAD, NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, A DISTANCE OF 204.96 FEET, TO A POINT IN THE SOUTHERLY LINE OF A 2.4462 ACRE TRACT CONVEYED BY DEED TO HE 2425 WEST LOOP, LP RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472;

THENCE ALONG THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST A DISTANCE OF 5.00 FEET TO THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, A DISTANCE OF 204.88 FEET TO THE POINT OF BEGINNING AND CONTAINING 1,025 SQUARE FEET OF LAND, MORE OR LESS.

521550.000001 24808189.2

001408

RP-2021-258619
# Pages 14
05/11/2021 12:19 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
TENESHIA HUDSPETH
COUNTY CLERK
Fees $66.00

RP-2021-258619

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

# A. Settlement Statement

## B. Type of Loan

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ Conv Unins | 6. File Number | 7. Loan Number | 8. Mortgage Ins Case Number |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv Ins | 6. ☐ Seller Finance | 12000990 | | |
| 7. ☐ Cash Sale | | | | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing, they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower | E. Name & Address of Seller | F. Name & Address of Lender |
|---|---|---|
| Galleria 2425 Owner, LLC, a Delaware limited liability company<br>60 W 2nd St<br>Freeport, NY 11520 | 2425 WL, LLC, a New York Limited Liability Company<br>2500 West Loop South, Suite 255<br>Houston, TX 77027 | National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch<br>299 Park Avenue<br>New York, NY 10171 |

| G. Property Location | H. Settlement Agent Name |  |
|---|---|---|
| TR 31D ABST 836 W WHITE<br>2425 W Loop S<br>Houston , TX 77027 | TransAct Title - Galleria<br>6117 Richmond Ave, Suite 250<br>Houston, TX 77057  Tax ID: 45-3483105<br>Underwritten By: WFG National Title Insurance Company | |
| | Place of Settlement | I. Settlement Date |
| | TransAct Title - Galleria<br>6117 Richmond Ave, Suite 250<br>Houston, TX 77057 | 5/23/2018<br>Fund: |

| J. Summary of Borrower's Transaction | | | K. Summary of Seller's Transaction | | |
|---|---|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | | **400. Gross Amount Due to Seller** | | |
| 101. Contract Sales Price | | | 401. Contract Sales Price | | $79,500,000.00 |
| 102. Personal Property | | | 402. Personal Property | | |
| 103. Settlement Charges to borrower | | | 403. | | |
| 104. | | | 404. | | |
| 105. | | | 405. | | |
| Adjustments for items paid by seller in advance | | | Adjustments for items paid by seller in advance | | |
| 106. City property taxes | | | 406. City property taxes | | |
| 107. County property taxes | | | 407. County property taxes | | |
| 108. Assessment Taxes | | | 408. Assessment Taxes | | |
| 109. School property taxes | | | 409. School property taxes | | |
| 110. MUD taxes | | | 410. MUD taxes | | |
| 111. Other taxes | | | 411. Other taxes | | |
| 112. | | | 412. | | |
| 113. | | | 413. | | |
| 114. | | | 414. | | |
| 115. | | | 415. | | |
| 116. | | | 416. | | |
| **120. Gross Amount Due From Borrower** | | | **420. Gross Amount Due to Seller** | | $79,500,000.00 |
| **200. Amounts Paid By Or in Behalf Of Borrower** | | | **500. Reductions in Amount Due to Seller** | | |
| 201. Deposit or earnest money | | | 501. Excess Deposit | | |
| 202. Principal amount of new loan(s) | | | 502. Settlement Charges to Seller (line 1400) | | $206,079.65 |
| 203. Existing loan(s) taken subject to | | | 503. Existing Loan(s) Taken Subject to | | |
| 204. Mezzanine financing | | | 504. Payoff of first mortgage loan | | $46,174,360.27 |
| 205. | | | 505. Payoff of second mortgage loan | | $3,039,080.50 |
| 206. | | | 506. Escrow Reserve (Lee et all) | | $50,000.00 |
| 207. Earnest Money pd directly | | | 507. Earnest Money pd directly | | $100.00 |
| 208. | | | 508. CPate Family Investment Payoff | | $608,007.88 |
| 209. | | | 509. CC Multifamily G.P. Payoff | | $608,007.88 |
| Adjustments for items unpaid by seller | | | Adjustments for items unpaid by seller | | |
| 210. City property taxes | | | 510. City property taxes | | |
| 211. County property taxes    01/01/18  05/23/18 | | | 511. County property taxes    01/01/18  05/23/18 | | $363,777.29 |
| 212. Assessment Taxes | | | 512. Assessment Taxes | | |
| 213. School property taxes | | | 513. School property taxes | | |
| 214. MUD taxes | | | 514. MUD taxes | | |
| 215. Other taxes | | | 515. Other taxes | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. SELLER CREDIT TO BUYER | | | 518. SELLER CREDIT TO BUYER | | $14,730,332.38 |
| 219. | | | 519. | | |
| **220. Total Paid By/For Borrower** | | | **520. Total Reduction Amount Due Seller** | | $65,779,745.85 |
| **300. Cash At Settlement From/To Borrower** | | | **600. Cash At Settlement To/From Seller** | | |
| 301. Gross Amount due from borrower (line 120) | | | 601. Gross Amount due to seller (line 420) | | $79,500,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | | | 602. Less reductions in amt. due seller (line 520) | | $65,779,745.85 |
| **303. Cash  Borrower** | | | **603. Cash To Seller** | | $13,720,254.15 |

001410

## L. Settlement Charges

| 700. Total Sales/Broker's Commission based on price | @ % = | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| Division of Commission (line 700) as follows: | | | | |
| 701. | to | | | |
| 702. | to | | | |
| 703. | | | | |
| **800. Items Payable in Connection with Loan** | | | | |
| 801. Loan Origination Fee % | | | | |
| 802. Loan Discount % | to | | | |
| 803. Appraisal Fee | | | | |
| 804. Attorney Fees (Invoice needed) | to | Baker & McKenzie LLP | | |
| 805. Senior Loan | to | Polsinelli | | |
| 806. Mezzanie Loan | to | Polsinelli | | |
| 807. Equity / Joint Venture | to | Polsinelli | | |
| 808. Commitment fee (Mezzanie lender) | to | Naissance Galleria, LLC | | |
| 809. Interest 5/24/18 end 5/29/18 | to | National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch | | |
| 810. Interest 5/29/18 end 6/1/18 | to | National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch | | |
| 811. Interest Reserve Deposit | to | National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch | | |
| 812. 50 bps Upfront Fee | to | National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch | | |
| **900. Items Required by Lender To Be Paid in Advance** | | | | |
| 901. Interest from 5/23/2018 to 6/1/2018 @ $0/day | | | | |
| 902. Mortgage Insurance Premium for months | to | | | |
| 903. Hazard Insurance Premium for years | to | HANDLED OUTSIDE OF | | |
| **1000. Reserves Deposited With Lender** | | | | |
| 1001. Hazard insurance | months @ | per month | | |
| 1002. Mortgage insurance | months @ | per month | | |
| 1003. City property taxes | months @ | per month | | |
| 1004. County property taxes | months @ | per month | | |
| 1005. Assessment Taxes | months @ | per month | | |
| 1006. School property taxes | months @ | per month | | |
| 1007. MUD taxes | months @ | per month | | |
| 1008. Other taxes | months @ | per month | | |
| 1011. Aggregate Adjustment | | | | |
| **1100. Title Charges** | | | | |
| 1101. Settlement or closing fee | to | TransAct Title, LLC-Settlement Fees | | $2,500.00 |
| 1102. Abstract or title search | to | | | |
| 1103. Title examination | to | | | |
| 1104. Title insurance binder | to | TransAct Title, LLC | | |
| 1105. Document preparation (Curative) | to | Umatiya Law Firm, LLC | | $1,250.00 |
| 1106. Notary fees | to | | | |
| 1107. Attorney's fees | to | | | |
| (includes above items numbers: ) | | | | |
| 1108. Title insurance | to | TransAct Title, LLC | | $175,601.00 |
| (includes above items numbers: ) | | | | |
| 1109. Lender's coverage | $51,675,000.00/$13,533.10 | | | |
| 1110. Owner's coverage | $79,500,000.00/$237,161.35 | | | |
| 1111. Escrow fee | to | TransAct Title, LLC | | |
| 1112. Guaranty Assessment Recoupment Fee | to | Texas Title Insurance Guaranty Association | | $4.50 |
| 1113. Courier Service | to | TransAct Title-Courier | | $75.00 |
| 1114. Erecording Fee | to | TransAct Title, LLC-Recording | | $20.00 |
| 1115. Document Review | to | Umatiya Law Firm, PLLC | | |
| 1116. Non-Imputation Endorsement | to | TransAct Title, LLC | | |
| 1117. Adjustable Mortgage Loan | to | TransAct Title, LLC | | |
| 1118. Survey Amendment (OTP only) | to | TransAct Title, LLC | | $26,340.15 |
| 1119. Not yet due/payable (MTP & BIN | to | TransAct Title, LLC | | |
| 1120. T19 Non-Res. Endorsemen | to | TransAct Title, LLC | | |
| 1121. Access Endorsement | to | TransAct Title, LLC | | |
| 1122. Contiguity Endorsement | to | TransAct Title, LLC | | |
| 1123. MSD MTP T-19.2 End | to | TransAct Title, LLC | | |
| 1124. MSD MTP T-19.3 End | to | TransAct Title, LLC | | |
| 1125. REM OTP T-19.1 No Amendment | to | TransAct Title, LLC | | |
| 1126. MSD OTP T-19.2 End | to | TransAct Title, LLC | | |
| 1127. MSD OTP T-19.3 End | to | TransAct Title, LLC | | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Recording Fees Deed $44.00 ; Mortgage $184.00 , Rel $200.00 | to TransAct Title, LLC-Recording | | | $200.00 |
| 1202. City/county tax/stamps Deed ; Mortgage | to | | | |
| 1203. State tax/stamps Deed ; Mortgage | to | | | |
| 1204. Tax certificates | to | Kirby TaxNet, Inc. | | $89.00 |

| 1205 | | to | | | |
|------|---|----|---|---|---|
| **1300. Additional Settlement Charges** | | | | | |
| 1301 | Survey | to | **South Texas Surveying & Associates, Inc.** | | |
| 1302 | Pest Inspection | to | | | |
| 1303 | HOA Transfer Fee | to | | | |
| 1304 | Home Warranty | to | | | |
| 1305 | Third Parties - Appraisal | to | **Jack W. Bass II, MAI** | | |
| 1306 | Promotion | to | **NAZAR (INVOICE NEEDED)** | | |
| 1307 | Promotion | to | **Eastil Secured LLC** | | |
| 1308 | BBG Third Parties -ESA | to | **AWA, LLC dba BBG Assessment** | | |
| 1309 | BBG Third Parties - PCA | to | **AWA, LLC dba BBG Assessment** | | |
| 1310 | Third Parties - Valuations | to | **Hibco Services, LLC** | | |
| 1311 | UCCPlus Policy Premium | to | **UCCPlus Insurance** | | |
| 1312 | | to | | | |
| 1313 | | to | | | |
| 1314 | | to | | | |
| 1315 | | to | | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | | | | **$206,079.65** |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1, 2 and 3 of this HUD-1 Settlement Statement.

**GALLERIA 2425 OWNER, LLC**
a Delaware limited liability company

By: Galleria 2425 JV, LLC
    a Delaware limited liability company,
    its sole member

    By: Naissance Capital Real Estate, LLC
        a Delaware limited liability company
        its Managing Member

        By:_____
           Azeemeh Zaheer, Managing Member

**2425 WL LLC,**
**a New York Limited Liability Company**

By:_____
    **Adam Broder, Sole Member**

SETTLEMENT AGENT CERTIFICATION
The HUD-1 Settlement Statement which I have prepared is a true and accurate
account of this transaction. I have caused the funds to be disbursed in
accordance with this statement.

_____ 5-24-18
Settlement Agent              Date

001412

A. **Settlement Statement**

### B. Type of Loan

| | | | |
|---|---|---|---|
| 1. ☐ FHA   2. ☐ FmHA   3. ☐ Conv Unins | 6. File Number<br>12000990 | 7. Loan Number | 8. Mortgage Ins Case Number |
| 4. ☐ VA   5. ☐ Conv Ins.   6. ☐ Seller Finance | | | |
| 7. ☐ Cash Sale | | | |

C. Note:   This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower | E. Name & Address of Seller | F. Name & Address of Lender |
|---|---|---|
| Galleria 2425 Owner, LLC, a Delaware limited liability company<br>60 W 2nd St<br>Freeport, NY 11520 | 2425 WL, LLC, a New York Limited Liability Company<br>2500 West Loop South, Suite 255<br>Houston, TX 77027 | National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch<br>299 Park Avenue<br>New York, NY 10171 |

| G. Property Location | H. Settlement Agent Name | |
|---|---|---|
| TR 31D ABST 836 W WHITE<br>2425 W Loop S<br>Houston , TX 77027 | TransAct Title - Galleria<br>6117 Richmond Ave, Suite 250<br>Houston, TX 77057   Tax ID: 45-3483105<br>Underwritten By: WFG National Title Insurance Company | |
| | Place of Settlement<br>TransAct Title - Galleria<br>6117 Richmond Ave, Suite 250<br>Houston, TX 77057 | I. Settlement Date<br>5/23/2018<br>Fund: |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract Sales Price | $79,500,000.00 | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to borrower | $3,369,209.67 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City property taxes | | 406. City property taxes | |
| 107. County property taxes | | 407. County property taxes | |
| 108. Assessment Taxes | | 408. Assessment Taxes | |
| 109. School property taxes | | 409. School property taxes | |
| 110. MUD taxes | | 410. MUD taxes | |
| 111. Other taxes | | 411. Other taxes | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower** | $82,869,209.67 | **420. Gross Amount Due to Seller** | |
| **200. Amounts Paid By Or in Behalf Of Borrower** | | **500. Reductions in Amount Due to Seller** | |
| 201. Deposit or earnest money | | 501. Excess Deposit | |
| 202. Principal amount of new loan(s) | $51,675,000.00 | 502. Settlement Charges to Seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing Loan(s) Taken Subject to | |
| 204. Mezzanine financing | $16,100,000.00 | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. Earnest Money pd directly | $100.00 | 507. Earnest Money pd directly | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City property taxes | | 510. City property taxes | |
| 211. County property taxes   01/01/18 05/23/18 | $363,777.29 | 511. County property taxes   01/01/18 05/23/18 | |
| 212. Assessment Taxes | | 512. Assessment Taxes | |
| 213. School property taxes | | 513. School property taxes | |
| 214. MUD taxes | | 514. MUD taxes | |
| 215. Other taxes | | 515. Other taxes | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | $68,138,877.29 | **520. Total Reduction Amount Due Seller** | |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross Amount due from borrower (line 120) | $82,869,209.67 | 601. Gross Amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | $68,138,877.29 | 602. Less reductions in amt. due seller (line 520) | |
| **303. Cash From Borrower** | $14,730,332.38 | **603. Cash To Seller** | |



001414

**L. Settlement Charges**

| | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| **700. Total Sales/Broker's Commission based on price** @ % = | | | |
| Division of Commission (line 700) as follows: | | | |
| 701. | to | | |
| 702. | to | | |
| 703. | | | |
| **800. Items Payable in Connection with Loan** | | | |
| 801. Loan Origination Fee % | to | | |
| 802. Loan Discount % | to | | |
| 803. Appraisal Fee | to | | |
| 804. Attorney Fees (Invoice needed) | to Baker & McKenzie LLP | $150,237.25 | |
| 805. Senior Loan | to Polsinelli | $67,200.25 | |
| 806. Mezzanine Loan | to Polsinelli | $64,340.00 | |
| 807. Equity / Joint Venture | to Polsinelli | $26,417.00 | |
| 808. Commitment fee (Mezzanie lender) | to Naissance Galleria, LLC | $161,000.00 | |
| 809. Interest 5/24/18 end 5/29/18 | to National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch | $32,308.29 | |
| 810. Interest 5/29/18 end 6/1/18 | to National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch | $24,287.25 | |
| 811. Interest Reserve Deposit | to National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch | $2,500,000.00 | |
| 812. 50 bps Upfront Fee | to National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York branch | $258,375.00 | |
| **900. Items Required by Lender To Be Paid in Advance** | | | |
| 901. Interest from @ $0/day | | | |
| 902. Mortgage Insurance Premium for months | to | | |
| 903. Hazard Insurance Premium for years | to HANDLED OUTSIDE OF SETTLEMENT | | |
| **1000. Reserves Deposited With Lender** | | | |
| 1001. Hazard insurance | months @ per month | | |
| 1002. Mortgage insurance | months @ per month | | |
| 1003. City property taxes | months @ per month | | |
| 1004. County property taxes | months @ per month | | |
| 1005. Assessment Taxes | months @ per month | | |
| 1006. School property taxes | months @ per month | | |
| 1007. MUD taxes | months @ per month | | |
| 1008. Other taxes | months @ per month | | |
| 1011. Aggregate Adjustment | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee | to TransAct Title, LLC-Settlement Fees | $2,500.00 | |
| 1102. Abstract or title search | to | | |
| 1103. Title examination | to | | |
| 1104. Title insurance binder | to TransAct Title, LLC | | |
| 1105. Document preparation (Curative) | to Umatiya Law Firm, LLC | | |
| 1106. Notary fees | to | | |
| 1107. Attorney's fees | to | | |
| (includes above items numbers: | ) | | |
| 1108. Title insurance | to TransAct Title, LLC | $100.00 | |
| (includes above items numbers: | ) | | |
| 1109. Lender's coverage | $51,675,000.00/$13,533.10 . | | |
| 1110. Owner's coverage | $79,500,000.00/$237,161.35 | | |
| 1111. Escrow fee | to TransAct Title, LLC | | |
| 1112. Guaranty Assessment Recoupment Fee | to Texas Title Insurance Guaranty Association | $4.50 | |
| 1113. Courier Service | to TransAct Title-Courier | $150.00 | |
| 1114. Erecording Fee | to TransAct Title, LLC-Recording | $20.00 | |
| 1115. Document Review | to Umatiya Law Firm, PLLC | | |
| 1116. Non-Imputation Endorsement | to TransAct Title, LLC | $8,780.05 | |
| 1117. Adjustable Mortgage Loan | to TransAct Title, LLC | $20.00 | |
| 1118. Survey Amendment (OTP only) | to TransAct Title, LLC | | |
| 1119. Not yet due/payable (MTP & BIN | to TransAct Title, LLC | $5.00 | |
| 1120. T19 Non-Res. Endorsemen | to TransAct Title, LLC | $13,108.10 | |
| 1121. Access Endorsement | to TransAct Title, LLC | $100.00 | |
| 1122. Contiguity Endorsement | to TransAct Title, LLC | $100.00 | |
| 1123. MSD MTP T-19.2 End | to TransAct Title, LLC | $50.00 | |
| 1124. MSD MTP T-19.3 End | to TransAct Title, LLC | $50.00 | |
| 1125. REM OTP T-19.1 No Amendment | to TransAct Title, LLC | $26,340.15 | |
| 1126. MSD OTP T-19.2 End | to TransAct Title, LLC | $50.00 | |
| 1127. MSD OTP T-19.3 End | to TransAct Title, LLC | $50.00 | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Recording Fees | Deed $44.00 ; Mortgage $184.00 ; Rel $200.00 to TransAct Title, LLC-Recording | $228.00 | |
| 1202. City/county tax/stamps | Deed ; Mortgage to | | |
| 1203. State tax/stamps | Deed ; Mortgage to | | |



| | | | | |
|---|---|---|---|---|
| 1204. Tax certificates | to | Kirby TaxNet, Inc. | | |
| 1205. | to | | | |
| **1300. Additional Settlement Charges** | | | | |
| 1301. Survey | to | South Texas Surveying & Associates, Inc. | $3,193.38 | |
| 1302. Pest Inspection | to | | | |
| 1303. HOA Transfer Fee | to | | | |
| 1304. Home Warranty | to | | | |
| 1305. Third Parties - Appraisal | to | Jack W. Bass II, MAI | $2,000.00 | |
| 1306. Promotion | to | NAZAR (INVOICE NEEDED) | $1,200.00 | |
| 1307. Promotion | to | Eastil Secured LLC | $5,979.00 | |
| 1308. BBG Third Parties -ESA | to | AWA, LLC dba BBG Assessment | $2,450.00 | |
| 1309. BBG Third Parties - PCA | to | AWA, LLC dba BBG Assessment | $2,650.00 | |
| 1310. Third Parties - Valuations | to | Hibco Services, LLC | $3,731.00 | |
| 1311. UCCPlus Policy Premium | to | UCCPlus Insurance | $12,185.45 | |
| 1312. | to | | | |
| 1313. | to | | | |
| 1314. | to | | | |
| 1315. | to | | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | | $3,369,209.67 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1, 2 and 3 of this HUD-1 Settlement Statement.

**GALLERIA 2425 OWNER, LLC**
a Delaware limited liability company

By: Galleria 2425 JV, LLC
a Delaware limited liability company,
its sole member

By: Naissance Capital Real Estate, LLC
a Delaware limited liability company,
its Managing Member

By: _____
Azeemeh Zaheer, Managing Member

**2425 WL LLC,**
**a New York Limited Liability Company**

By: _____
Adam Broder, Sole Member

SETTLEMENT AGENT CERTIFICATION

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

_____     _____
Settlement Agent                            Date

**Warning:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

| | | |
|---|---|---|
| Previous Editions are Obsolete | Page 3 | form **HUD-1** (3/86) Handbook 4305.2 |

001416

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2021-4280    FILED 9/15/2021 8:41:58 AM

2425 WEST LOOP SOUTH, HOUSTON, TEXAS 77027                              6286-13

## NOTICE OF FORECLOSURE SALE

**1  THE PROPERTY TO BE SOLD**
   LEGAL DESCRIPTION    SEE EXHIBIT "A" ATTACHED HERETO

**2  THE DEED OF TRUST TO BE FORECLOSED UPON**

| RECORDED IN REAL PROPERTY RECORDS OF HARRIS COUNTY | RECORDED ON MAY 11, 2021 | UNDER DOCUMENT# RP-2021-258619 |
|---|---|---|

**3  THE SALE IS SCHEDULED TO BE HELD**

| PLACE | DATE/ | TIME |
|---|---|---|
| THE BAYOU CITY EVENT CENTER PAVILION LOCATED AT 9401 KNIGHT RD, HOUSTON, TX 77045 OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE | OCTOBER 5, 2021 | 10:00 AM – 1:00 PM |

### TERMS OF SALE

The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the Deed of Trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the Property. Pursuant to § 51.009 of the TEXAS PROPERTY CODE, the Property will be sold in "AS IS, WHERE IS" condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the Deed of Trust.

### OBLIGATIONS SECURED

The Deed of Trust dated May 23, 2018, and executed by Galleria 2425 Owner, LLC, provides that it secures the payment of the indebtedness in the original principal amount of $14,730,332.38, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions and/or modifications of the note. 2425 WL, LLC is the current owner and holder of the note and deed of trust. The address of 2425 WL, LLC is 11509 S. Lou Al Drive, Houston, Texas 77024. TEXAS PROPERTY CODE § 51.0025 authorizes mortgagee to collect the debt.

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

In accordance with Texas Property Code § 51.0076, the undersigned attorney for the mortgagee has named and appointed, and by these presents does name and appoint the following as Substitute Trustee to act under and by virtue of said Deed of Trust:

ANNA SEWART, DAVID BARRY, BYRON SEWART, HELEN HENDERSON, NICK FRAME, AUSTIN DUBOIS, CHEYANNE TROUTT, PATRICIA POSTON, NICHOLAS S. CAMPBELL, ANNAROSE M. HARDING, SARA A. MORTON, and/or BRANCH M. SHEPPARD.

ATTORNEYS AT LAW

Branch M. Sheppard
Annarose M. Harding
Sara A. Morton

GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
A PROFESSIONAL LAW CORPORATION
1301 McKinney Street, Suite 1400
Houston, Texas 77010
(713) 599-0700

### CERTIFICATE OF POSTING

I declare under penalty of perjury that I filed this Notice of Foreclosure Sale at the office of the County Clerk and caused it to be posted at the location directed by the County Commissioners Court.

POSTED _____ 9/13/21

SIGNATURE _____    BRANCH M. SHEPPARD TRUSTEE

001418

FILED 9/15/2021 8:41:58 AM    FRCL-2021-4280    TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

**TRACT 1: FEE TRACT**

BEING 2.4462 ACRES (106,557 SQUARE FEET) OF LAND OUT OF THE WILLIAM WHITE SURVEY, ABSTRACT NO. 836, HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED TO 2425 WEST LOOP, LP BY SPECIAL WARRANTY DEED RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472, SAID TRACT CONVEYED BY DEED TO ONE WEST LOOP PLAZA, LTD. UNDER HCCF NO. S547896 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE WESTHEIMER ROAD (ROW VARIES) BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST, TO A 1/2 INCH IRON ROD FOUND AT THE NORTHEAST CORNER OF THE 2.3468 ACRE PARCEL BEING THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED PARCEL AND THE POINT OF BEGINNING:

THENCE, WESTERLY ALONG THE COMMON LINE OF THE 2.3468 ACRE PARCEL TO THE SOUTH AND THE HEREIN DESCRIBED PARCEL TO THE NORTH, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 464.50 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY (ROW) LINE OF INTERSTATE 610 WEST LOOP AND THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL FROM WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST 2.42 FEET;

THENCE, NORTHERLY ALONG THE EASTERLY RIGHT OF WAY LINE OF INTERSTATE 610 WEST LOOP (ROW 350 FEET) NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 251.27 FEET TO AN "X" SET IN CONCRETE BEING THE SOUTHWEST CORNER OF A 7.8998 ACRE PARCEL AS SHOWN ON THE HOUSTON VENTURE PLAT UNRESTRICTED RESERVE "A" FILED IN THE HARRIS COUNTY MAP RECORDS AS FILM CODE NUMBER 356074, AND THE NORTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL;

THENCE, EASTERLY ALONG THE COMMON LINE OF THE ABOVE INDICATED 7.8998 ACRE PARCEL TO THE NORTH AND THE HEREIN DESCRIBED PARCEL TO THE SOUTH NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 406.61 FEET TO AN "X"

001419

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FILED 9/15/2021 8:41:58 AM          FRCL-2021-4280

FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND CONVEYED TO RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

THENCE, SOUTHERLY ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST AND THE HEREIN DESCRIBED PARCEL TO THE WEST, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 244.64 FEET TO THE POINT OF BEGINNING CONTAINING 106,557 SQUARE FEET, 2.4462 ACRES MORE LESS.

**TRACT 2 EASEMENT TRACT**: 20 FOOT NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND NORTHERLY OF AND 20 FEET WIDE ALONG THE ENTIRE NORTHERLY BOUNDARY LINE OF TRACT I; SAID EASEMENT CREATED AND GRANTED BY VI IAN L. SMITH, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF R. E. SMITH, DECEASED IN THAT CERTAIN GENERAL WARRANTY DEED DATED JULY 5, 1977 FILED IN HCCF NO. F216562 AND DESCRIBED IN HCCF NO. G743294, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS INC. IN A DEED RECORDED IN HCCF NO. S056346 AND

THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO A 1/2 INCH IRON ROD FOUND FOR THE SOUTHEAST CORNER OF TRACT I;

THENCE CONTINUING NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 244.64 FEET ALONG A COMMON LINE OF A PREVIOUSLY NOTED 3.4385 ACRE PARCEL OF LAND TO THE EAST AND TRACT I TO THE WEST TO AN "X" FOUND FOR THE NORTHEAST CORNER OF TRACT I AND THE POINT OF BEGINNING;

THENCE, WESTERLY SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 406.61 FEET ALONG THE NORTHERLY LINE OF TRACT 1 TO AN "X" SET ON THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP (350 FEET WIDE);

001420

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2021-4280

FILED 9/15/2021 8:41:58 AM

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO A POINT;

THENCE, EASTERLY 20.00 FEET NORTHERLY FROM AND PARALLEL TO THE NORTHERLY LINE OF TRACT 1, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 401.88 FEET TO A POINT;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST 20.00 FEET TO THE POINT OF BEGINNING AND CONTAINING 0.1856 ACRES OR 8,085 SQUARE FEET OF LAND MORE OR LESS.

**TRACT 3 EASEMENT TRACT:** 20 FOOT NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT;

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND SOUTHERLY OF AND 20.00 FEET WIDE ALONG THE ENTIRE SOUTHERN BOUNDARY LINE OF TRACT 1, SAID EASEMENT CREATED AND GRANTED ON FEBRUARY 16, 1979, FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED FILED IN HCCF NO. G041310, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 184.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING, WHENCE THE SOUTHEAST CORNER OF TRACT 1 BEARS NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 20.02 FEET;

THENCE, WESTERLY 20.00 FEET SOUTHERLY FROM AND PARALLEL TO THE SOUTHERLY LINE OF TRACT 1, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 469.23 FEET TO A POINT IN THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP;

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST, 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO THE

001421

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FILED 9/15/2021 8:41:58 AM

FRCL-2021-4280

SOUTHWEST CORNER FOR TRACT 1 FROM WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST, 2.42 FEET;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 464.50 FEET ALONG THE SOUTHERLY LINE OF TRACT 1 TO A 1/2 INCH IRON ROD FOUND AT THE SOUTHEAST CORNER OF TRACT 1;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 20.02 FEET ALONG THE A COMMON LINE BETWEEN A PREVIOUSLY DESCRIBED 2.3468 ACRES PARCEL TO THE WEST AND A 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING AND CONTAINING 0.2144 ACRES OR 9,337 SQUARE FEET OF LAND, MORE OR LESS.

**TRACT 4 EASEMENT TRACT:** 28 FOOT ROADWAY AND PEDESTRIAN EASEMENT;

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT ACROSS EASTERLY 28 FEET OF A 2.3468 ACRE TRACT ADJACENT TO AND SOUTHERLY OF TRACT I, CREATED AND GRANTED IN THAT CERTAIN ROAD AND PEDESTRIAN EASEMENT DATED FEBRUARY 16, 1979 FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED, FILED IN HCCF NO. G041313, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT A FOUND 5/8 INCH IRON ROD IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, WESTERLY SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, 28.00 FEET ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD TO A POINT;

THENCE, NORTHERLY 28.00 FEET WESTERLY OF AND PARALLEL TO THE EASTERLY LINE OF SAID 2.3468 ARE TRACT NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 205.08 FEET TO A POINT ON THE SOUTHERLY LINE OF TRACT I;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 28.00 FEET ALONG THE SOUTHERLY LINE OF TRACT I TO A 1/2 INCH IRON ROD FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND PRESENTLY OWNED BY RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

001422

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 204.61 FEET ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST SAID THE PREVIOUSLY DESCRIBED 2.3468 ACRE PARCEL TO THE WEST, TO THE POINT OF BEGINNING, CONTAINING 0.1317 ACRES OR 5,735 SQUARE FEET (CALLED 5,740) OF LAND MORE OR LESS.

**TRACT 5 EASEMENT TRACT:** 5 FOOT STORM SEWER EASEMENT

A 1,025 SQUARE FOOT TRACT OF LAND, BEING THAT SAME TRACT UN PROPERTIES, LIMITED, RECORDED IN HCCF NUMBER G041311, LOCATED IN THE WILLIAM WHITE SURVEY, ABSTRACT NUMBER 836, CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY (ROW) OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. 5056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR. TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE ALONG THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, A DISTANCE OF 16.00 FEET TO THE SOUTHEAST CORNER OF SAID EASEMENT AND THE HEREIN DESCRIBED TRACT;

THENCE CONTINUING ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST A DISTANCE OF 5.00 FEET, THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING SAID WESTHEIMER ROAD, NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, A DISTANCE OF 204.96 FEET, TO A POINT IN THE SOUTHERLY LINE OF A 2.4462 ACRE TRACT CONVEYED BY DEED TO HE 2425 WEST LOOP, LP RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472;

THENCE ALONG THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST A DISTANCE OF 5.00 FEET TO THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, A DISTANCE OF 204.88 FEET TO THE POINT OF BEGINNING AND CONTAINING 1,025 SQUARE FEET OF LAND, MORE OR LESS.

001423

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE.**

2425 WEST LOOP SOUTH, HOUSTON, TEXAS 77027                    6286-15

# SUBSTITUTE TRUSTEE'S DEED

| GRANTOR(S) | ORIGINAL MORTGAGEE | DEED OF TRUST DATE |
|---|---|---|
| Galleria 2425 Owner, LLC | 2425 WL, LLC | May 23, 2018 |

| CURRENT MORTGAGEE | GRANTEE'S MAILING ADDRESS | RECORDED IN |
|---|---|---|
| 11509 S. Lou Al Drive Houston, Texas 77024 | 11509 S. Lou Al Drive Houston, Texas 77024 | RP-2021-258619 |

| PLACE OF SALE | TIME OF SALE |
|---|---|
| THE BAYOU CITY EVENT CENTER PAVILION LOCATED AT 9401 KNIGHT RD, HOUSTON, TX 77045 OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE | 10:50 AM |

| COUNTY | DATE OF SALE | AMOUNT OF SALE |
|---|---|---|
| HARRIS | OCTOBER 5, 2021 | $500,000.00 |

**LEGAL DESCRIPTION**

SEE EXHIBIT "A"

---

Grantor(s) conveyed the property to Trustee to secure payment of the Note. Mortgagee declared that Grantor(s) defaulted in performing the obligations of the Deed of Trust. Mortgagee accordingly has appointed Substitute Trustee and requested Substitute Trustee to enforce the Deed of Trust.

Notice stating time, place, and terms of sale of the property were mailed, posted, and filed, as required by law. Substitute Trustee sold the property to Buyer, who was the highest bidder at the public auction, for amount of sale in the manner proscribed by law. The subject sale was conducted no earlier than **10:00 AM** as set forth in the Notice of Substitute Trustee's Sale and was concluded within three (3) hours of such time. All matters, duties, and obligations of the Mortgagee were lawfully performed.

Substitute Trustee, subject to any matters of record, and amount of sale paid by buyer as consideration, grants, sells, and conveys to Buyer, Buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor. Substitute Trustee hereby sells the above referenced property **AS IS** without any expressed or implied warranties, except as to warranties of title, and hereby conveys the property to the purchaser at the purchaser's own risk, pursuant to the terms of Texas Property Code §§51.002 and 51.009.

WITNESS MY HAND, THIS 8TH OCTOBER, 2021.

_____
Branch M. Sheppard, Substitute Trustee

---

**UPON RECORDING, PLEASE RETURN TO**
GALLOWAY LAW FIRM, 1301 McKinney, Suite 1400, Houston, Texas 77010                    P a g e  | 1
C/O BRANCH SHEPPARD

001424

2425 WEST LOOP SOUTH, HOUSTON, TEXAS 77027

6286-15

STATE OF TEXAS      §
COUNTY OF HARRIS    §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Branch M. Sheppard, Substitute Trustee, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed same for the purposes and consideration therein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME on this 8th day of October, 2021.



HALEY SHEPPARD
My Notary ID # 130785989
Expires August 19, 2024

_____
NOTARY PUBLIC, in and for the State of TEXAS

**UPON RECORDING, PLEASE RETURN TO**
GALLOWAY LAW FIRM, 1301 McKinney, Suite 1400, Houston, Texas 77010
C/O BRANCH SHEPPARD

P a g e  | 2

001425

# EXHIBIT 1                 AFFIDAVIT OF POSTING/FILING NOTICE OF SALE

BEFORE ME, the undersigned authority, personally appeared the undersigned affiant who, after being duly sworn, deposes and states under oath as follows:

"I am above the age of eighteen (18) years and am competent to make this affidavit and knowledgeable of the statements made in this affidavit.

At the instructions of the servicer and/or holder and/or owner of the indebtedness secured by a Deed of Trust, dated MAY 11, 2021, executed by 2425 WL, LLC, and recorded in the office of the County Clerk in the Clerk's File No. 2021-258619 of HARRIS County, Texas;

**1** written notice of the proposed sale designating the County in which the property securing the above Deed of Trust will be sold, was posted ("Notice of Sale") at the courthouse door of each County in which the property securing the above deed is located, or as otherwise designated by the County Commissioners;

**2** a copy of said Notice of Sale was filed in the office of the County Clerk of the County Clerk of the County in which the sale was made;

**3** a copy of said Notice of Sale was mailed to each debtor who according to the records of such servicer and/or holder and/or owner is obligated to pay the debt;

**4** service of said mailed Notice of Sale was completed on SEPTEMBER 14, 2021, by depositing said Notice of Sale in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address on SEPTEMBER 14, 2021; and

**5** service was completed at least twenty-one (21) days preceding the date of the scheduled sale on OCTOBER 5, 2021.

**6** Further, to the best of my knowledge and belief, the obligor(s) had not filed any bankruptcy proceeding(s) and no bankruptcy proceedings were pending at the time of sale;

**7** and, based upon information obtained from the U.S. Defense Manpower internet military website, it is my belief that such obligor(s) is/are not in the armed services of the United States of America twelve months prior hereto or on the date of the foreclosure sale and as of the date of this Affidavit."

SIGNED on October 8, 2021.

_____
Branch M. Sheppard, Substitute Trustee

STATE OF TEXAS          §
COUNTY OF HARRIS        §

BEFORE ME, the undersigned authority on this day personally appeared Branch M. Sheppard known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed same in the capacity herein stated and for the purposes and consideration therein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME on October 8, 2021.

HALEY SHEPPARD
My Notary ID # 130785989
Expires August 19, 2024

_____
NOTARY PUBLIC, in and for the State of TEXAS

**UPON RECORDING, PLEASE RETURN TO**
GALLOWAY LAW FIRM, 1301 McKinney, Suite 1400, Houston, Texas 77010            Page | 3
C/O BRANCH SHEPPARD

001426

EXHIBIT A
PROPERTY DESCRIPTION

**TRACT 1: FEE TRACT**

BEING 2.4462 ACRES (106,557 SQUARE FEET) OF LAND OUT OF THE WILLIAM WHITE SURVEY, ABSTRACT NO. 836, HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED TO 2425 WEST LOOP, LP BY SPECIAL WARRANTY DEED RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472, SAID TRACT CONVEYED BY DEED TO ONE WEST LOOP PLAZA, LTD. UNDER HCCF NO. S547896 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE WESTHEIMER ROAD (ROW VARIES) BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST, TO A 1/2 INCH IRON ROD FOUND AT THE NORTHEAST CORNER OF THE 2.3468 ACRE PARCEL BEING THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED PARCEL AND THE POINT OF BEGINNING:

THENCE, WESTERLY ALONG THE COMMON LINE OF THE 2.3468 ACRE PARCEL TO THE SOUTH AND THE HEREIN DESCRIBED PARCEL TO THE NORTH, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 464.50 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY (ROW) LINE OF INTERSTATE 610 WEST LOOP AND THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL FROM. WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST 2.42 FEET;

THENCE, NORTHERLY ALONG THE EASTERLY RIGHT OF WAY LINE OF INTERSTATE 610 WEST LOOP (ROW 350 FEET) NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 251.27 FEET TO AN "X" SET IN CONCRETE BEING THE SOUTHWEST CORNER OF A 7.8998 ACRE PARCEL AS SHOWN ON THE HOUSTON VENTURE PLAT UNRESTRICTED RESERVE "A" FILED IN THE HARRIS COUNTY MAP RECORDS AS FILM CODE NUMBER 356074, AND THE NORTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL;

THENCE, EASTERLY ALONG THE COMMON LINE OF THE ABOVE INDICATED 7.8998 ACRE PARCEL TO THE NORTH AND THE HEREIN DESCRIBED PARCEL TO THE SOUTH NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 406.61 FEET TO AN "X"

Page 1 of 5

001427

FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND CONVEYED TO RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

THENCE, SOUTHERLY ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST AND THE HEREIN DESCRIBED PARCEL TO THE WEST, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 244.64 FEET TO THE POINT OF BEGINNING CONTAINING 106,557 SQUARE FEET, 2.4462 ACRES MORE LESS.


**TRACT 2 EASEMENT TRACT**: 20 FOOT NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND NORTHERLY OF AND 20 FEET WIDE ALONG THE ENTIRE NORTHERLY BOUNDARY LINE OF TRACT I; SAID EASEMENT CREATED AND GRANTED BY VI IAN L. SMITH, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF R. E. SMITH, DECEASED IN THAT CERTAIN GENERAL WARRANTY DEED DATED JULY 5, 1977 FILED IN HCCF NO. F216562 AND DESCRIBED IN HCCF NO. G743294, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS INC. IN A DEED RECORDED IN HCCF NO. S056346 AND

THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO A 1/2 INCH IRON ROD FOUND FOR THE SOUTHEAST CORNER OF TRACT I;

THENCE CONTINUING NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 244.64 FEET ALONG A COMMON LINE OF A PREVIOUSLY NOTED 3.4385 ACRE PARCEL OF LAND TO THE EAST AND TRACT I TO THE WEST TO AN "X" FOUND FOR THE NORTHEAST CORNER OF TRACT I AND THE POINT OF BEGINNING;

THENCE, WESTERLY SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 406.61 FEET ALONG THE NORTHERLY LINE OF TRACT 1 TO AN "X" SET ON THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP (350 FEET WIDE);

001428

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO A POINT;

THENCE, EASTERLY 20.00 FEET NORTHERLY FROM AND PARALLEL TO THE NORTHERLY LINE OF TRACT 1, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 401.88 FEET TO A POINT;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST 20.00 FEET TO THE POINT OF BEGINNING AND CONTAINING 0.1856 ACRES OR 8,085 SQUARE FEET OF LAND MORE OR LESS.


**TRACT 3 EASEMENT TRACT**: 20 FOOT NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT;

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND SOUTHERLY OF AND 20.00 FEET WIDE ALONG THE ENTIRE SOUTHERN BOUNDARY LINE OF TRACT 1, SAID EASEMENT CREATED AND GRANTED ON FEBRUARY 16, 1979, FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED FILED IN HCCF NO. G041310, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 184.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING, WHENCE THE SOUTHEAST CORNER OF TRACT I BEARS NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 20.02 FEET;

THENCE, WESTERLY 20.00 FEET SOUTHERLY FROM AND PARALLEL TO THE SOUTHERLY LINE OF TRACT 1, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 469.23 FEET TO A POINT IN THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP;

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST, 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO THE

001429

SOUTHWEST CORNER FOR TRACT 1 FROM WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST, 2.42 FEET;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 464.50 FEET ALONG THE SOUTHERLY LINE OF TRACT 1 TO A 1/2 INCH IRON ROD FOUND AT THE SOUTHEAST CORNER OF TRACT 1;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 20.02 FEET ALONG THE A COMMON LINE BETWEEN A PREVIOUSLY DESCRIBED 2.3468 ACRES PARCEL TO THE WEST AND A 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING AND CONTAINING 0.2144 ACRES OR 9,337 SQUARE FEET OF LAND, MORE OR LESS.


**TRACT 4 EASEMENT TRACT**: 28 FOOT ROADWAY AND PEDESTRIAN EASEMENT;

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT ACROSS EASTERLY 28 FEET OF A 2.3468 ACRE TRACT ADJACENT TO AND SOUTHERLY OF TRACT I, CREATED AND GRANTED IN THAT CERTAIN ROAD AND PEDESTRIAN EASEMENT DATED FEBRUARY 16, 1979 FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED, FILED IN HCCF NO. G041313, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT A FOUND 5/8 INCH IRON ROD IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, WESTERLY SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, 28.00 FEET ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD TO A POINT;

THENCE, NORTHERLY 28.00 FEET WESTERLY OF AND PARALLEL TO THE EASTERLY LINE OF SAID 2.3468 ARE TRACT NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 205.08 FEET TO A POINT ON THE SOUTHERLY LINE OF TRACT I;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 28.00 FEET ALONG THE SOUTHERLY LINE OF TRACT I TO A 1/2 INCH IRON ROD FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND PRESENTLY OWNED BY RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

001430

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 204.61 FEET ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST SAID THE PREVIOUSLY DESCRIBED 2.3468 ACRE PARCEL TO THE WEST, TO THE POINT OF BEGINNING, CONTAINING 0.1317 ACRES OR 5,735 SQUARE FEET (CALLED 5,740) OF LAND MORE OR LESS.

**TRACT 5 EASEMENT TRACT**: 5 FOOT STORM SEWER EASEMENT

A 1,025 SQUARE FOOT TRACT OF LAND, BEING THAT SAME TRACT UN PROPERTIES, LIMITED, RECORDED IN HCCF NUMBER G041311, LOCATED IN THE WILLIAM WHITE SURVEY, ABSTRACT NUMBER 836, CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY (ROW) OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. 5056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR. TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE ALONG THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, A DISTANCE OF 16.00 FEET TO THE SOUTHEAST CORNER OF SAID EASEMENT AND THE HEREIN DESCRIBED TRACT;

THENCE CONTINUING ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST A DISTANCE OF 5.00 FEET, THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING SAID WESTHEIMER ROAD, NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, A DISTANCE OF 204.96 FEET, TO A POINT IN THE SOUTHERLY LINE OF A 2.4462 ACRE TRACT CONVEYED BY DEED TO HE 2425 WEST LOOP, LP RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472;

THENCE ALONG THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST A DISTANCE OF 5.00 FEET TO THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, A DISTANCE OF 204.88 FEET TO THE POINT OF BEGINNING AND CONTAINING 1,025 SQUARE FEET OF LAND, MORE OR LESS.

001431

000287

## AGENCY AGREEMENT

THIS AGENCY AGREEMENT is effective as of the 29 day of MAL, 2018 (this "**Agreement**"), by and between ALI CHOUDHRI ("**Principal**"), and AZEEMEH ZAHEER and the entities listed in Exhibit A attached hereto and made a part hereof for all purposes formed by Azeemeh Zaheer (collectively, "**Agent**").

### RECITALS:

A.     The "**Agency Entities**" (as defined in Exhibit A) have been formed by Azeemeh Zaheer ("**Zaheer**") as the organizer under various articles of organization and other organizational documents, including, without limitation, regulations and company agreements to purchase various properties on behalf of the Principal, including, without limitation, holding record title to the properties ("**Investment Properties**") owned by any of the Agency Entities and the parties agree that Principal owns (directly or indirectly) one hundred percent (100%) of each of the Agency Entities.

B.     Until otherwise terminated, Principal intends that record title to the "**Investment Properties**" be acquired and held by Agent on behalf of Principal and appoints Agent as Principal's agent and nominee for the express purpose of holding record title to the Investment Properties and administering the Investment Properties on Principal's behalf.

### AGREEMENT:

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the parties hereto do hereby agree as follows:

1.     **Purpose of this Agreement; Appointment of Agent.**   Principal hereby designates and appoints Agent as Principal's agent for the express purpose of acquiring and holding record title to the Investment Properties and acting on Principal's behalf in connection with the administration of the Investment Properties, and Agent accepts such designation and agrees to act pursuant to Principal's specific written directions with regard to the Investment Properties, but not otherwise.   Agent shall hold record title with respect to the Investment Properties, and will take such action with respect to the Investment Properties as Principal may direct.   Principal shall bear the responsibility for all expenses incurred by Agent in fulfilling these responsibilities. Notwithstanding that Agent holds record title to the Investment Properties and acts as Principal's agent with respect to the Investment Properties, Principal shall possess all of the benefits and burdens of ownership of the Investment Properties, including the ownership of the Investment Properties for U.S. federal, and applicable state, local and other, income tax purposes.   In furtherance of the preceding provisions, the parties hereto expressly provide as follows:

(a)     Principal hereby constitutes and appoints Agent as nominee and agent for Principal with respect to the ownership of the Investment Properties, including the acquisition, management, operation and disposition of all or any portion of the Investment Properties as agent for Principal, the execution of documents or other

1

521550.0000[ 20588180.1

C049-001

001432

000268

instruments with respect thereto and the making or granting of any election, determination, waiver, consent or other similar action with respect thereto.

(b)   Notwithstanding anything herein or Exhibit A to the contrary, the Agency Entities shall deemed to include all entities organized by the Agent on or after the date hereof unless Agent and Principal enter a separate written agreement specifically releasing any such entity as an Agency Entity.

(c)   Principal hereby ratifies, reconfirms and agrees to any actions of and any agreements and transactions entered into by Agent prior to the date of this Agreement on Principal's behalf as its nominee and agent with respect to the Investment Properties.

(d)   Agent, with the specific written authorization of Principal, but not otherwise, may appoint any person, firm or corporation to act as its agent or representative for the purpose of performing any function that Agent is or may be authorized by Principal to perform.

Principal and Agent intend that Principal shall have the sole and exclusive right and control to make and direct all decisions relating to the Agency Entities, including, without limitation:

(a)   the sale, pledge, assignment, transfer, conveyance and/or alienation of any and all assets held by the Agency Entities;

(b)   the approval of any and all Leases, including amendments thereto, related to any and all real estate held by the Agency Entities;

(c)   the sale, pledge, assignment, transfer, conveyance and/or alienation of any or all ownership or membership interests in the Agency Entities;

(d)   the approval of any financing, including refinancing, of any debt associated with any and all real estate held by the Agency Entities;

(e)   the placement of any additional debt on any and all real estate held by the Agency Entities; and

(f)   the approval of any and all budgets as required of, or contemplated by, the organizational documents of the Agency Entities.

2.   **Cooperation; Actions.**  Agent will cooperate with Principal in taking such action as is practicable to cause all income and other revenues from the Investment Properties to inure to the sole benefit of Principal and communications from others with respect thereto to be directed to Principal at such address as Principal may furnish to Agent. Agent shall execute any documents or instruments as authorized by Principal.

3.   **Furnishing of Information.**  Upon Principal's request, Agent will furnish to Principal true and correct copies of all title information, conveyances, agreements and other documents and all pertinent accounting and historical information in Agent's possession relating

2

531550.000001 20688180.1




001433

000269

to the Investment Properties. Upon Agent's request, Principal will furnish to Agent written authorization to act on behalf of Principal as shall be necessary to the performance by Agent of its duties under this Agreement. Principal will be available to and will cooperate with Agent to furnish information relating to the Investment Properties.

4.     **Bank Account; Collection of Revenues and Proceeds.** Agent shall maintain bank accounts and handle the collection of revenues and proceeds with respect to the Investment Properties. In this connection, it is contemplated that all income and other revenues and distributions from the Investment Properties shall be paid to Principal and Agent shall deposit such funds into a bank account held by Agent or as otherwise provided in writing by Principal.

5.     **Books and Records.** Agent shall maintain books and records related to the Investment Properties, including such books and records as are necessary to document record title or as relate to the agency arrangement described herein or as is otherwise required for Principal or Agent to comply with all applicable laws, rules and regulations with respect to their contemplated activities and the existence of the agency relationship pursuant to this Agreement.

6.     **Liability and Reimbursement.** Principal shall be liable for all costs, expenses, taxes and other charges arising in connection with Agent's holding record title to the Investment Properties. In this connection, Principal shall pay directly for Agent any such costs, expenses, taxes and charges that Agent is required to pay and for the actual cost to Agent of any services for which Agent contracts for the purpose of complying with the directions of Principal, including the costs of legal, accounting and other professional services and advice, administrative and management costs and franchise and other U.S. federal, state and local taxes.

7.     **Indemnification.** Principal shall defend, indemnify and hold harmless Agent and its shareholders, partners, members, officers, directors, employees, agents and representatives from and against all claims, damages, losses and expenses (including attorneys' fees and litigation expenses) (collectively, "Losses") which arise directly or indirectly from or in connection with Agent's performance of its obligations under this Agreement, including (a) Agent holding record title to the Investment Properties pursuant to the terms of this Agreement; (b) Agent acting in accordance with any written directions from Principal or Principal's agent; (c) any and all liens or other encumbrances against a Investment Properties either created by Principal or Agent pursuant to Principal's or Principal's agent's express, written direction, including any guaranty agreements executed by Agent; (d) any and all taxes or withholdings required with respect to the Investment Properties; and (e) all other Losses, INCLUDING THOSE ARISING OUT OF THE NEGLIGENCE OF AGENT; provided, however, that Principal's indemnity obligations under the terms of this Agreement to Agent shall not extend to any Losses which arise or result directly or indirectly from or in connection with such Agent's bad faith, gross negligence or willful misconduct.

8.     **Agent's Compliance Obligations.** Agent shall (i) with respect to the Investment Properties, act solely as an agent and nominee for and on behalf of the Principal as set forth herein, (ii) function as agent and not principal with respect to the Investment Properties for all purposes, (iii) hold itself out as the agent and not principal in all dealings with third parties relating to the Investment Properties and (iv) otherwise carry on the normal duties of an agent.

 

C049-003                                                                                        001434

000270

9.  **Amendment of Agreement.** This Agreement may be amended or modified at any time by a document in writing, executed by Principal and Agent.

10.  **Termination of Agreement.** (a)

    (i)    Principal may terminate this Agreement by giving ten (10) days written notice to Agent. The termination shall be effective ten (10) days after the date of such written notice by Principal. All actions taken pursuant to the terms of this Agreement by Agent prior to the receipt of the written notice of termination shall be valid and binding upon Principal.

    (ii)    Agent may terminate this Agreement by giving thirty (30) days written notice to Principal. The termination shall be effective thirty (30) days after the date of such written notice by Agent. All actions taken pursuant to the terms of this Agreement by Agent prior to the receipt of the written notice of termination by Principal shall be valid and binding upon Principal.

    (b)    Upon termination of this Agreement, Agent shall immediately convey, assign and transfer to Principal, or another U.S. entity, as determined by Principal, Agent's beneficial ownership of the Investment Properties, including all benefits and burdens of ownership thereto, and all funds and other assets of every kind and nature held by Agent on behalf of Principal, with such conveyance to be made in the manner reasonably agreed by Principal and Agent or other recipient U.S. entity, it being the intention of Principal and Agent that upon termination of this Agreement full record and beneficial ownership shall immediately be transferred or otherwise vested in Principal or other recipient U.S. entity.

    (c)    Unless sooner terminated, this Agreement and all provisions hereof shall remain in full force and effect for as long as any Investment Properties is held by Agent for the benefit of Principal, and until terminated beneficial ownership of such Investment Properties shall be held by Principal in accordance with this Agreement.

11.  **Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT REFERENCE TO THE CONFLICT OF LAWS PROVISIONS THEREUNDER.

12.  **Notices.** All notices hereunder shall be sufficiently given for all purposes hereunder if in writing and delivered personally or sent by documented overnight delivery service, United States mail, email or other electronic transmission service to the applicable address set forth opposite the names of the parties on the signature pages to this Agreement or to such other address as may be designated in writing to the other parties from time to time.

13.  **No Assignments; Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns, and may not be assigned in whole or in part by any party without the prior written consent of all other affected parties.

4

521550.00000\ 20688180.1



001435

000271

14.     **Interpretation; Severability.** This Agreement shall be construed to meet the requirements stated in the decision of the U.S. Supreme Court in *Commissioner v. Bollinger*, 485 U.S. 340 (1988), for the establishment of a nominee relationship between Principal and Agent for U.S. federal, and applicable state, local and other, income tax purposes. Any ambiguities within this Agreement shall be resolved in favor of complying with these requirements. Subject to the preceding sentences, should any part of this Agreement for any reason be declared invalid, such decision shall not affect the validity of any remaining portion, which remaining portion shall remain in force and effect as if this Agreement had been executed with the invalid portion thereof eliminated. The intention of the parties is that they would have executed the remaining portion of this Agreement including therein any such part, parts or portion which may, for any reason, be hereafter declared invalid.

15.     **Survival of Provisions After Termination.** The provisions of Paragraph 6 and Paragraph 7 of this Agreement shall survive the termination of this Agreement for any reason with respect to liabilities or obligations under such provisions that accrue or arise during the period of time that this Agreement, including any amendments, replacements or renewals of this Agreement, is valid and in effect.

16.     **Effect of Agreement.** This Agreement shall not be deemed to have the effect of creating a joint venture, partnership or association relationship between or among any of the parties hereto. So long as the agency continues with respect to Principal, (i) no interest hereunder of Principal shall be assignable or transferable except with the consent of Agent and (ii) no interest hereunder of Agent shall be assignable or transferable except with the consent of Principal.

17.     **Further Assurances.** Each party hereto agrees that it shall execute and deliver or cause to be executed and delivered from time to time such instruments, documents, agreements, consents and assurances and take such other action as the other party may reasonably request to consummate the transactions contemplated hereby, including without limitation, any conveyances of the property owned by an Agency Entity to an entity designated by Principal. Such documents shall be executed and delivered to the requesting party within three business days following delivery of the requested documents.

18.     **Multiple Counterparts.** This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which shall constitute but one and the same instrument.

19.     **References and Construction.**

        (a)     All references in this Agreement to articles, sections, subsections and other subdivisions refer to corresponding articles, sections, subsections and other subdivisions of this Agreement unless expressly provided otherwise.

        (b)     Titles appearing at the beginning of any such subdivisions are for convenience only and shall not constitute part of such subdivisions and shall be disregarded in construing the language contained in such subdivisions.

5

C049-005

001436

(c)     The words "this Agreement", "this instrument", "herein", "hereof", "hereby", "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.

(d)     Words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires.  Pronouns in masculine, feminine and neuter genders shall be construed to include any other gender.

(e)     Examples shall not be construed to limit, expressly or by implication, the matters they illustrate.

(f)     The word "includes" and its derivatives means "includes, but is not limited to" and corresponding derivative expressions.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK--
SIGNATURE PAGE FOLLOWS

521550/00001 20688180.1

IN WITNESS WHEREOF, Agent and Principal have executed this Agreement on the day and year first written above.

**AGENT:**

**Address for Notice:**
3139 W. Holcombe Blvd
Suite 845
Houston, Texas 77025

**AZEEMEH ZAHEER**

**PRINCIPAL:**

**Address for Notice:**
2500 West Loop South
Suite 255
Houston, Texas 77027

**ALI CHOUDHRI**

C049-007

001438



# Galleria 2425 Owner, LLC

### $51.675MM 5 Year Term Loan secured by Mortgage

### ORIGINATING UNIT: NBK-NY

8 March 2018

001439



# I – Executive Summary

### Request

1. Request approval of this new $51.675MM Mortgage Term Loan, with a tenor of 5 years.

### Existing/Proposed Exposure

| Facility | Existing Limits | Proposed |
|---|---|---|
| New Mortgage Loan to Galleria 2425 Owner, LLC | USD 0 MM | USD 51.675 MM |
| **TOTAL :** | **USD 0 MM** | **USD 51.675MM** |

| Industry | External Rating | Relationship Since | Total Equity | Total Revenues | Net Profit |
|---|---|---|---|---|---|
| Real Estate Investment | N/A | New | N/A | $5.7MM | $4.9MM NOI |

001440    Slide  2

**STRICTLY CONFIDENTIAL**


Galleria 2425 Owner, LLC

# II – Purpose of Submission

- NBK-NY is seeking approval for a $51.675MM, senior secured, 5 year term loan.
- The Loan will be used to purchase the Property, an 11-story 283,156 sf office building located in the Galleria submarket of Houston TX.
- The Property is a multi-tenant building which is **currently 91.5% leased**.
- The Loan has a **53.7% LTV** based on the Property's $96.9MM "As-Is" market value.
- This opportunity was presented to NBK-NY after NBK-Geneva recommended that one of the Sponsors, Naissance Capital, contact NBK-NY about providing the senior debt in the deal.
- **NBK-Geneva, on behalf of some of its Private Banking clients, will be providing funding for ~16% of the capital structure**.
- Jetall, the other Sponsor, acquired this Property in 2013 as a value-add investment reflecting the Property's worn condition and low occupancy rate.
- In **2016 Jetall invested $20MM to upgrade and remodel the Property** and then entered into a number of new leases to bring the current occupancy to 91.5%.
- Jetall is now monetizing its investment to redeploy the capital and is doing so via a joint venture arrangement with Naissance Capital.  The joint venture will own the SPV set up to buy and hold the Property.
- The Primary tenant (67%) is Specialty Retailers Inc., a wholly owned subsidiary of Stage Stores Inc., an unrated publicly traded firm with over 835 small department stores in 38 states that in 2016 generated sales of $1.4Bn.  The next biggest tenant is Jetall at 9.28%.
- The Stage lease has over 10 years remaining and Jetall's has over 8 years remaining.
- Thus, the **average lease life for the entire Property is ~9 years**.

**STRICTLY CONFIDENTIAL**



# II – Summary Terms & Conditions

Borrower:             Galleria 2425 Owner, LLC

Sponsors:             Naissance Capital and Jetall

Facility:             Senior Secured Mortgage financing of the purchase of the Property

Amount:             $51,675,000

Property:             283,156 SF Office Building in Houston, Texas

Maturity:             5 years from closing (~April 2023)

Amortization:             None

Interest Rate:             LIBOR plus 180 basis points

Up Front Fee:             50 bps

LTV:             The Senior Loan to Value will be 53.7% at closing, based on the recently appraised value of $96.9MM.

Covenants:             1)    Senior Loan to Appraised Value shall not exceed 60%
              2)    Debt Service Coverage Ratio (Net Operating Income / annual debt service) shall be not less than
                   1.2x, tested annually.

Key Tenant Covenant: A default under the key tenant lease will trigger a restriction on distributions

STRICTLY CONFIDENTIAL



Galleria 2425 Owner, LLC

# II – Summary Terms & Conditions

Security:
    (a) A first priority, perfected recorded mortgage in the Property (the "Mortgage").

    (b) First priority collateral assignment of all leases, subleases, rents, licenses, concession agreements, and similar contracts and property income.

    (c) First priority, perfected lien and security interest in all fixtures, furnishings and equipment and other personal property owned by Borrower and used in connection with the Property.

    (d) First priority collateral assignment of all management agreements and other agreements affecting the Property, etc.

Loan Guarantor:    None

Other Guarantees:    Full Environmental and Bad Boy guarantees to be provided by a 3rd party acceptable to NBK.

Events of Default; Other
Terms & Conditions:    To be in line with market practice and customary for this type of transaction.

Documentation:    To be prepared by NBK's external counsel.

Reporting Policy Exceptions:
1.    We have received three years of historical financial statements from the Borrower but they are not Audited statements.
2.    Going forward, as a single purpose Real Estate LLC, Borrower will continue to provide financial statements but will not be producing Audited Annual financial statements.
3.    There is no financial Loan Guarantee

We are comfortable with these exceptions based on: our analysis focuses on the Property's cash flow which is derived from fixed price leases; fixed rents provide steady predictable cash flows; the requirement going forward that the Borrower will provide financial statements of review quality and acceptable to us; the loan is fully secured by the Property; the Property will be annually appraised by independent third parties and such appraisals will include a review of revenues and expenses of the Property.

STRICTLY CONFIDENTIAL



<span style="color:red">Galleria 2425 Owner, LLC</span>

# II – Summary Terms & Conditions

### Key Credit Risks and Mitigants:

<u>Key Tenant Risk</u>:  67% of this property is leased to a tenant with a weakening credit profile.  Specialty Retailers is a guaranteed subsidiary of Stage Stores Inc., a large publicly listed (unrated) retailer.  Stage Stores operates a large group of retail department / clothing stores across the US.  The retail industry is challenging right now and like many others in the industry, the Company is experiencing declining same store sales and is losing money.

*Mitigant:*
→ This space is the company's corporate headquarters and there is a long term lease in place.
→ Even in a bankruptcy/reorganization scenario, the courts would allow the company to continue to pay critical leases to continue operating and so the headquarters lease payments could continue to be made.
→ A more likely scenario is that tenant would seek to downsize its space to reduce costs and the Sponsor is prepared to work with the tenant on that.
→ In fact, part of the strategy of the Sponsor to improve the overall tenant profile by decreasing the reliance on this one tenant and also improve the profitability of the building by re-leasing some of this space at higher rates.
→ The Sponsor is well along in finalizing lease negotiations with a local Houston bank to take a substantial 52,000 sf of the property, half of this space would be provided by Specialty Retailers vacating a floor and the new rent will be higher than that current rent.
→ Furthermore, even if Specialty Retailers vacated its space and it had to be re-leased, in a worst case scenario, the space could be re-leased for a little as $15sf (well below current market rates) and still provide sufficient cash flow to meet debt service.
→ Although the Houston market has demonstrated some softening in general, with slightly rising vacancy rates, it generally remains sound and is expected to improve in 2018.
→  More specifically the Galleria area commands top rents and will continue to benefit from the expansion of the new River Oaks Project.
→ The Loan to Value on the building is good at 53.7%.

<span style="color:red">STRICTLY CONFIDENTIAL</span>



<span style="color:red">Galleria 2425 Owner, LLC</span>

# II – Summary Terms & Conditions

**Key Credit Risks and Mitigants:**

<u>The Building is an older, Class "B" property</u>.

*Mitigant:*
→ The Property recently underwent a $20MM renovation and was extensively upgraded with high end, Class A level amenities.
→ The Property is well known due to its unique design by I.M. Pei and is well located, with high visibility.
→ The Property is located in the upscale Galleria submarket of Houston, which commands top rents.

(Note: We visited the Property as part of our due diligence and were impressed by the Property, particularly the high quality of the renovations, its location and the favorable outlook for this Houston sub-market.)

<u>Ownership structure with Mezzanine Debt at the Parent level that will need to be serviced with distributions from our Borrower.</u>

*Mitigant:*
→ NBK-NY's Senior Loan benefits from Mezzanine Debt being at the Parent level and not a direct obligation of our Borrower.
→ The Cash Flow will be sufficient to service both obligations but our Senior Loan will always have the first priority.
→ The loan structure will have constraints on distributions related to covenants / Defaults and also Key Tenant lease defaults.

<span style="color:red">STRICTLY CONFIDENTIAL</span>



# II – Summary Terms & Conditions

### Sources of Repayment (with strength of each source – strong, medium etc):

<u>Primary</u>:  Cash flow from the Property; the building is well established and the leases in place provide operating income of $5MM for a DSCR of 2.8X. Strong.

<u>Secondary</u>:  Sale of the building; it is newly renovated and in a good location. Strong.

### Deal Economics and Profitability:

Based on a loan of $51.675MM and a margin of 180 bps and an upfront fee of 50 bps, the Bank will earn $4.9MM over the 5 year life of the loan.  ROC is 9.4% / RAROC 18.8% on an unsecured basis and ROC is 15.1% / RAROC is of 18.8% on secured basis.

This deal represents NBK-NY's first opportunity to work with Jetall and Naissance.  Jetall has developed over 30 commercial properties and 250 luxury residential units in the Houston and Dallas markets, including over 1 million sq. ft. of commercial office space in the affluent Houston Galleria submarket.

Naissance has advised its clients on a number of large ($50-$150MM) commercial real estate transactions in the UK and the US.  Both companies are considered strong potential sources for future deals.

STRICTLY CONFIDENTIAL


Galleria 2425 Owner, LLC

# III – Business Overview

## Overview

- The Property known as One West Loop Plaza is an 11-story, 283,156 sf Office Building located on 2.45 acres at 2425 West Loop South, Houston, Texas.

- The Property was constructed in 1980 and **is the design of world renowned architect I.M. Pei**.

- The current owner, Houston-based Jetall Companies Inc., purchased the property in 2013 and then in 2016 invested $20MM in a major renovation of the property and so although its age makes it Class B, it has been upgraded to a high end property offering Class A amenities.

-  The property was bought as a value-add transaction.

-  At the time, the building was majority leased to Blue Cross Blue Shield of Texas and the company's lease was expiring.  The building had not been renovated since it was complete 1980 and was rundown, therefore, the plan was to not renew the Blue Cross lease, renovate the property and re-lease at higher rates.

- Jetall has been successful in executing this plan and the Property is currently at 91.5% occupancy.

**STRICTLY CONFIDENTIAL**



# III – Business Overview

## Sources and Uses

- Jetall is now seeking to monetize this asset to invest is other projects; it is doing this via a sale of the building but Jetall will retain an ownership interest.

- Jetall and Naissance are forming a new Joint Venture to own the SPV which will purchase and hold the Property.

- The sale price of the Property is $79.5MM (lower than Appraised value due to Jetall equity interest retention); the sources and uses of the transaction are of as follows:

| Source of Funds | | | % | Uses of Funds | | |
|---|---|---|---|---|---|---|
| Senior Loan | $ | 51,675 | 63% | Purchase Price | $ | 79,500 |
| Cash Equity | $ | 29,905 | 37% | Reserves & Costs | $ | 2,080 |
| **TOTAL** | **$** | **81,580** | | | **$** | **81,580** |

- The Equity for the purchase will be provided by the Joint Venture, which will get funding from the two equity partners as well as from $16.975MM of Mezzanine Debt being indirectly provided by NBK-Geneva on behalf of Private Banking clients of NBK.

- This is a loan to the parent JV of the Borrower and not to the Borrower and therefore, the Mezzanine Debt will have no lien or claim on the Property.

- The Loan to Cost above is 63% but the Loan to Value is 53%, based on the appraised value of the Property: the difference being the actual equity value of the owners vs the cash equity of the transaction.

| Loan to Value: | | | % | | | |
|---|---|---|---|---|---|---|
| Senior Loan | $ | 51,675 | 53% | Appraised Property Value | $ | 96,900 |
| Equity Value | $ | 45,225 | 47% | | $ | - |
| **TOTAL** | **$** | **96,900** | | | **$** | **96,900** |

-

STRICTLY CONFIDENTIAL



# III – Business Overview

## Ownership

- The SPV Galleria 2425 Owner, LLC is being formed to own the Property. As outlined in the attached organization chart, this LLC will be owned by Galleria 2425 JV, LLC, a member managed joint venture between Naissance Capital Real Estate, LLC, which will be the managing member and have a 2% interest. An affiliate of Jetall will own the 98% balance of the JV but be a passive investor.

- The NKB-NY Senior Debt will be to the LLC and secured by the Property. NBK-Geneva will be providing $16.975MM of Mezzanine Debt to the JV entity, and this loan will be secured by a pledge of the JV interests.

- Naissance Capital Ltd., a UK based firm with a US footprint and a management team with a 10+ year track record. (Naissance approached NBK-NY at the suggestion of NBK-Geneva).

- Jetall Capital is a private investment firm which invests in real estate in high-growth, high barrier-to-entry markets. Jetall Capital has made successful investments in office, retail and residential (both single and multi-family) opportunities, both as fee-simple and as a lender.

- Naissance is hiring Transwestern Property Management (TPM) for property management and leasing, TPM is a large well experienced company that manages properties all across the US, including many in the Houston and the broader Texas area.

<span style="color:red">STRICTLY CONFIDENTIAL</span>



## III – Business Overview



**Organization Chart**

STRICTLY CONFIDENTIAL



# III – Business Overview

## Property Overview

- 2425 West Loop South is an 11-story office building located in the heart of the Galleria area of the city of Houston Tx.
- The average floor plan contains ~26,000 sf and its expansive windows provide panoramic views of Houston.
- The Property includes a 9-story parking garage to service the building; tenants are allocated a certain number of spaces and some tenants are provided reserved spaces.  The garage also generates income from renting excess spaces to adjacent properties; a picture of the Property is on the next page, the garage is to the left.
- The renovation of the building upgraded it to Class A level of amenities, providing high end touches such as retina scanners for building and floor access and brand new, state-of-the-art elevators.
- There is a Conceirge Service to help tenants, an on-site gourmet deli, a full on-site state of the art fitness center, free valet parking for visitors and a free luxury Jetvan shuttle for all tenants, which will provide door to door service to the airport, the local golf course or the many local restaurants.
- The property is well located in the upscale Galleria section of Houston and provides a good commute as it is right off of a highway which easily connects to several other highways.
- Being adjacent to a hotel, near the Galleria (the largest mall in Texas, with 3 million sf), and down the street from the new 1.4 million sf luxury mixed use River Oaks project, the property offers tenants and visitors a wide array of shopping, dining, and lodging options.
- As mentioned earlier, the NBK-NY General Manager and Relationship Manager visited the Property in Feb 2018 were given a full tour of the property and the surrounding areas.
- They were also shown and provided with extensive details on the renovations.
- During their visit they also met with the CEO of the largest tenant, Specialty retailers/Stage as well as the current owner, Jetall.

STRICTLY CONFIDENTIAL

# III – Business Overview

## Property Overview



**STRICTLY CONFIDENTIAL**



# III – Business Overview

## Property Overview

- The building features a beautiful 11-story atrium fronted by clear glass mounted on a space frame and a roof of reflective glass; a good example of the improvements made is that metal railings on each floor were removed and replaced with glass barriers to create a cleaner, more modern look.
- Additionally white marble was installed in the expansive lobby floor to capitalize on the bright sunlight entering the space by virtue of the atrium.





001453

Slide 15


# III – Business Overview

## Tenants

- The building is 91.5% occupied by a group of diversified tenants.  The Rent Roll as of Jan 2018 is below, these rents are the 2018 rates and so this the estimated 2018 base rent revenue:

| Tenant | Sq Ft Leased | % of Sq Ft | Lease End Date | Rent Per Sq Ft | Annual Base Rent* | % of Base Rent |
|---|---|---|---|---|---|---|
| Specialty Retailers | 189,192 | 66.8% | Jul-28 | $21.25 | $4,020,330 | 72% |
| Jetall | 26,265 | 9.3% | Mar-26 | $25.00 | $656,625 | 12% |
| Regus | 19,984 | 7.1% | Aug-19 | $13.50 | $269,784 | 5% |
| Sibs International | 1,220 | 0.4% | Feb-20 | $27.03 | $32,977 | 1% |
| Vasso's Bar and Grill | 2,860 | 1.0% | Jun-21 | $20.50 | $58,630 | 1% |
| PEM | 2,754 | 1.0% | Nov-19 | $36.00 | $99,144 | 2% |
| Dr Velasco | 5,130 | 1.8% | Dec-25 | $37.00 | $189,810 | 3% |
| G3 Visas & Passports | 1,245 | 0.4% | Jan-23 | $21.00 | $26,145 | 0% |
| Wallis Bank | 3,054 | 1.1% | Dec-21 | $38.75 | $118,343 | 2% |
| Prime Lending | 4,323 | 1.5% | Apr-22 | $25.50 | $110,237 | 2% |
| Fitness Center | 2,987 | 1.1% | Jan-26 | 0 | $0 | 0% |
| ***Currently Leased*** | **259,014** | **91.5%** | | | **$5,582,024** | **100.0%** |
| *Ruggles Black*** | *4,545* | *1.6%* | *Dec-24* | *$35.00* | *$159,075* | |
| *Other Vacant* | *19,597* | *6.9%* | | | | |
| **Total Building Size** | **283,156** | **100%** | | | *$5,741,099* | |
| *Actual reported rent will be off slightly by timing differences of rate changes.* | | | | | | |
| **New lease with terms verbally agreed to but still to be finalized. | | | | | | |

STRICTLY CONFIDENTIAL



<span style="color:red">Galleria 2425 Owner, LLC</span>

# III – Business Overview

## Tenants

- Most of the leases are on a triple net basis although a few are on a gross basis and this is reflected in the different rates show above.

- The **largest tenant by far is Specialty Retailers, which accounts for ~67% of annual rent revenue.** The second largest tenant is Jetall, the current sole owner of the property that is creating the JV with Naissance Capital.

- **Together, these two tenants account for ~77% of the total current leased space and both have very long term leases.**

- Jetall's lease runs through 2026; Jetall will remain in the space as contracted by the lease but they are willing to re-locate to another of its buildings if the Property can re-lease this space at higher rents. This would improve the cash flow and value of the building, which benefits Jetall as an equity owner.

- The next largest tenant, Regus, leases 7% of the building and has an unusually low rent; it was put in place many years ago as this is the oldest tenant, having been in the building since 1995. This lease has the nearest maturity and the plan will be to seek a large increase in this rent to current market prices; either from the current tenant or from a new tenant.

- Therefore, while the Property's income is currently more than ample to service the debt, there is upside to improve profitability:

- The Sponsor is in the last stages of finalizing a lease with Ruggles Black (a restaurant) for space on the first floor, this would **improve occupancy to 93% and improve profitability with the $35sf gross rent rate.**

<span style="color:red">STRICTLY CONFIDENTIAL</span>



Galleria 2425 Owner, LLC

# III – Business Overview

## Tenants

- **The Sponsor is also well along in lease negotiations with a local bank to take a substantial 52,000 sf.**
- This would be two entire floors of the building; Specialty Retailers has agreed to vacate one floor and Jetall would move entirely so that there will be two adjacent floors for this bank to move into.
- The proposed rent will be higher than either of the current rates so occupancy would remain unchanged but profitability would improve.

Lease Maturity Profile:

- The balance of the tenants are well diversified by company type and by lease maturity dates.
- This chart illustrates that a full 88% of total revenue is derived from leases which mature AFTER the April 2023 loan maturity date, however, the majority of that is the key tenant, Specialty Retailers.



001456

**STRICTLY CONFIDENTIAL**



# III – Business Overview

## Tenants: Key Tenant

- <u>Specialty Retailers Inc.</u> is a wholly owned subsidiary of Stage Stores, Inc., a NYSE listed (symbol: SSI) corporation; Stage Stores guarantees the lease obligations of Specialty Retailers.
- This tenant occupies the top 7 floors of the building and also a small space on the first floor. The company moved to this location Jan 2016, consolidating several other locations into this one new Corporate Headquarters.
- The current rent is $21.25 sf and escalates 2.5% a year, to $26.25 in the last year of the lease in 2028. The tenant got six months rent abatement but spread out to be month 1, month 13, month 25 (ie: Jan 2018 so it will pay just 11 months rent in 2018) but then the remaining three months are not until the last three months of the lease in 2028.
- The lease is on a NNN basis and the tenant will pay its proportional share of expenses and taxes.
- The lease has a Contraction Option which allows the tenant to reduce its occupancy by two full floors, this option only available for the period of 2020-2023 and only with no less than one year's notice; the lease also has a one-time early termination option - for the last three years of the lease (2026-2028) and only with no less than one year's notice.
- As the key tenant in the building the company gets several perks such as a dedicated elevator to its top floors and reserved parking spots for executives.
- Stage Stores is a retailer of apparel, accessories, cosmetics, footwear and home goods, with 835 moderately prices department stores located mainly in small and mid-sized towns throughout 38 US states. The Company does have stores in Houston as well but it has benefitted from its broader business model of being one of the few stores in smaller towns, this has insulated it from competition to a degree but the Company now does face the same competitive pressures from e-commerce that other brick & mortar stores are facing.

STRICTLY CONFIDENTIAL



# III – Business Overview

## Key Tenant

- The Company was formed in 1988 with the merger of retail chains which had been in business since the 1920's.
- It has grown substantially since then, mostly by acquisition of other chains so that it now holds many different store names.
- The Company did file for Chapter 11 bankruptcy in 2000 but did successfully reorganize the business and it was a steadily performing company for many years thereafter, with gross margins of ~27% and producing net profits.
- However, the Company has been facing challenging industry conditions in recent years and has experienced declining same store sales.
- In 2016 the Company closed 37 stores and still experienced an 8.8% same store sales decline. The profit margin fell to 20.7% and the Company posted a $58MM operating loss for the first time.
- The Company took steps to cut costs and reposition certain stores but was also impacted by Hurricane Harvey in Sept 2017, which disrupted sales in the Houston area and damaged several stores.

| Stage Stores Inc.<br>FYE Jan 31 ($000's) | FYE2017 | | FYE2016 | | FYE2015 | | FYE2014 | |
|---|---|---|---|---|---|---|---|---|
| Total Revenue | $ | 1,592,275 | $ | 1,444,433 | $ | 1,604,433 | $ | 1,638,569 |
| Operating Income | $ | (42,711) | $ | (55,012) | $ | 8,572 | $ | 63,702 |
| Net Income | $ | (37,323) | $ | (37,897) | $ | 3,780 | $ | 30,850 |
| Gross Margin | | 22.8% | | 20.7% | | 24.7% | | 27.5% |
| Total Stores | | 835 | | 798 | | 834 | | 854 |
| *Balance Sheet* | | | | | | | | |
| Total Assets | $ | 806,406 | $ | 786,989 | $ | 848,099 | $ | 824,677 |
| Debt Obligations | $ | 180,350 | $ | 170,163 | $ | 165,723 | $ | 47,388 |
| Total Equity | $ | 344,114 | $ | 380,160 | $ | 429,753 | $ | 475,930 |

001458

STRICTLY CONFIDENTIAL



# III – Business Overview

## Key Tenant

- For FYE2017 the store count rose even though the Company closed 21 stores as it acquired 58 Gordmans stores during 2017; this contributed to the higher YOY sales even though for the full year same store sales declined 3.6%. Although sales were higher and the gross margin improved slightly for the full year, there was still a $42.7MM Operating Loss for the year.
- Stage Stores did take heart from an improved trend as the fourth quarter ended Jan 31 2018 (4Q17) was improved and this is the key period for retailers: in 4Q17, sales rose from $454MM to $549MM and there was **$20MM of Operating Income vs a $7MM Operating Loss in 4Q16.**
- There was a $5.6MM Net Profit vs $6.8MM Net Loss and **importantly, same store sales grew 1.1%.**
- Thus, the Company's efforts to improve its operations, with better inventory turn refreshing store merchandise, more effective promotions and enhancements to its online business, did favorably impact results.
- However, leverage did continue to rise and guidance for next year still reflects an Operating Loss and Net Loss.
- The announced results today had only a minor impact on the stock price and it remains very low at $1.98.  The 52 week high was $3.00 on 27-Apr-17 and the low was $1.45 on 16-Aug-17.  While the stock did improve over the last month, it was only very slightly; the longer term picture reflects the stock dropping significantly over the past three years:
- The Market Cap of $54MM is well below the FYE17 $344MM book value.





001459

Slide  21


# III – Business Overview

### Location

- The Property is in the suburbs of Houston, Tx. With a population of 2.3 million people, Houston is the most populous city in Texas, and the fourth most populous city in the United States; with ~6.7 million people, the broader Houston / The Woodlands / Sugar Land metropolitan area is the fifth-most populated in the United States.

- The Property is located in the "Galleria" subset of Houston; so named for the Galleria Mall, a Simon owned, upscale mixed-use shopping mall which consists of a retail complex, two Westin hotels, and three office towers.

- The Property is very close to this mall, which, with 3 million sf space is the largest mall in Texas.

- It has many amenities to offer visitors and beyond shopping in the over 375 stores, it has 50 restaurants and food stores, a jogging track on the roof, a private health club and a 20,000sf ice skating rink.

- The Property is also across from the River Oaks District, a new 1.4 million sf mixed-use development which is still being built out in phases.

- The first phase has been completed and this outdoor shopping complex offers global luxury brand retail, restaurants, sidewalk cafes, and a movie theatre. There is also 92,000 sf of office space and two 5-story residential buildings.

STRICTLY CONFIDENTIAL

Galleria 2425 Owner, LLC

## III – Business Overview

### Location

- A new hotel is being constructed as part of the Phase two expansion of this project, it will be adjacent to the Property parking garage and a lease has been executed to rent 150 of the Parking Garage spaces to this hotel, bringing an additional source of income.

- There are many other shopping and dining options for tenants and the Property is also close to a large golf course and a country club.

- Another key draw for tenants is an excellent commute. The Property is not just adjacent to the US 290 highway, it is right at an entrance ramp for a quick exit for employees; this highway connects to two other major Houston highways.



001461

Slide 23

**STRICTLY CONFIDENTIAL**



Galleria 2425 Owner, LLC

# III – Business Overview

## Location

- <u>Houston Area Economy:</u>
- Houston is the 4th most populous city in the U.S. and 42.6% of its 2.2 million residents are 25-54 years old.
- The city had experienced strong growth from its Oil & Gas industry but has also diversified its economy to have a broad base in other sectors such as manufacturing, aeronautics and transportation.
- It has the Port of Houston, which ranks first in the United States in international waterborne tonnage handled and second in total cargo tonnage handled.
- Houston is also a leader in the health care sector. Only New York City has more Fortune 500 company headquarters than Houston.
- The drop in energy prices at the end of 2014 and the resulting decline in Oil & Gas activities did impact the Houston economy, although primarily so that its growth slowed as opposed to creating a downturn.
- GDP growth slowed from the very strong 6% in 2013 and had a 1% decline in 2016 but rose in 2017 and is expected to be reported as ~1.3% for the full year.

**STRICTLY CONFIDENTIAL**



# III – Business Overview

## Location

- <u>Houston Area Economy:</u>
- Additionally, Houston did see its unemployment rate rise and after almost a decade of being lower than the national average, Houston's unemployment rose to 5.3% in 2016, higher than the US 4.5% average.
- However, unemployment has again decreased and was a low 4.3% in 2017.
- The Houston metro area created 46,000 jobs in 2017, only a little less than the average 50,000 to 60,000 new jobs per year; thus, 2017 ended with total employment of 3,082,000, a new peak for the region.





- **Moody's expects the Houston economy to improve in 2018, with GDP rising to 4% and unemployment dropping to 4.1%.**

001463    Slide 25



# III – Business Overview

### Location

Market Overview

- The Houston market has been strong for many years but it was impacted by the downturn in oil prices at the end of 2014.
- The strong market had driven expansion and so new deliveries were high in 2015 but absorption was quite low.
- Thus, vacancy rose and net absorption has been negative in 9 of the last 12 quarters as over 13.0 million sf of new construction had been delivered:





- Leasing activity slowed and sublease activity account for almost a high ~25% of all leasing activity in 2017.
- However, the slowdown in activity has resulted in a slowdown in new construction and so with less new deliveries, the market should return to a better balance in 2018.

**STRICTLY CONFIDENTIAL**



<span style="color:red">Galleria 2425 Owner, LLC</span>

# III – Business Overview

## Location

- The JLL Houston Office statistics in Attachment #1 does highlight that a good portion of the recent completions were in the Galleria area, 980,000 sf of completions in 2017 resulted in a negative 607,226 absorption, which is second only to the downtown area. There is additional supply under construction as well, although only 104,579 sf. This has raised the vacancy rate to 21.2% but this is still slightly lower than the 23.2% for the overall Houston area. However, breaking this down to Class A and Class B, most of the inventory and new supply is Class A properties, which command average rents of $37.62sf (gross rent); this is among the highest in the suburban regions, second only to Katy Freeway West.
- However, as illustrated on the following chart, the **Class B inventory is lower and vacancy is also lower at just 15.4%.**
- This Property is somewhat of a hybrid in that it has been renovated to a Class A level but it is still technically Class B, for its age if nothing else.
- With the excellent location and Class A level of amenities, it completes well against the Class B competition and commands top rates.
- However, **it can also compete well against Class A properties, providing the Class A amenities in a unique building for a compelling rate**.
- For example the latest lease just executed for the Property is for **$35sf, well above the $26.89sf average lease price for the other Class B properties in the Galleria area**, which is among the highest rates in Houston.
- **This $35sf is closer to the average $37.62sf rent for Class A buildings** in the Galleria submarket.

001465       Slide  27

<span style="color:red">STRICTLY CONFIDENTIAL</span>



Galleria 2425 Owner, LLC

# III – Business Overview

## Location

Houston | Office Statistics | Q4 2017

| | Class | Inventory (s.f.) | Total net absorption (s.f.) | YTD total net absorption (s.f.) | YTD total net absorption (% of stock) | Direct vacancy (%) | Total vacancy (%) | Average direct asking rent ($ p.s.f.) | YTD completions (s.f.) | Under construction (s.f.) |
|---|---|---|---|---|---|---|---|---|---|---|
| CBD | B | 7,548,672 | -13,621 | -235,184 | -3.1% | 18.4% | 19.4% | $29.53 | 0 | 0 |
| **CBD** | **B** | **7,548,672** | **-13,621** | **-235,184** | **-3.1%** | **18.4%** | **19.4%** | **$29.53** | **0** | **0** |
| | | | | | | | | | | |
| Midtown | B | 2,267,869 | 2,607 | -7,956 | -0.4% | 8.6% | 9.9% | $29.24 | 0 | 0 |
| Greenway Plaza | B | 2,571,195 | 8,012 | -79,626 | -3.1% | 13.3% | 13.6% | $27.71 | 0 | 0 |
| Greenspoint/North Belt | B | 4,273,778 | -20,048 | -141,824 | -3.3% | 43.4% | 44.2% | $15.79 | 0 | 0 |
| Northwest | B | 4,667,122 | -126,174 | -62,089 | -1.3% | 19.0% | 20.8% | $20.42 | 0 | 0 |
| San Felipe/Voss | B | 3,430,031 | -45,539 | -114,350 | -3.3% | 15.9% | 16.4% | $24.13 | 0 | 0 |
| Southwest | B | 4,447,569 | -119,018 | -108,743 | -2.4% | 24.6% | 24.6% | $17.73 | 0 | 0 |
| Galleria | B | 4,949,479 | -50,769 | -110,602 | -2.2% | 15.1% | 15.4% | $26.89 | 0 | 0 |
| Bellaire | B | 1,187,047 | 14,982 | 20,910 | 1.8% | 9.8% | 10.1% | $25.06 | 0 | 0 |
| Medical Center | B | 2,198,482 | -2,958 | 26,436 | 1.2% | 5.5% | 5.5% | $27.61 | 0 | 0 |
| **Suburban Near** | **B** | **29,992,572** | **-338,905** | **-577,844** | **-1.9%** | **19.7%** | **20.3%** | **$20.76** | **0** | **0** |
| | | | | | | | | | | |
| Katy Freeway East | B | 1,436,025 | 14,743 | -3,230 | -0.2% | 11.2% | 12.5% | $21.83 | 0 | 0 |
| Katy Freeway West | B | 5,402,052 | 11,472 | -226,323 | -4.2% | 25.4% | 25.8% | $22.37 | 0 | 0 |
| Westchase | B | 4,220,036 | -27,452 | -65,367 | -1.5% | 18.2% | 19.0% | $19.86 | 0 | 0 |
| **Energy Corridor** | **B** | **11,058,113** | **-1,237** | **-294,920** | **-2.7%** | **20.8%** | **21.5%** | **$21.45** | **0** | **0** |
| | | | | | | | | | | |
| FM 1960 | B | 3,592,268 | -28,596 | -71,498 | -2.0% | 22.9% | 23.0% | $16.73 | 0 | 0 |
| Sugar Land | B | 1,308,292 | -1,909 | 42,803 | 3.3% | 10.4% | 13.3% | $21.75 | 0 | 0 |
| Gulf Freeway/Pasadena | B | 1,516,973 | -5,307 | -23,235 | -1.5% | 17.9% | 17.9% | $21.73 | 82,800 | 0 |
| NASA/Clear Lake | B | 1,924,289 | -45,250 | -82,213 | -4.3% | 25.7% | 25.7% | $18.88 | 0 | 0 |
| The Woodlands | B | 2,079,062 | -6,624 | -15,687 | -0.8% | 15.8% | 16.8% | $26.76 | 0 | 0 |
| **Suburban Outlying** | **B** | **10,420,884** | **-87,686** | **-149,830** | **-1.4%** | **19.7%** | **20.3%** | **$19.88** | **82,800** | **0** |
| **Houston** | **B** | **59,020,241** | **-441,449** | **-1,257,778** | **-2.1%** | **19.7%** | **20.4%** | **$21.81** | **82,800** | **0** |

001466    Slide  28



# III – Business Overview

## Location

**Comparative Properties:**

- Per the recent appraisal, the comparable properties in the area are listed below; note that these average rents are below those being commanded by the Galleria 2425 West Loop Property:

| | SUMMARY OF RENT COMPARABLES | | | | | |
|---|---|---|---|---|---|---|
| No. | Name/Location | Year Built | Type | Building Size SF | Rent $/SF | Exp. Basis |
| 1 | 515 Post Oak Blvd - Houston, TX | 1980 | POB | 274,242 | $20.00 | NNN |
| 2 | 1616 S Voss Road - Houston, TX | 1980 | POB | 179,061 | $19.00 | NNN |
| 3 | 10500 Richmond Avenue- Houston, TX | 1979 | POB | 96,733 | $20.67 | NNN |
| 4 | 2100 West Loop South - Houston, TX | 1973 | POB | 162,336 | $19.50 | NNN |
| | Minimum | 1973 | - | 96,733 | $19.00 | - |
| | Maximum | 1980 | - | 274,242 | $20.67 | - |
| | Average | 1978 | - | 178,093 | $19.79 | - |
| | Subject | 1979 | - | 283,156 | $20.80 | - |

**Comparative Sales:**

- The recent appraisal also provided a list of sales of comparable properties, the most recent sale is the highest price but also the newest building:

| | SUMMARY OF COMPARABLE SALES | | | | | |
|---|---|---|---|---|---|---|
| No. | Name / Location | Sale Date | Bldg. Size (SF) | % Occ. | Year Built | Sale Price | $/SF |
| 1 | 5300 Memorial Dr - Houston, TX | Jan-16 | 153,626 | 83.2% | 1983 | $38,686,634 | $251.82 |
| 2 | 2200 Post Oak Blvd - Houston, TX | Oct-17 | 326,200 | 83.0% | 2013 | $172,000,000 | $527.28 |
| 3 | 7789 Southwest Freeway - Houston, TX | Jun-15 | 131,806 | 89.0% | 2007 | $31,644,152 | $240.08 |
| | Minimum | Jun-15 | 131,806 | 83.0% | 1983 | $31,644,152 | $240.08 |
| | Maximum | Oct-17 | 326,200 | 89.0% | 2013 | $172,000,000 | $527.28 |
| | Average | Jun-16 | 203,877 | 85.1% | 2001 | $80,776,929 | $339.73 |
| | Subject | - | 283,156 | 100.0% | 1979 | - | - |

STRICTLY CONFIDENTIAL



Galleria 2425 Owner, LLC

# III – Business Overview

## Location

**ComparativeSales:**

- The appraisal analysis adjusted for differences in properties and arrived at an adjusted average sale price of $354.51 sf and the appraisal concluded the Property had a value near the midpoint of the range of $350.00 sf.

- This provides an indicated "As Is" Fair Market Value via the Sales Comparison method calculated as follows:

| SALES COMPARISON APPROACH CONCLUSION "AS IS" | | | | |
|---|---|---|---|---|
| **Building Size SF** | | **$ Per Building SF** | | **Value** |
| 283,156 | x | $350.00 | = | $99,104,600 |
| **Fair Market Value (Rounded)** | | | | $99,100,000 |

- **This provides an excellent secondary repayment source as the value is slightly higher than the $96.6MM Income Capitalization method, providing a slightly lower LTV of 52%.**

STRICTLY CONFIDENTIAL



<span style="color:red">Galleria 2425 Owner, LLC</span>

# IV – Key Business Considerations and Risks

## Key Business Considerations/Risks:

- Strategic Threats:  Low.  Houston continues to be a growing area with solid employment opportunities.

- Growth potential:  Single purpose borrower.  But this new relationship with the Sponsors could bring additional real estate opportunities in the United States.

- Competition:  Moderate.  While there are other office buildings in the area and the Houston market has weakened in the past several years, it is beginning to rebound and with little new supply, the market will tighten.
-
- Barriers to entry:  Moderate; it is a densely populated area and much new development is housing and retail space.

- Regulatory framework:  Moderately complex; properties are subject to a variety of local, state and federal regulations and laws, including ordinances and building codes.

- Cyclicality:  Moderate.  The Commercial Real Estate industry typically follows the general economic cycle, which affects employment growth, property values and property yields.

STRICTLY CONFIDENTIAL



Galleria 2425 Owner, LLC

# V – Financial Risks

## Financial Highlights

### Property Profitability / Projections:

- The Property generates very good Operating Income. The three year historical financials reflect a renovation / leasing up stage and income has grown each year.
- The 2017 results were good with $7.5MM of net Revenue and $5MM of Net Operating income, this would have covered an estimated $1.83MM of new loan interest 2.7X.
- In 2018, one new lease is assumed to be effective and rents all step up a bit as well so the base rent will rise and the projected net Revenue including expense recoveries (which are not 100% as some small leases are on a gross basis) and less concessions will be ~$7.94MM.

### Property Projections:

- The Company prepared projections based on the current leases in place and assumed the Ruggles Black lease is in place later as well.
- Thus, with 93.1% of the building leased, the property is projected to generate $5.2MM of Operating Income in 2018, this would provide ~2.84X DSCR based on a full year's interest.
- Revenue growth is 4.9% in 2019 but then fairly muted through 2023, when our loan would mature; however, the Borrower financials are based on flat expenses YOY and so NOI does grow to $6.5MM in 2023.
- This would provide DSCR of 2.84X – 3.56X 2018 to 2023, based on flat interest rates.
- _Additional Information:_
- Since the parent level Mezzanine Debt will rely on distributions from our Borrower for Interest Payments, <u>for illustration purposes only</u>, we reflect the estimated Net Cash Flow available for Distributions and the estimated DSCR that this would provide the Mezzanine Debt.

STRICTLY CONFIDENTIAL

**Galleria 2425 Owner, LLC**

- This is not a realistic case as although rents are contracted, it does not reflect a growth in expens.

- Therefore, NBK NY did a Base Case to adjust for expense growth.

| Galleria 2425 West Loop | Borrower Projections | | | | | | Loan Matures April 2023 |
|---|---|---|---|---|---|---|---|
| | *Actual* | *Projected* | *Projected* | *Projected* | *Projected* | *Projected* | *Projected* |
| Fiscal Year Ended Dec 31: | **2017** | **2018** | **2019** | **2020** | **2021** | **2022** | **2023** |
| Base Rental Revenue | $5,718.3 | $5,707.0 | $5,987.0 | $6,096.0 | $6,251.0 | $6,388.0 | $6,388.0 |
| *Rise in Base Rent* | | *-0.2%* | *4.9%* | *1.8%* | *2.5%* | *2.2%* | *0.0%* |
| Operating Expenses Recoveries | $2,169.4 | $2,447.0 | $2,536.0 | $2,579.0 | $2,585.0 | $2,616.0 | $2,616.0 |
| Other Revenue | $250.7 | $25.0 | $300.0 | $300.0 | $300.0 | $300.0 | $300.0 |
| Less: Concessions | $ (638.0) | $ (235.0) | $ (180.0) | $ (3.0) | $ (13.0) | $ (9.0) | $ (9.0) |
| **Effective Gross Revenue** | **$7,500.4** | **$7,944.0** | **$8,643.0** | **$8,972.0** | **$9,123.0** | **$9,295.0** | **$9,295.0** |
| *Operating Expenses* | | | | | | | |
| Taxes and Insurance | $1,025.8 | $1,030.0 | $1,030.0 | $1,030.0 | $1,030.0 | $1,030.0 | $1,030.0 |
| Utilities | $460.9 | $490.0 | $490.0 | $490.0 | $490.0 | $490.0 | $490.0 |
| Other Services / Repairs / Maint. | $923.0 | $1,045.0 | $1,045.0 | $1,045.0 | $1,045.0 | $1,045.0 | $1,045.0 |
| Asset Management | $133.1 | $164.0 | $174.0 | $183.0 | $187.0 | $191.0 | $191.0 |
| **Total Operating Expenses** | **$2,542.7** | **$2,729.0** | **$2,739.0** | **$2,748.0** | **$2,752.0** | **$2,756.0** | **$2,756.0** |
| **Net Operating Income** | **$4,957.6** | **$5,215.0** | **$5,904.0** | **$6,224.0** | **$6,371.0** | **$6,539.0** | **$6,539.0** |
| | | | | | | | |
| **NBK Assumed Interest Exp.** | | $1,834.5 | $1,834.5 | $1,834.5 | $1,834.5 | $1,834.5 | $1,834.5 |
| **Debt Service Coverage** | | 2.84 | 3.22 | 3.39 | 3.47 | 3.56 | 3.56 |
| | | | | | | | |
| Capital, Leasing, TI & Other | | $ 796.0 | $ 694.0 | $ 49.0 | $ 27.0 | $ 100.0 | $ 101.0 |
| **Net Cash Flow for Distributions** | | **$ 2,584.5** | **$ 3,375.5** | **$ 4,340.5** | **$ 4,509.5** | **$ 4,604.5** | **$ 4,603.5** |
| Estimated Parent Level Interest | | $ 1,442.9 | $ 1,457.4 | $ 1,472.0 | $ 1,486.8 | $ 1,501.7 | $ 1,516.8 |
| CF Coverage of Parent Debt | | 1.79 | 2.32 | 2.95 | 3.03 | 3.07 | 3.04 |
| | | | | | | | |
| **Interest Expense Assumptions:** | | | | | | | |
| Senior Loan Amount | | $ 51,675 | $ 51,675 | $ 51,675 | $ 51,675 | $ 51,675 | $ 51,675 |
| *Margin* | | *1.80%* | *1.80%* | *1.80%* | *1.80%* | *1.80%* | *1.80%* |
| *Libor* | | *1.75%* | *1.75%* | *1.75%* | *1.75%* | *1.75%* | *1.75%* |
| *All-in Rate* | | *3.55%* | *3.55%* | *3.55%* | *3.55%* | *3.55%* | *3.55%* |
| Interest Expense | | $ 1,834.5 | $ 1,834.5 | $ 1,834.5 | $ 1,834.5 | $ 1,834.5 | $ 1,834.5 |
| | | | | | | | |
| *Parent Mezzanine Loan* | | $ 16,975.0 | $ 17,145.4 | $ 17,317.5 | $ 17,491.3 | $ 17,666.8 | $ 17,844.2 |
| *Parent Mezz Debt Interest @ 8.5%* | | $ 1,442.9 | $ 1,457.4 | $ 1,472.0 | $ 1,486.8 | $ 1,501.7 | $001476.8 |

STRICTLY CONFIDENTIAL

**Galleria 2425 Owner, LLC**

NBK Base Case:
- The revenue assumptions are unchanged.
- Expenses are the same in 2018 but then all projected to grow 3% a year (except for Asset Management Fees which remained unchanged).
- We also assume a rise in Libor, from the 1.75% for 2018 to 3.5% in 2023.

| Galleria 2425 West Loop | NBK NY Branch Base Case | | | | | | Loan Matures April 2023 |
|---|---|---|---|---|---|---|---|
| | *Actual* | *Projected* | *Projected* | *Projected* | *Projected* | *Projected* | *Projected* |
| Fiscal Year Ended Dec 31: | **2017** | **2018** | **2019** | **2020** | **2021** | **2022** | **2023** |
| Base Rental Revenue | $5,718.3 | $5,707.0 | $5,987.0 | $6,096.0 | $6,251.0 | $6,388.0 | $6,388.0 |
| *Rise in Base Rent* | | *-0.2%* | *4.9%* | *1.8%* | *2.5%* | *2.2%* | *0.0%* |
| Operating Expenses Recoveries | $2,169.4 | $2,447.0 | $2,536.0 | $2,579.0 | $2,585.0 | $2,616.0 | $2,616.0 |
| Other Revenue | $250.7 | $25.0 | $300.0 | $300.0 | $300.0 | $300.0 | $300.0 |
| Less: Concessions | $ (638.0) | $ (235.0) | $ (180.0) | $ (3.0) | $ (13.0) | $ (9.0) | $ (9.0) |
| **Effective Gross Revenue** | **$7,500.4** | **$7,944.0** | **$8,643.0** | **$8,972.0** | **$9,123.0** | **$9,295.0** | **$9,295.0** |
| *Operating Expenses* | | | | | | | |
| Taxes and Insurance | $1,025.8 | $1,030.0 | $1,060.9 | $1,092.7 | $1,125.5 | $1,159.3 | $1,194.1 |
| Utilities | $460.9 | $490.0 | $504.7 | $519.8 | $535.4 | $551.5 | $568.0 |
| Other Services / Repairs / Maint. | $923.0 | $1,045.0 | $1,076.4 | $1,108.6 | $1,141.9 | $1,176.2 | $1,211.4 |
| Asset Management | $133.1 | $164.0 | $174.0 | $183.0 | $187.0 | $191.0 | $191.0 |
| **Total Operating Expenses** | **$2,542.7** | **$2,729.0** | **$2,816.0** | **$2,904.2** | **$2,989.8** | **$3,077.9** | **$3,164.5** |
| **Net Operating Income** | **$4,957.6** | **$5,215.0** | **$5,827.1** | **$6,067.8** | **$6,133.2** | **$6,217.1** | **$6,130.5** |
| | | | | | | | |
| **Interest Expense** | | $1,834.5 | $2,092.8 | $2,351.2 | $2,480.4 | $2,609.6 | $2,738.8 |
| **Debt Service Coverage** | | **2.84** | **2.78** | **2.58** | **2.47** | **2.38** | **2.24** |
| | | | | | | | |
| Capital, Leasing, TI & Other | | $ 796.0 | $ 694.0 | $ 49.0 | $ 27.0 | $ 100.0 | $ 101.0 |
| **Net Cash Flow for Distributions** | | **$ 2,584.5** | **$ 3,040.3** | **$ 3,667.6** | **$ 3,625.8** | **$ 3,507.5** | **$ 3,290.7** |
| Estimated Parent Level Interest | | $ 1,442.9 | $ 1,457.4 | $ 1,472.0 | $ 1,486.8 | $ 1,501.7 | $ 1,516.8 |
| CF Coverage of Parent Debt | | 1.79 | 2.09 | 2.49 | 2.44 | 2.34 | 2.17 |
| | | | | | | | |
| **Interest Expense Assumptions:** | | | | | | | |
| Senior Loan Amount | | $ 51,675 | $ 51,675 | $ 51,675 | $ 51,675 | $ 51,675 | $ 51,675 |
| *Margin* | | *1.80%* | *1.80%* | *1.80%* | *1.80%* | *1.80%* | *1.80%* |
| *Libor* | | *1.75%* | *2.25%* | *2.75%* | *3.00%* | *3.25%* | *3.50%* |
| *All-in Rate* | | *3.55%* | *4.05%* | *4.55%* | *4.80%* | *5.05%* | *5.30%* |
| Interest Expense | | $ 1,834.5 | $ 2,092.8 | $ 2,351.2 | $ 2,480.4 | $ 2,609.6 | $ 2,738.8 |
| | | | | | | | |
| *Parent Mezzanine Loan* | | $ 16,975.0 | $ 17,145.4 | $ 17,317.5 | $ 17,491.3 | $ 17,666.8 | $ 17,844.2 |
| *Parent Mezz Debt Interest @ 8.5%* | | $ 1,442.9 | $ 1,457.4 | $ 1,472.0 | $ 1,486.8 | $ 1,501.7 $ 1,472.0 | $ 1,516.8 |

STRICTLY CONFIDENTIAL



# V – Financial Risks

### Financial Highlights

<u>NYB Base Case</u>:

- This Base Case is realistic as it has rising operating expenses and interest expense.  Therefore, DSCR is lower and starts at 2.84x but decreases every year thereafter.
- However, **DSCR remains acceptable at over 2X every year** and there is sufficient cash flow to distribute to the Parent for the Mezzanine Debt service as well.

<u>NYB Sensitized Case:</u>

- This case assumes that Specialty Retailers vacates its entire space at the beginning of 2020.
- This space stays vacant for half the year and is then leased but only for $20sf, a lower rate than currently being commanded-as a way to quickly lease the space.
- In this scenario, 2018 and 2019 are in line with the Base case but in 2020, the Base Rent drops 36% YOY, reflecting the 6 months vacancy.
- With the vacant space, expense recoveries also drop by half in 2020 and concessions would rise and thus, total revenue drops 44% in 2020.
- 2021 revenue rises due to the full year of the re-leased space and rates rise 3% thereafter but we assume a higher level of tenant turnover would require a higher level of concessions annually than the Base Case.
- Utilities and other services decrease in 2020 due to the vacant space but rebound to the Base Case levels thereafter.
- Interest rate assumptions are the same as the Base Case.

**STRICTLY CONFIDENTIAL**

**Galleria 2425 Owner, LLC**

| Galleria 2425 West Loop | NBK NY Branch Sensitized Case | | | | | | Loan Matures April 2023 |
|---|---|---|---|---|---|---|---|
| | Actual | Projected | Projected | Projected | Projected | Projected | Projected |
| Fiscal Year Ended Dec 31: | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| Base Rental Revenue | $5,718.3 | $5,707.0 | $5,987.0 | $3,843.3 | $5,690.2 | $5,860.9 | $6,036.7 |
| Rise in Base Rent | | -0.2% | 4.9% | -35.8% | 48.1% | 3.0% | 3.0% |
| Operating Expenses Recoveries | $2,169.4 | $2,447.0 | $2,536.0 | $1,250.0 | $2,585.0 | $2,616.0 | $2,616.0 |
| Other Revenue | $250.7 | $25.0 | $300.0 | $300.0 | $300.0 | $300.0 | $300.0 |
| Less: Concessions | $ (638.0) | $ (235.0) | $ (180.0) | $ (550.0) | $ (200.0) | $ (200.0) | $ (200.0) |
| **Effective Gross Revenue** | **$7,500.4** | **$7,944.0** | **$8,643.0** | **$4,842.9** | **$8,375.7** | **$8,576.9** | **$8,752.7** |
| Operating Expenses | | | | | | | |
| Taxes and Insurance | $1,025.8 | $1,030.0 | $1,060.9 | $1,092.7 | $1,125.5 | $1,159.3 | $1,194.1 |
| Utilities | $460.9 | $490.0 | $504.7 | $389.9 | $535.4 | $551.5 | $568.0 |
| Other Services / Repairs / Maint. | $923.0 | $1,045.0 | $1,076.4 | $831.5 | $1,141.9 | $1,176.2 | $1,211.4 |
| Asset Management | $133.1 | $164.0 | $174.0 | $183.0 | $187.0 | $191.0 | $191.0 |
| **Total Operating Expenses** | **$2,542.7** | **$2,729.0** | **$2,816.0** | **$2,497.1** | **$2,989.8** | **$3,077.9** | **$3,164.5** |
| **Net Operating Income** | **$4,957.6** | **$5,215.0** | **$5,827.1** | **$2,345.8** | **$5,385.8** | **$5,499.0** | **$5,588.2** |
| | | | | | | | |
| **Interest Expense** | | $1,834.5 | $2,092.8 | $2,351.2 | $2,480.4 | $2,609.6 | $2,738.8 |
| **Debt Service Coverage** | | **2.84** | **2.78** | **1.00** | **2.17** | **2.11** | **2.04** |
| | | | | | | | |
| Capital, Leasing, TI & Other | | $ 796.0 | $ 694.0 | $ 1,500.0 | $ 27.0 | $ 100.0 | $ 101.0 |
| **Net Cash Flow for Distributions** | | **$ 2,584.5** | **$ 3,040.3** | **$ (1,505.4)** | **$ 2,878.4** | **$ 2,789.4** | **$ 2,748.4** |
| Estimated Parent Level Interest | | $ 1,442.9 | $ 1,457.4 | $ 1,472.0 | $ 1,486.8 | $ 1,501.7 | $ 1,516.8 |
| CF Coverage of Parent Debt | | 1.79 | 2.09 | (1.02) | 1.94 | 1.86 | 1.81 |
| | | | | | | | |
| Interest Expense Assumptions: | | | | | | | |
| Senior Loan Amount | | $ 51,675 | $ 51,675 | $ 51,675 | $ 51,675 | $ 51,675 | $ 51,675 |
| Margin | | 1.80% | 1.80% | 1.80% | 1.80% | 1.80% | 1.80% |
| Libor | | 1.75% | 2.25% | 2.75% | 3.00% | 3.25% | 3.50% |
| All-in Rate | | 3.55% | 4.05% | 4.55% | 4.80% | 5.05% | 5.30% |
| Interest Expense | | $ 1,834.5 | $ 2,092.8 | $ 2,351.2 | $ 2,480.4 | $ 2,609.6 | $ 2,738.8 |
| | | | | | | | |
| Parent Mezzanine Loan | | $ 16,975.0 | $ 17,145.4 | $ 17,317.5 | $ 17,491.3 | $ 17,666.8 | $ 17,844.2 |
| Parent Mezz Debt Interest @ 8.5% | | $ 1,442.9 | $ 1,457.4 | $ 1,472.0 | $ 1,486.8 | $ 1,501.7 | $ 1,516.8 |

001474

STRICTLY CONFIDENTIAL


# V – Financial Risks

## Financial Highlights

NBK Sensitized Case:

- Under this scenario DSCR declines after 2018 and 2019 but is still 1.0X in 2020 and over 2X the subsequent years. Thus, the Borrower would be in covenant breach but still be able to service the Debt.
- We do note that in this scenario leasing expenses & other related costs in 2020 would need to be funded and there would be no distributions for Mezzanine Debt service that year, however, this does not impact the senior debt.

NBK $15 Case:

- For illustration purposes, we have prepared a case reflecting that even if the Specialty Retailer space is re-leased in 2020 for just a low $15sf, the Property can service its debt.
- Total revenue drops in 2020 due to the drop in the rent but all other items are held flat.
- Under this scenario, in 2020, even with the drop in rent, the Debt service is still almost 2X. With the rise in expenses and interest expense, the DSCR declines YOY but is still above the covenant minimum.

Summary:

- We note that the focus of our sensitivity is the credit risk profile of the largest tenant, however, the Sponsor is seeking to diversity the tenants to decrease this risk and indeed is well along in talks with a new tenant which would reduce Specialty Retailers space by ~26,000.
- Even if this is not finalized, we have demonstrated that this space can be leased at lower rates and still meet debt service.

STRICTLY CONFIDENTIAL

**Galleria 2425 Owner, LLC**

| Galleria 2425 West Loop | NBK NY Branch SR Re-Lease @$15 SF Case | | | | | Loan Matures April 2023 |
|---|---|---|---|---|---|---|
| | *Actual* | *Projected* | *Projected* | *Projected* | *Projected* | *Projected* | *Projected* |
| Fiscal Year Ended Dec 31: | **2017** | **2018** | **2019** | **2020** | **2021** | **2022** | **2023** |
| Base Rental Revenue | $5,718.3 | $5,707.0 | $5,987.0 | $4,789.2 | $4,789.2 | $4,789.2 | $4,789.2 |
| *Rise in Base Rent* | | -0.2% | 4.9% | -20.0% | 0.0% | 0.0% | 0.0% |
| Operating Expenses Recoveries | $2,169.4 | $2,447.0 | $2,536.0 | $2,579.0 | $2,585.0 | $2,616.0 | $2,616.0 |
| Other Revenue | $250.7 | $25.0 | $300.0 | $300.0 | $300.0 | $300.0 | $300.0 |
| Less: Concessions | $ (638.0) | $ (235.0) | $ (180.0) | $ (200.0) | $ (200.0) | $ (200.0) | $ (200.0) |
| **Effective Gross Revenue** | **$7,500.4** | **$7,944.0** | **$8,643.0** | **$7,468.0** | **$7,474.2** | **$7,505.2** | **$7,505.2** |
| *Operating Expenses* | | | | | | | |
| Taxes and Insurance | $1,025.8 | $1,030.0 | $1,060.9 | $1,092.7 | $1,125.5 | $1,159.3 | $1,194.1 |
| Utilities | $460.9 | $490.0 | $504.7 | $519.8 | $535.4 | $551.5 | $568.0 |
| Other Services / Repairs / Maint. | $923.0 | $1,045.0 | $1,076.4 | $1,108.6 | $1,141.9 | $1,176.2 | $1,211.4 |
| Asset Management | $133.1 | $164.0 | $174.0 | $183.0 | $187.0 | $191.0 | $191.0 |
| **Total Operating Expenses** | **$2,542.7** | **$2,729.0** | **$2,816.0** | **$2,904.2** | **$2,989.8** | **$3,077.9** | **$3,164.5** |
| **Net Operating Income** | **$4,957.6** | **$5,215.0** | **$5,827.1** | **$4,563.8** | **$4,484.4** | **$4,427.3** | **$4,340.7** |
| | | | | | | | |
| **Interest Expense** | | **$1,834.5** | **$2,092.8** | **$2,351.2** | **$2,480.4** | **$2,609.6** | **$2,738.8** |
| **Debt Service Coverage** | | **2.84** | **2.78** | **1.94** | **1.81** | **1.70** | **1.58** |
| | | | | | | | |
| Capital, Leasing, TI & Other | | $ 796.0 | $ 694.0 | $ 49.0 | $ 27.0 | $ 100.0 | $ 101.0 |
| **Net Cash Flow for Distributions** | | **$ 2,584.5** | **$ 3,040.3** | **$ 2,163.6** | **$ 1,977.0** | **$ 1,717.7** | **$ 1,500.9** |
| Estimated Parent Level Interest | | $ 1,442.9 | $ 1,457.4 | $ 1,472.0 | $ 1,486.8 | $ 1,501.7 | $ 1,516.8 |
| CF Coverage of Parent Debt | | 1.79 | 2.09 | 1.47 | 1.33 | 1.14 | 0.99 |
| | | | | | | | |
| **Interest Expense Assumptions:** | | | | | | | |
| Senior Loan Amount | | $ 51,675 | $ 51,675 | $ 51,675 | $ 51,675 | $ 51,675 | $ 51,675 |
| *Margin* | | 1.80% | 1.80% | 1.80% | 1.80% | 1.80% | 1.80% |
| *Libor* | | 1.75% | 2.25% | 2.75% | 3.00% | 3.25% | 3.50% |
| *All-in Rate* | | 3.55% | 4.05% | 4.55% | 4.80% | 5.05% | 5.30% |
| Interest Expense | | $ 1,834.5 | $ 2,092.8 | $ 2,351.2 | $ 2,480.4 | $ 2,609.6 | $ 2,738.8 |
| | | | | | | | |
| *Parent Mezzanine Loan* | | $ 16,975.0 | $ 17,145.4 | $ 17,317.5 | $ 17,491.3 | $ 17,666.8 | $ 17,844.2 |
| *Parent Mezz Debt Interest @ 8.5%* | | $ 1,442.9 | $ 1,457.4 | $ 1,472.0 | $ 1,486.8 | $ 1,501.7 | $ 1,516.8 |

001476

Slide 38

**STRICTLY CONFIDENTIAL**



# VI – Recommendations

### Strengths

- The Property is currently 91.5% occupied but the Property Owner is negotiating a new leases to bring that to 93%.

- The Property just underwent a substantial $20MM renovation to bring it up to a Class A level property, with many very high end amenities.

- The current Property income is more than sufficient to cover debt service – at the current occupancy level, no upside assumptions are needed.

- The Loan to Value is a good 53.7%, based on the $96.9MM "As Is" value.

- With a Sales Method valuation, the $99.1MM valuation provides a strong 52% LTV.

- The Property has a long term lease maturity profile, with 88% of rent related to leases expiring after the loan maturity.

- The Property is well positioned in the upscale Galleria area of Houston, which is benefitting from the new River Oak District project which is still expanding.

- The greater Houston area is expected to experience growth in GDP and employment in 2018.

STRICTLY CONFIDENTIAL


# VI – Recommendations

## Weaknesses

- There is key tenant risk as one tenant with a weakening credit profile currently leases 67% of the space, however, the owner is working to let the tenant consolidate and re-lease some of that space, with one new tenant lined up already; re-leasing risk is lower as cash flows are strong enough that the property can service debt even at a much lower than current rent rate if needed.

- There are several smaller tenants with leases maturing prior to the loan maturity, however, none of these amounts are significant and leasing interest in the Property has been strong; there are two new long term leases currently being finalized.

- There is no financial loan guarantee, however, there is a strong equity commitment via the 53% Loan to Value ratio and projected cash flows support the loan well with a good DSCR.

- No amortization.

- The Houston real estate market has been weakening as a result of the downturn in the Oil & Gas industry, however, there is less new supply going forward and this will improve absorption and vacancy rates; the vacancy rate for the Property's upscale Galleria submarket of 15.4% is good and lower than the broader Houston market.

**STRICTLY CONFIDENTIAL**


Galleria 2425 Owner, LLC

# VI – Recommendations

## Conclusion

NBK-NY recommends approval of the proposed $51.675MM 5 year loan, secured by a first priority lien on the Property, based on the following:

- The Property has just been renovated, with a $20MM investment bringing it up to a Class A level property.
- The LTV at closing will be a strong 53.7%.
- The Property is currently 91.5% leased and this should shortly rise to 93% with the finalization of a lease in negotiation.
- There is key tenant risk due to the large 67% occupancy of Specialty Retailers but the Sponsor is working to reduce this and is in final negotiations for a large lease to take one of Speciality Retailers' floors.
- Although this new lease would not raise occupancy, the new higher rental rates would improve cash flows – but this is not needed for debt service, which is projected to be over 2X with existing leases.
- The Property is well located in the upscale Galleria submarket of Houston, which enjoys a lower than average vacancy rate.
- NBK-NY was recommended to the Sponsor by NBK-Geneva, which enjoys a good relationship with Naissance.

- Recommend a "C" rating.

STRICTLY CONFIDENTIAL

## VI – MICC Recommendations

- Recommendation

**STRICTLY CONFIDENTIAL**



# APPENDICES

A. Appendix A - RAROC
B. Appendix B – JLL Market Information

**STRICTLY CONFIDENTIAL**

# INTERNATIONAL BANKING GROUP | Credit Proposal Summary

## Galleria 2425 Owner, LLC



| Transaction 1 | Ref Name: | **2425 W Loop** | Transaction Status: | **PROPOSED** | Report Date: | 08-Mar-18 | Report Ccy: | USD |

### Obligor Profile

| | |
|---|---|
| *Obligor:* | 2425 W Loop |
| *Country:* | United States |
| *Region:* | North America |
| *Industry:* | Real Estate |

### Obligor Ratings

| | |
|---|---|
| *Moody's:* | |
| *S&P:* | |
| *Fitch:* | |
| Composite External Rating: | Not Rated |
| Internal Rating: | 5 |
| Internal Equivalent Mapped Rtg: | Ba |
| Anchor Rating PD: | Ba |

### Country Risk Profile

| | | |
|---|---|---|
| Sov **Moody's** LT FC: | Aaa | STABLE |
| Sov **S&P** LT FC Issuer: | AA+u | STABLE |
| Sov **Fitch** Issuer LT FC: | AAA | STABLE |
| Sov **Composite** Rating: | Aaa | |

**EIU Country Risk Scores:**

| 21 | 23 | 25 | 15 | 19 | 25 |
|---|---|---|---|---|---|
| Country | Banking | Ccy | Sov | Political | Econ. Struct. |

| 5Y CDS (bps): | 30.3 | **Country Score:** | 4.5 |

### Facility Terms

| | |
|---|---|
| *Facility Type:* | Funded Facility |
| *Exposure Type:* | Corporate |
| *Additional Exposure Type:* | SL: Income Producing RE |
| *Slotting Internal Grading Rate:* | STRONG |
| *Facility Size:* | 51,675,000 |
| Exposure at Default (EAD): | 51,675,000 |
| Amortization: | NO |
| Transaction Currency: | USD |
| *Facility Maturity:* | 1-Mar-23 |
| *Tenor (T in Years):* | 4.98 |
| *Avg. Maturity (If Amort):* | |

### Security

| | |
|---|---|
| Collateralization: | Unsecured |

### Booking

| | |
|---|---|
| Booking Location: | New York |

### Pricing

| | |
|---|---|
| *Spread above Mkt Bench. (%)* | 1.800% |
| *Total Fees p.a.:* | 0.10% |
| Matched Funding Liquidity Premium (%) | 0.45% |
| *Override COF/Liq Premium:* | |
| *Operating Cost (% of Gross Revenue):* | |
| *Effective Marginal Tax Rate:* | |

### Other Capital Parameters

**Regulatory:**

| | |
|---|---|
| Regulatory Haircut: | N/A |
| Net Eligible Collateral (USD): | 0 |
| Net Reg Exposure (USD): | 51,675,000 |
| Reg RWA (in USD): | 51,675,000 |
| Effective Reg Provision p.a. (Reg EL): | 0.20% |

**Economic:**

| | **1-year** | **Cumulative 5-year** |
|---|---|---|
| Prob. of Default (PD): | N/A | N/A |
| *Override PD:* | | |
| | **Unsec. Part** | **Sec. Part** |
| Loss Given Default (LGD): | N/A | N/A |
| *Override LGD:* | | |
| Blended: | | N/A |

*PD Source: N/A - Using Basel Supervisory Slotting Methodology*

### Risk/Returns Metrics

**RISK:**

| | Regulatory | Economic |
|---|---|---|
| Cost of Risk/Exp. Loss (%Nominal): | 0.20% | 0.40% |
| Capital Charge (%Nominal): | 17.00% | 5.60% |
| Consumed Capital (USD): | 8,784,750 | 2,893,800 |
| Equity Charge (USD): | 7,532,799 | 14.58% |

**RETURNS p.a.:**

| | | % Nominal |
|---|---|---|
| Gross Income (NII + Fees) (USD): | 826,800 | 1.60% |
| Net Income (NI) (USD): | 826,800 | 1.60% |
| Liquidity/Tenor Adjusted NI (USD): | 749,288 | 1.45% |
| Risk-Adjusted Income (AI) (USD): | 542,588 | 1.05% |

**DIVERSIFICATION BENEFITS:**

| | PRE | POST |
|---|---|---|
| Geographical Variance: | 0.7112% | 0.7090% |
| Industry Variance: | 0.9749% | 0.9771% |
| Score: | | 0.73 |

### Returns on Capital

| | TRANSACTION | | |
|---|---|---|---|
| | 8.5% | **9.4%** | 18.8% |
| | ROC (FTP) | ROC | RAROC |

| | RELATIONSHIP | | |
|---|---|---|---|
| EXISTING ONLY: | N/A | N/A | N/A |
| | ROC (FTP) | ROC | RAROC |

| EFFECT OF PROPOSED SINGLE TRANSACTION on EXISTING: | 8.5% | 9.4% | 18.8% |
|---|---|---|---|
| | ROC (FTP) | ROC | RAROC |

001482

Slide 44

STRICTLY CONFIDENTIAL

**Galleria 2425 Owner, LLC**

 Attachment #2

 *Houston*

Q4 2017

## Office Statistics

| | Class | Inventory (s.f.) | Quarterly total net absorption (s.f.) | YTD total net absorption (s.f.) | YTD total net absorption (% of stock) | Direct vacancy (%) | Total vacancy (%) | Average direct asking rent ($ p.s.f.) | YTD completions (s.f.) | Under construction (s.f.) |
|---|---|---|---|---|---|---|---|---|---|---|
| **Houston Totals** | | | | | | | | | | |
| | A | 108,581,173 | -89,669 | -1,500,682 | -1.4% | 20.2% | 24.7% | $35.30 | 2,736,644 | 1,978,465 |
| | B | 59,020,241 | -441,449 | -1,257,778 | -2.1% | 19.7% | 20.4% | $21.81 | 82,800 | 0 |
| **Totals** | | 167,601,414 | -531,118 | -2,758,460 | -1.6% | 20.0% | 23.2% | $30.55 | 2,819,444 | 1,978,465 |
| CBD | Totals | 35,561,535 | -179,460 | -1,170,841 | -3.3% | 17.4% | 20.9% | $41.60 | 1,056,658 | 778,344 |
| **CBD** | **Totals** | 35,561,535 | -179,460 | -1,170,841 | -3.3% | 17.4% | 20.9% | $41.60 | 1,056,658 | 778,344 |
| Midtown | Totals | 4,120,911 | 120,104 | 35,983 | 0.9% | 14.3% | 15.5% | $31.35 | 0 | 0 |
| Greenway Plaza | Totals | 9,928,139 | -60,456 | -134,944 | -1.4% | 16.5% | 16.9% | $34.05 | 188,547 | 0 |
| Greenspoint/North Belt | Totals | 8,920,132 | -20,952 | -321,625 | -3.6% | 51.0% | 54.2% | $20.79 | 0 | 0 |
| Northwest | Totals | 8,551,128 | -175,257 | -87,677 | -1.0% | 23.4% | 26.3% | $23.89 | 0 | 0 |
| San Felipe/Voss | Totals | 5,150,824 | -34,810 | -98,954 | -1.9% | 18.0% | 18.3% | $29.50 | 0 | 0 |
| Southwest | Totals | 6,026,337 | -198,378 | -246,954 | -4.1% | 23.9% | 24.2% | $17.92 | 0 | 0 |
| Galleria | Totals | 22,701,426 | -136,881 | -607,226 | -2.7% | 18.1% | 21.2% | $35.61 | 980,000 | 104,579 |
| Bellaire | Totals | 2,278,583 | -3,311 | 21,470 | 0.9% | 10.7% | 11.7% | $24.65 | 0 | 0 |
| Medical Center | Totals | 3,928,258 | 7,697 | -29,471 | -0.8% | 9.0% | 9.2% | $29.70 | 0 | 0 |
| **Suburban Near** | **Totals** | 71,605,738 | -502,204 | -1,469,398 | -2.1% | 22.1% | 24.1% | $27.28 | 1,168,547 | 104,579 |
| Katy Freeway East | Totals | 5,547,268 | -1,068 | 27,342 | 0.5% | 14.5% | 15.7% | $34.21 | 238,173 | 0 |
| Katy Freeway West | Totals | 19,700,169 | -64,928 | -443,164 | -2.2% | 23.4% | 32.3% | $30.93 | 86,255 | 243,583 |
| Westchase | Totals | 13,012,970 | 155,976 | 48,876 | 0.4% | 19.4% | 24.2% | $29.39 | 187,011 | 0 |
| **Energy Corridor** | **Totals** | 38,260,407 | 89,980 | -366,946 | -1.0% | 20.7% | 27.1% | $30.76 | 511,439 | 243,583 |
| FM 1960 | Totals | 5,876,912 | -24,110 | 9,008 | 0.2% | 18.3% | 18.9% | $18.16 | 0 | 0 |
| Sugar Land | Totals | 4,232,491 | 54,984 | 101,505 | 2.4% | 8.5% | 10.2% | $26.75 | 0 | 147,159 |
| Gulf Freeway/Pasadena | Totals | 1,516,973 | -5,307 | -23,235 | -1.5% | 17.9% | 17.9% | $21.73 | 82,800 | 0 |
| NASA/Clear Lake | Totals | 3,260,980 | -44,996 | -108,342 | -3.3% | 17.4% | 18.0% | $20.07 | 0 | 0 |
| The Woodlands | Totals | 7,286,378 | 79,995 | 269,789 | 3.7% | 18.4% | 19.2% | $30.79 | 0 | 704,800 |
| **Suburban Outlying** | **Totals** | 22,173,734 | 60,566 | 248,725 | 1.1% | 16.3% | 17.1% | $23.99 | 82,800 | 851,959 |
| **Houston** | **Totals** | 167,601,414 | -531,118 | -2,758,460 | -1.6% | 20.0% | 23.2% | $30.55 | 2,819,444 | 1,978,465 |
| CBD | A | 28,012,863 | -165,839 | -935,657 | -3.3% | 17.1% | 21.3% | $44.49 | 1,056,658 | 778,344 |
| **CBD** | **A** | 28,012,863 | -165,839 | -935,657 | -3.3% | 17.1% | 21.3% | $44.49 | 1,056,658 | 778,344 |
| Midtown | A | 1,853,042 | 117,497 | 43,939 | 2.4% | 21.3% | 22.5% | $32.42 | 0 | 0 |
| Greenway Plaza | A | 7,356,944 | -68,468 | -55,318 | -0.8% | 17.6% | 18.1% | $36.09 | 188,547 | 0 |
| Greenspoint/North Belt | A | 4,646,354 | -904 | -179,801 | -3.9% | 57.9% | 63.4% | $24.45 | 0 | 0 |
| Northwest | A | 3,884,006 | -49,083 | -25,588 | -0.7% | 28.6% | 32.8% | $25.99 | 0 | 0 |
| San Felipe/Voss | A | 1,720,793 | 10,729 | 15,396 | 0.9% | 22.1% | 22.1% | $35.86 | 0 | 0 |
| Southwest | A | 1,578,768 | -79,320 | -138,211 | -8.8% | 22.2% | 22.8% | $18.41 | 0 | 0 |
| Galleria | A | 17,751,947 | -86,112 | -496,624 | -2.8% | 18.9% | 22.8% | $37.62 | 980,000 | 104,579 |
| Bellaire | A | 1,091,536 | -18,293 | 560 | 0.1% | 11.7% | 13.5% | $24.31 | 0 | 0 |
| Medical Center | A | 1,729,776 | 10,655 | -55,907 | -3.2% | 13.3% | 13.9% | $33.53 | 0 | 0 |
| **Suburban Near** | **A** | 41,613,166 | -163,299 | -891,554 | -2.1% | 23.9% | 26.8% | $31.08 | 1,168,547 | 104,579 |
| Katy Freeway East | A | 4,111,243 | -15,811 | 30,572 | 0.7% | 15.6% | 16.8% | $37.88 | 238,173 | 0 |
| Katy Freeway West | A | 14,298,117 | -76,400 | -216,841 | -1.5% | 22.6% | 34.8% | $35.57 | 86,255 | 243,583 |
| Westchase | A | 8,792,934 | 183,428 | 114,243 | 1.3% | 19.9% | 26.7% | $34.45 | 187,011 | 0 |
| **Energy Corridor** | **A** | 27,202,294 | 91,217 | -72,026 | -0.3% | 20.7% | 29.4% | $35.50 | 511,439 | 243,583 |
| FM 1960 | A | 2,284,644 | 4,486 | 80,506 | 3.5% | 11.1% | 12.4% | $28.21 | 0 | 0 |
| Sugar Land | A | 2,924,199 | 56,893 | 58,702 | 2.0% | 7.7% | 8.8% | $31.24 | 0 | 147,159 |
| Gulf Freeway/Pasadena | A | 0 | 0 | 0 | 0.0% | 0.0% | 0.0% | $0.00 | 0 | 0 |
| NASA/Clear Lake | A | 1,336,691 | 254 | -26,129 | -2.0% | 5.6% | 6.5% | $24.15 | 0 | 0 |
| The Woodlands | A | 5,207,316 | 86,619 | 285,476 | 5.5% | 19.5% | 20.1% | $33.23 | 0 | 704,800 |
| **Suburban Outlying** | **A** | 11,752,850 | 148,252 | 398,555 | 3.4% | 13.3% | 14.3% | $31.37 | 0 | 851,959 |
| **Houston** | **A** | 108,581,173 | -89,669 | -1,500,682 | -1.4% | 20.2% | 24.7% | $35.30 | 2,736,644 | 1,978,465 |

STRICTLY CONFIDENTIAL

# INTERNATIONAL BANKING GROUP | Credit Proposal Summary

## Galleria 2425 Owner, LLC



| | Class | Inventory (s.f.) | Total net absorption (s.f.) | YTD total net absorption (s.f.) | YTD total net absorption (% of stock) | Direct vacancy (%) | Total vacancy (%) | Average direct asking rent ($ p.s.f.) | YTD completions (s.f.) | Under construction (s.f.) |
|---|---|---|---|---|---|---|---|---|---|---|
| CBD | B | 7,548,672 | -13,621 | -235,184 | -3.1% | 18.4% | 19.4% | $29.53 | 0 | 0 |
| **CBD** | **B** | **7,548,672** | **-13,621** | **-235,184** | **-3.1%** | **18.4%** | **19.4%** | **$29.53** | **0** | **0** |
| | | | | | | | | | | |
| Midtown | B | 2,267,869 | 2,607 | -7,956 | -0.4% | 8.6% | 9.9% | $29.24 | 0 | 0 |
| Greenway Plaza | B | 2,571,195 | 8,012 | -79,626 | -3.1% | 13.3% | 13.6% | $27.71 | 0 | 0 |
| Greenspoint/North Belt | B | 4,273,778 | -20,048 | -141,824 | -3.3% | 43.4% | 44.2% | $15.79 | 0 | 0 |
| Northwest | B | 4,667,122 | -126,174 | -62,089 | -1.3% | 19.0% | 20.8% | $20.42 | 0 | 0 |
| San Felipe/Voss | B | 3,430,031 | -45,539 | -114,350 | -3.3% | 15.9% | 16.4% | $24.13 | 0 | 0 |
| Southwest | B | 4,447,569 | -119,018 | -108,743 | -2.4% | 24.6% | 24.6% | $17.73 | 0 | 0 |
| Galleria | B | 4,949,479 | -50,769 | -110,602 | -2.2% | 15.1% | 15.4% | $26.89 | 0 | 0 |
| Bellaire | B | 1,187,047 | 14,982 | 20,910 | 1.8% | 9.8% | 10.1% | $25.06 | 0 | 0 |
| Medical Center | B | 2,198,482 | -2,958 | 26,436 | 1.2% | 5.5% | 5.5% | $27.61 | 0 | 0 |
| **Suburban Near** | **B** | **29,992,572** | **-338,905** | **-577,844** | **-1.9%** | **19.7%** | **20.3%** | **$20.76** | **0** | **0** |
| | | | | | | | | | | |
| Katy Freeway East | B | 1,436,025 | 14,743 | -3,230 | -0.2% | 11.2% | 12.5% | $21.83 | 0 | 0 |
| Katy Freeway West | B | 5,402,052 | 11,472 | -226,323 | -4.2% | 25.4% | 25.8% | $22.37 | 0 | 0 |
| Westchase | B | 4,220,036 | -27,452 | -65,367 | -1.5% | 18.2% | 19.0% | $19.86 | 0 | 0 |
| **Energy Corridor** | **B** | **11,058,113** | **-1,237** | **-294,920** | **-2.7%** | **20.8%** | **21.5%** | **$21.45** | **0** | **0** |
| | | | | | | | | | | |
| FM 1960 | B | 3,592,268 | -28,596 | -71,498 | -2.0% | 22.9% | 23.0% | $16.73 | 0 | 0 |
| Sugar Land | B | 1,308,292 | -1,909 | 42,803 | 3.3% | 10.4% | 13.3% | $21.75 | 0 | 0 |
| Gulf Freeway/Pasadena | B | 1,516,973 | -5,307 | -23,235 | -1.5% | 17.9% | 17.9% | $21.73 | 82,800 | 0 |
| NASA/Clear Lake | B | 1,924,289 | -45,250 | -82,213 | -4.3% | 25.7% | 25.7% | $18.88 | 0 | 0 |
| The Woodlands | B | 2,079,062 | -6,624 | -15,687 | -0.8% | 15.8% | 16.8% | $26.76 | 0 | 0 |
| **Suburban Outlying** | **B** | **10,420,884** | **-87,686** | **-149,830** | **-1.4%** | **19.7%** | **20.3%** | **$19.88** | **82,800** | **0** |
| **Houston** | **B** | **59,020,241** | **-441,449** | **-1,257,778** | **-2.1%** | **19.7%** | **20.4%** | **$21.81** | **82,800** | **0** |

STRICTLY CONFIDENTIAL

STATE OF TEXAS               §
                            §
COUNTY OF HARRIS            §

## NOTICE OF LIS PENDENS

Notice is hereby given that there is pending in the 11th Judicial District Court, Harris County, Texas a certain action and suit styled George M. Lee v. Galleria 2425 Owner, LLC and National Bank Of Kuwait, S.A.K.P., New York Branch, Cause Number 2019- 89764 , wherein George M. Lee is Plaintiff, and Galleria 2425 Owner, LLC and National Bank of Kuwait, S.A.K.P., New York Branch, are Defendants; that such suit is proceeding for, among other causes of action, declaration that Plaintiff has a valid subsisting, first in time lien on the hereinafter described property, involving the real property and improvements located in Harris County, Texas which is commonly known as 2425 West Loop South, Houston, Texas 77027 and is more particularly described by reference to the map/plat records of Harris County and by metes and bounds in Exhibit "A" ("The Property"), which is attached hereto and incorporated herein for any and all purposes.  Plaintiff is seeking affirmative relief related to title to and encumbrances on The Property in such suit.

Witness my hand, this 23 day of December 2019.

_____
George M. Lee

001485

## Acknowledgement

State of Texas
County of Harris

    This instrument was acknowledged before me on December 23, 2019 by George M. Lee, known to me to be that person, who appeared before me and stated he was executing the foregoing Notice of Lis Pendens in the capacity and for the purposes stated therein, and that all the facts stated therein are true and correct and within his personal knowledge.

Japage Realty
5353 West Alabama Suite 610
Houston, Texas 77056

Notary Public's Signature

ROBERT S. FRANK, JR.
Notary Public, State of Texas
Comm. Expires 02-01-2021
Notary ID 129292512

**After Recording Return To:**
Thomas L. Hunt
Thomas L. Hunt & Associates
5353 West Alabama, Suite 605
Houston, Texas 77056

RP-2019-568909

001486

Real property in the City of Houston, County of Harris and State of Texas, described as follows:

Tract 1: Fee Tract

BEING 2.4462 ACRES (106,557 SQUARE FEET) OF LAND OUT OF THE WILLIAM WHITE SURVEY, ABSTRACT NO. 836, HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED TO 2425 WEST LOOP, LP BY SPECIAL WARRANTY DEED RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472, SAID TRACT CONVEYED BY DEED TO ONE WEST LOOP PLAZA, LTD. UNDER HCCF NO. S547896 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE WESTHEIMER ROAD (ROW VARIES) BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST, TO A 1/2 INCH IRON ROD FOUND AT THE NORTHEAST CORNER OF THE 2.3468 ACRE PARCEL BEING THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED PARCEL AND THE POINT OF BEGINNING;

THENCE, WESTERLY ALONG THE COMMON LINE OF THE 2.3468 ACRE PARCEL TO THE SOUTH AND THE HEREIN DESCRIBED PARCEL TO THE NORTH, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 464.50 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY (ROW) LINE OF INTERSTATE 610 WEST LOOP AND THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL FROM. WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST 2.42 FEET;

THENCE, NORTHERLY ALONG THE EASTERLY RIGHT OF WAY LINE OF INTERSTATE 610 WEST LOOP (ROW 350 FEET) NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 251.27 FEET TO AN "X" SET IN CONCRETE BEING THE SOUTHWEST CORNER OF A 7.8998 ACRE PARCEL AS SHOWN ON THE HOUSTON VENTURE PLAT UNRESTRICTED RESERVE "A" FILED IN THE HARRIS COUNTY MAP RECORDS AS FILM CODE NUMBER 356074, AND THE NORTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL;

THENCE, EASTERLY ALONG THE COMMON LINE OF THE ABOVE INDICATED 7.8998 ACRE PARCEL TO THE NORTH AND THE HEREIN DESCRIBED PARCEL TO THE SOUTH NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 406.61 FEET TO AN "X"

[Exhibit A - Property Description]

# EXHIBIT A

RP-2019-568909

FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND CONVEYED TO RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

THENCE, SOUTHERLY ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST AND THE HEREIN DESCRIBED PARCEL TO THE WEST, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 244.64 FEET TO THE POINT OF BEGINNING CONTAINING 106,557 SQUARE FEET, 2.4462 ACRES MORE LESS.

NOTE: WE ARE PROHIBITED FROM INSURING ANY INACCURACY IN STATEMENT AS TO THE QUANTITY OF LAND CONTAINED WITHIN THE BOUNDARIES OF THE LAND DESCRIBED IN SCHEDULE A.

TRACT 2 EASEMENT TRACT: 20 FOOT NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND NORTHERLY OF AND 20 FEET WIDE ALONG THE ENTIRE NORTHERLY BOUNDARY LINE OF TRACT I; SAID EASEMENT CREATED AND GRANTED BY VIVIAN L. SMITH, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF R. E. SMITH, DECEASED IN THAT CERTAIN GENERAL WARRANTY DEED DATED JULY 5, 1977 FILED IN HCCF NO. F216562 AND DESCRIBED IN HCCF NO. G743294, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO A 1/2 INCH IRON ROD FOUND FOR THE SOUTHEAST CORNER OF TRACT I;

THENCE CONTINUING NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 244.64 FEET ALONG A COMMON LINE OF A PREVIOUSLY NOTED 3.4385 ACRE PARCEL OF LAND TO THE EAST AND TRACT I TO THE WEST TO AN "X" FOUND FOR THE NORTHEAST CORNER OF TRACT I AND THE POINT OF BEGINNING;

[Exhibit A - Property Description]

UNOFFICIAL COPY

THENCE, WESTERLY SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 406.61 FEET ALONG THE NORTHERLY LINE OF TRACT 1 TO AN "X" SET ON THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP (350 FEET WIDE);

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO A POINT;

THENCE, EASTERLY 20.00 FEET NORTHERLY FROM AND PARALLEL TO THE NORTHERLY LINE OF TRACT 1, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 401.88 FEET TO A POINT;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST 20.00 FEET TO THE POINT OF BEGINNING AND CONTAINING 0.1856 ACRES OR 8,085 SQUARE FEET OF LAND MORE OR LESS.

TRACT 3 EASEMENT TRACT: 20 FOOT NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT:

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND SOUTHERLY OF AND 20.00 FEET WIDE ALONG THE ENTIRE SOUTHERN BOUNDARY LINE OF TRACT 1, SAID EASEMENT CREATED AND GRANTED ON FEBRUARY 16, 1979, FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED FILED IN HCCF NO. G041310, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 184.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING, WHENCE THE SOUTHEAST CORNER OF TRACT 1 BEARS NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 20.02 FEET;

THENCE, WESTERLY 20.00 FEET SOUTHERLY FROM AND PARALLEL TO THE SOUTHERLY LINE OF TRACT 1, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 469.23 FEET TO A POINT IN THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP;

[Exhibit A - Property Description]

RP-2019-568909

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST, 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO THE SOUTHWEST CORNER FOR TRACT 1 FROM WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST, 2.42 FEET;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 464.50 FEET ALONG THE SOUTHERLY LINE OF TRACT 1 TO A 1/2 INCH IRON ROD FOUND AT THE SOUTHEAST CORNER OF TRACT 1;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 20.02 FEET ALONG THE A COMMON LINE BETWEEN A PREVIOUSLY DESCRIBED 2.3468 ACRES PARCEL TO THE WEST AND A 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING AND CONTAINING 0.2144 ACRES OR 9,337 SQUARE FEET OF LAND, MORE OR LESS.

TRACT 4 EASEMENT TRACT: 28 FOOT ROADWAY AND PEDESTRIAN EASEMENT;

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT ACROSS EASTERLY 28 FEET OF A 2.3468 ACRE TRACT ADJACENT TO AND SOUTHERLY OF TRACT 1, CREATED AND GRANTED IN THAT CERTAIN ROAD AND PEDESTRIAN EASEMENT DATED FEBRUARY 16, 1979 FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED, FILED IN HCCF NO. G041313, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT A FOUND 5/8 INCH IRON ROD IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, WESTERLY SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, 28.00 FEET ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD TO A POINT;

THENCE, NORTHERLY 28.00 FEET WESTERLY OF AND PARALLEL TO THE EASTERLY LINE OF SAID 2.3468 ARE TRACT NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 205.08 FEET TO A POINT ON THE SOUTHERLY LINE OF TRACT 1;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 28.00 FEET ALONG THE SOUTHERLY LINE OF TRACT 1 TO A 1/2 INCH IRON ROD FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND PRESENTLY OWNED BY RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

[Exhibit A - Property Description]

RP-2019-568909

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 204.61 FEET ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST SAID THE PREVIOUSLY DESCRIBED 2.3468 ACRE PARCEL TO THE WEST, TO THE POINT OF BEGINNING, CONTAINING 0.1317 ACRES OR 5,735 SQUARE FEET (CALLED 5,740) OF LAND MORE OR LESS.

TRACT 5 EASEMENT TRACT: 5 FOOT STORM SEWER EASEMENT

A 1,025 SQUARE FOOT TRACT OF LAND, BEING THAT SAME TRACT UN PROPERTIES, LIMITED, RECORDED IN HCCF NUMBER G041311, LOCATED IN THE WILLIAM WHITE SURVEY, ABSTRACT NUMBER 836, CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY (ROW) OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. 5056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR. TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE ALONG THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, A DISTANCE OF 16.00 FEET TO THE SOUTHEAST CORNER OF SAID EASEMENT AND THE HEREIN DESCRIBED TRACT;

THENCE CONTINUING ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST A DISTANCE OF 5.00 FEET, THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING SAID WESTHEIMER ROAD, NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, A DISTANCE OF 204.96 FEET, TO A POINT IN THE SOUTHERLY LINE OF A 2.4462 ACRE TRACT CONVEYED BY DEED TO HE 2425 WEST LOOP, LP RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472;

THENCE ALONG THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST A DISTANCE OF 5.00 FEET TO THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, A DISTANCE OF 204.88 FEET TO THE POINT OF BEGINNING AND CONTAINING 1,025 SQUARE FEET OF LAND, MORE OR LESS

[Exhibit A - Property Description]

RP-2019-568909

RP-2019-568909

# Pages 8

12/26/2019 11:04 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

DIANE TRAUTMAN

COUNTY CLERK

Fees $40.00

RP-2019-568909

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

001492

**NO. 2015-36895**

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| HIRA AZHAR | § | JUDICIAL DISTRICT |
| AND | § | |
| ALI CHOUDHRI | § | HARRIS COUNTY, TEXAS |



**ORDER ON MOTION TO EXPUNGE LIS PENDENS**

On June 21, 2017, the Court considered the Motion to Expunge Lis Pendens of Ali Choudhri.

The real property affected by this order are as follows:

1. The Lis Penden filed on December 16, 2016 film number RP-2016-565274 described as 3901 Woodchase, Houston, Texas 77042;

2. The Lis Penden filed on April 7, 2017, film number RP-2017-149887 described as 2425 WL GP, LLC; 2425 Wl LLC a New York Liability Company; 2425 West Loop; World Wide Office Management, LLC.; Office North Belt, LLC., Jetall Companies, Inc., Jetall GP, LLC., George M. Lee; Serena Yu; Catherine Lee; Mohammad Ali Choudhri, also known as Ali Choudhri;

3. The Lis Penden filed on April 7, 2017, film number RP-2017-149886 described as 50 Briar Hollow, LLC.; 50 BH, LLC., a New York Liability Company; Briarhollow Joint Venture; Emily Ko Lee, as trustee for Kolee 59 Trust; Jetall Companies, Inc, Jetall GP, LLC; George M. Lee; George Lee; Mohammad Ali Choudhri, also known as Ali Choudhri;

4. The Lis Pendens filed on May 19, 2017, film number RP-2017-221449 described as Broad Acres, LLC;

5. The Lis Pendens filed on May 19, 2017, film number RP-2017-221448 described as 2401 Fountainview Drive, Houston, Texas 77057;

6. The Lis Pendens filed on May 19, 2017, film number RP-2017-221447 described as 1001 W. Loop South, Houston, Texas 77027;

7. The lis pendens filed on May 19, 2017, film number RP-2017-221446 described as 35 E.

Rivercrest, in Houston, Texas;

8. The lis pendens filed on June 16, 2017, film number RP-2017-269266 described as 105 Detering Street, #A, in Houston Texas 77007;

9. The lis pendens filed on June 16, 2017, film number RP-2017-269265 described as 207 Malone Street, Houston, Texas 77007;

10. The lis pendens filed on June 16, 2017, film number RP-2017-269264 described as 402 Terrace Drive, Houston, Texas 77007;

11. The lis pendens filed on June 16, 2017, film number RP-2017-269263 described as 3550 Charleston St., Houston, Texas 77021;

12. The lis pendens filed on June 16, 2017, film number RP-2017-269262 described as 4401 Schumier Road, Houston, Texas 77048.

13. The lis pendens filed on June 16, 2017, film number RP-2017-69261 described as 5803 Blossom Street, Houston, Texas;

14. The lis pendens filed on June 16, 2017, film number RP-2017-269260 described as 656 Coppage Street, in Houston, Texas.

15. The lis pendens filed on June 16, 2017, film number RP-2017-269259 described as 6531 Rodrigo St., in Houston, Texas.

16. The lis pendens filed on June 16, 2017, film number RP-2017-269258 described as 7907 Raven Creek, in Houston, Texas.

17. Amended Notice of Lis Pendens filed on June 19, 2017 described as 35 E. Rivercrest Drive, Houston, Texas 77042;

18. Amended Notice of Lis Pendens filed on June 19, 2017 described as 50 Bria Hollow Lane, Houston, Texas 77027;

19. Amended Notice of Lis Pendens filed on June 19, 2017 described as 1001 W. Loop South, Houston, Texas 77027;

20. Amended Notice of Lis Pendens filed on June 19, 2017 described as 35 2401 Fountainview

Drive, Houston, Texas 77057;

21. Amended Notice of Lis Pendens filed on June 19, 2017 described as 2425 West Loop South, Houston, Texas 77027;

22. Amended Notice of Lis Pendens filed on June 19, 2017 described as 3901 Woodchase, Houston, Texas 77042;

23. Amended Notice of Lis Pendens filed on June 19, 2017 described as 35 E. Rivercrest Drive, Houston, Texas 77042;

24. Amended Notice of Lis Pendens filed on June 19, 2017 described as Broad Acres.;

25. Notice of Lis Pendens filed on June 19, 2017 described as 105 Detering Street, #A, Houston, Texas 77007;

26. Notice of Lis Pendens filed on June 19, 2017 described as 207 Malone Street, Houston, Texas 77007;

27. Notice of Lis Pendens filed on June 19, 2017 described as 402 Terrace Drive, Houston, Texas 77007;

28. Notice of Lis Pendens filed on June 19, 2017 described as 3550 Charleston Street, Houston, Texas 77021;

29. Notice of Lis Pendens filed on June 19, 2017 described as 4401 Schurmier Road, Houston, Texas 77048;

30. Notice of Lis Pendens filed on June 19, 2017 described as 5803 Blossom Street, Houston, Texas 77007;

31. Notice of Lis Pendens filed on June 19, 2017 described as 7907 Raven Creek Lane, Cypress, Texas 77433;

32. Notice of Lis Pendens filed on June 19, 2017 described as 6531 Rodrigo Street, Houston, Texas 77007; and

33. Notice of Lis Pendens filed on June 19, 2017 described as 6516 Coppage Street, Houston, Texas 77007.

The Court FINDS that Plaintiff has failed meet the elements of the Texas Property Code for filing and maintaining a lis pendens. The notice of lis pendens filed on the real property described above is expunged.

FURTHERMORE, the Petitioner is enjoined from filing any further Notices of Lis Pendens affecting any of Petitioner's properties or business interests, without first seeking leave of Court.

SIGNED on _____July 20, 2017_____.

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

FRAGA LAW OFFICE
4001 N. Shepherd Suite #209
HOUSTON, TX 77018
Tel: (832) 767-5833
Fax: (832) 8316362

By:/s/ Michelle M. Fraga
Attorney for Respondent
State Bar No. 24028640
michelle@fragalawoffice.com

Unofficial Copy Office of Chris Daniel District Clerk



**CAUSE NO. 2015-36895**

IN THE MATTER OF §
THE MARRIAGE OF §
§
HIRA AZHAR §
AND §
ALI CHOUDHRI §
§
§

IN THE DISTRICT COURT OF

312TH JUDICIAL DISTRICT

HARRIS COUNTY, TEXAS

F I L E D
Marilyn Burgess
District Clerk

NOV 22 2019

Time: _____
Harris County, Texas
By _____ Hutchings
Deputy

## FINAL JUDGMENT

By order dated August 9, 2019 (the "Order"), the Court dismissed all Texas Family Code

Chapter 6 claims asserted in this case. The Order recited the Court's earlier decision to dismiss

at a hearing conducted on June 26, 2019. At that same hearing, the Court (i) struck Petitioner's

Fourth Amended Petition as being filed past the deadline for pleadings, (ii) granted Petitioner

leave to file a Fifth Amended Petition and (iii) instructed the parties to brief issues relating to Pe-

titioner's newly asserted Texas Family Code Chapter 9 or other property claims. The Court also

entered an order dated April 8, 2019 titled Order on Joint Motion to Compel Enforcement order-

ing that all notices of Lis Pendens filed by Hira Azhar are hereby released and null and void.

Petitioner's Fifth Amended Petition was thereafter filed, asserting new claims under

Texas Family Code Chapter 9 and Chapter 23 of the Texas Property Code. The parties submit-

ted briefing on the newly asserted claims. At a hearing on August 9, 2019, the Court directed the

parties appear for hearing / bench trial on the issues raised in the briefing.

The parties appeared in person and through counsel on August 19, 2019 and announced

ready for trial. Having heard and considered the briefing, the arguments of counsel and the evi-

dence, the Court has determined to dismiss with prejudice all of Petitioner's remaining claims. It

is therefore

*Cause No: 2015-36895: In the Matter of the Marriage of Hira Azhar and Ali Choudhri*
*Final Judgment*

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging 1497

ORDERED, ADJUDGED AND DECREED that Petitioner's newly asserted Fifth Amended Petition claims are dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DECREED that the August 9, 2019 Order is made final by this final judgment. It is further

ORDERED, ADJUDGED and DECREED that Petitioner Hira Azhar take nothing against all Respondent Ali Choudhri and all other Defendants. It is further

ORDERED, ADJUDGED AND DECREED that all costs are taxed against Petitioner Hira Azhar. It is further

ORDERED, ADJUDGED AND DECREED that any claims of Petitioner are dismissed with prejudice, that all other prior orders of the Court not expressly noted above are hereby withdrawn, dissolved, void ab initio and terminated and that this is a final judgment, and is appealable.

SIGNED on the ____ day of __**NOV 2 2 2019**__, 2019.

_____

JUDGE PRESIDING
John T. Wooldridge
Judge Presiding

NCA

CAUSE NO. 2015-36895

P-2
4A

| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| HIRA AZHAR | § | 312TH JUDICIAL DISTRICT |
| AND | § | |
| ALI CHOUDHRI | § | HARRIS COUNTY, TEXAS |

ORDER
~~JUDGMENT~~

✓

On this day came on for consideration Ali Choudhri's Motion to Dismiss filed on or about

April 4, 2019 incorporating 1) Choudhri's Rule 308b Notice dated June 27, 2018; 2) Choudhri's

Plea to the Jurisdiction dated June 27, 2018; and 3) Motion to Dismiss By Choudhri dated

November 8, 2018 including Azhar's Response to Motion to Dismiss dated November 29, 2018,

and all supplements thereto, and the Court after considering all responses, conducting hearings and

receiving evidence and arguments of the parties is of the opinion that the motion should be

GRANTED, *in part* the Court noting that the Supreme Court of Pakistan (the highest court in Pakistan),

by Order dated November 3, 2018, after a challenge by Hira Azhar upheld a divorce certificate

between the parties issued May 22, 2013 based upon a divorce deed dated January 30, 2013, it is

therefore

ORDERED, that ALI CHOUDHRI'S Motion to Dismiss is granted *only as to the extent*

*that the Court recognizes that the parties were divorced in Pakistan as of May*

IT IS FURTHER ORDERED, that, consistent with Ashfaq v. Ashfaq, 467 S.W.3d 539, *22,*

544 (Tex. App. — Houston [1st Dist.] 2015, no pet.) (trial court properly dismissed for lack of *2013.*

jurisdiction where parties had divorced before filing for divorce in Texas), Hira Azhar's Petition

for Divorce is dismissed for want of jurisdiction. Thus, any and all temporary restraining orders

and/or temporary injunctions under the above styled cause number are void *ab initio*.

---

*Cause No: 2015-36895; In the Matter of the Marriage of Hira Azhar v. Ali Choudhri*      Page 1 of 2
*Judgment*

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

SIGNED on the ____ day of _____, 2019.

**AUG 0 9 2019**

_[signature]_

**JUDGE PRESIDING**

John T. Wooldridge
Judge Presiding

**PREPARED BY:**

**LAW OFFICES OF MARSHALL DAVIS BROWN, JR.**

_Marshall Davis Brown, Jr._

**MARSHALL DAVIS BROWN, JR.**
State Bar No. 03153550
mdbjr@mdblegal.com (non-service address)
1001 W Loop South, Suite 700
Houston, Texas 77027
Tel: (713) 222-2500
Fax: (713) 961-1209
service@mdblegal.com (e-Service address)
**ATTORNEY FOR RESPONDENT,**
**ALI CHOUDHRI**

Unofficial Copy Office of Marilyn Burgess District Clerk