Case No. 4:24-cv-03834

In the United States District Court for the
Southern District of Texas, Houston Division

---

In re Galleria 2425 Owner, LLC, *Debtor*

2425 WL, LLC *Appellant*

v.

Christopher R. Murray, Trustee, *Appellee*

---

On Appeal from the United States Bankruptcy Court for the Southern District of
Texas, Houston Division

Case No. 23-34815 (JPN)

---

RESPONSE BRIEF OF APPELLEE TRUSTEE CHRISTOPHER R. MURRAY

---

Shannon & Lee LLP
R. J. Shannon
S.D. Tex. Bar No. 3196214
Tex. Bar No. 24108062
2100 Travis Street, Suite 1525
Houston, TX

*Counsel for Appellee Christopher*
*R. Murray, Liquidation Trustee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

STATEMENT OF ISSUES PRESENTED ................................................... 1

JURISDICTIONAL STATEMENT ........................................................... 2

STANDARD OF REVIEW ......................................................................... 2

STATEMENT OF THE CASE & RELEVANT BACKGROUND ................ 3

   A.  Proof of Claim No. 7 and Documentation Attached Thereto. ........................ 3

   B.  Objection to Claim by the Trustee, Response by 2425 WL, and Reply by the
Trustee. ............................................................................................................ 5

   C.  Trial on Trustee's Claim Objection. ............................................................... 8

   D.  Evidence Presented at the Trial ...................................................................... 9

   E.  The Bankruptcy Court's Oral Ruling and Subsequent Written Disallowance
Order. ............................................................................................................. 16

   F.  2425 WL's Motion to Reconsider .................................................................. 17

SUMMARY OF ARGUMENT ................................................................... 17

ARGUMENT .............................................................................................. 20

   A.  The Claim Objection was not moot and the Bankruptcy Court had
jurisdiction to enter the Disallowance Order. ............................................... 20

   B.  Substantial evidence was presented to the Bankruptcy Court to support the
conclusion that 2425 WL's claim was fraudulent. ........................................ 22

   C.  The Bankruptcy Court correctly allowed and credited the testimony of the
Trustee's witnesses. ...................................................................................... 30

   D.  The criminal referral is not a final order which can be appealed under 28
U.S.C. § 158(a)(1). ....................................................................................... 33

CONCLUSION ........................................................................................... 34

CERTIFICATE OF SERVICE .................................................................... 37

CERTIFICATE OF COMPLIANCE ............................................................ 37

# TABLE OF AUTHORITIES

**Cases**

| Citation | Pages |
|---|---|
| *39 Coll. Point Corp. v. Transpac Capital Corp.*, 12 A.D.3d 664 (NY App. Div. 2nd Dept. 2004) | 24 |
| *ABR Wholesalers, Inc. v. King*, 172 A.D.3d 1929 (NY App. Div. 4th Dept. 2019) | 23 |
| *Chafin v. Chafin*, 568 U.S. 165, 133 S. Ct. 1017 (2013) | 21 |
| *Del Bosque v. AT&T Advert., L.P.*, 441 F. App'x 258 (5th Cir. 2011) | 32 |
| *FDIC v. Mijalis*, 15 F.3d 1314 (5th Cir. 1994) | 32 |
| *Finnegan Constr. Co. v. Robino-Ladd Co.*, 354 A.2d 142 (Del. Super. Ct. 1976) | 24 |
| *Halevi Enters. LLC v. Waa Holdings, Inc.*, 2024 Del. Super. LEXIS 205 (Super. Ct. Mar. 19, 2024) | 23, 24 |
| *In re Fid. Holding Co.*, 837 F.2d 696 (5th Cir. 1988) | 23 |
| *In re Gandy*, 299 F.3d 489 (5th Cir. 2002) | 2 |
| *In re Seven Seas Petroleum Inc*, 552 F.3d 757 (5th Cir. 2008). | 2 |
| *In re WHET, Inc.*, 33 B.R. 424 (D. Mass. 1983) | 23 |
| *Johnson v. Kacimi*, 2024 Del. C.P. LEXIS 13 | 26 |
| *Johnson v. Potter*, 364 F. App'x 159 (5th Cir. 2010) | 31 |
| *Knox v. SEIU, Local 1000*, 567 U.S. 298 (2012) | 20 |
| *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315 (Tex. App.—Houston [14th] 2011) | 23 |
| *TVO Cobblestone, LLC v. ASI Capital, LLC*, 2023 Tex. App. LEXIS 8202 (Tex. App.—El Paso Oct. 27, 2023) | 24 |
| *United States v. Alaniz-Alaniz*, 38 F.3d 788 (5th Cir. 1994) | 33 |
| *United States v. Joseph*, 102 F.4th 686 (5th Cir. 2024) | 32 |
| *Zente v. Credit Mgmt., L.P.*, 789 F.3d 601 (5th Cir. 2015) | 2 |

## Statutes and Regulations

| Citation | Pages |
|---|---:|
| 11 U.S.C. § 502 | 22 |
| 18 U.S.C. § 152 | 34 |
| 18 U.S.C. § 3057 | 33 |
| 28 U.S.C. § 157 | 2 |
| 28 U.S.C. § 158 | 2, 33 |
| 28 U.S.C. § 1331 | 2 |
| 28 U.S.C. § 1334 | 2 |
| 12 C.F.R. PART 1024 Appendix A | 26 |

## Federal Rules

| Citation | Pages |
|---|---:|
| Fed. R. Bankr. P. 3001 | 22 |
| Fed. R. Bankr. P. 8013 | 2 |
| Fed. R. Civ. P. 36 | 8, 27 |

## Bankruptcy Local Rules for the Southern District of Texas

| Citation | Pages |
|---|---:|
| Bankruptcy Local Rule 9013-2 | 19, 30, 31 |

## STATEMENT OF ISSUES PRESENTED

Appellant 2425 WL, LLC (the "Appellant" or "2425 WL") presents three issues for consideration in this appeal (the "Appeal"):

1. Is the order (the "Disallowance Order") disallowing 2425 WL's proof of claim ("Claim No. 7") rendered moot by the disallowance of Claim No. 7 in the confirmed plan of liquidation (the "Plan")?

2. Is there any evidence to support the Bankruptcy Court's conclusion that 2425 WL's claim was fraudulent?

3. Was it improper for the Bankruptcy Court to base its decision disallowing 2425 WL's Proof of Claim on the testimony of witnesses who were not disclosed until two days before the hearing?

The appellee Christopher R. Murray (the "Appellee" or "Trustee"), formerly the chapter 11 trustee and now liquidation trustee under the confirmed plan of liquidation in the underlying bankruptcy case, agrees that these are the appropriate issues presented to this Court for decision.

2425 WL also argues several extraneous issues that are not presented as issues for determination in its brief or its designation of issues on appeal [Dkt. 3-1] and were not argued before the Bankruptcy Court. These arguments relate to the Bankruptcy Court's evaluation of documents evincing the loan, the credibility of the Trustee's witnesses, the veracity of Ali Choudhri, and whether the reference made to the United States Attorney should be withdrawn. These issues are not properly before this Court and so the Trustee addresses them only briefly below.

1

## JURISDICTIONAL STATEMENT

The Bankruptcy Court had jurisdiction over the bankruptcy case, filed on December 5, 2023, under 28 U.S.C. §§§ 157(a)-(b), 1331, and 1334(a).

This Court has general jurisdiction over the Appeal. 28 U.S.C. § 158(a)(1). However, the Court does not have jurisdiction to hear whether the reference made to the United States Attorney should be withdrawn because it is not a final judgment, order, or decree. *Cf. Zente v. Credit Mgmt., L.P.*, 789 F.3d 601, 604 (5th Cir. 2015) (addressing referrals for attorney misconduct to disciplinary boards).

## STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's findings of fact for clear error, while conclusions of law and mixed questions of fact and law are reviewed *de novo*. *In re Seven Seas Petroleum Inc*, 552 F.3d 757, 583 (5th Cir. 2008); *see also* Fed. R. Bankr. P. 8013. Matters within the discretion of a bankruptcy court are reviewed only for abuse of discretion. *In re Gandy*, 299 F.3d 489, 494 (5th Cir. 2002).

Each of the issues presented in this appeal are governed by different standards. Whether the Disallowance Order was moot is a question of law and evaluated *de novo*. Whether there was any competent evidence presented to support the Bankruptcy Court's conclusion that 2425 WL's claim was fraudulent is evaluated for clear error. Whether it improper for the Bankruptcy Court to base its decision disallowing Claim No. 7 on the testimony of witnesses who were not disclosed until

2

two days before the hearing—i.e., denying 2425 WL's request for a continuance—is a question of abuse of discretion.

## STATEMENT OF THE CASE & RELEVANT BACKGROUND

On September 9, 2024, the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") entered the Disallowance Order sustaining the Trustee's objection to 2425 WL's Claim No. 7, thereby implementing its oral ruling from September 6, 2024, and supplementing its findings and conclusions set out in that oral ruling. [R.0003719-003721]. The Bankruptcy Court also indicated that it was making a referral to the U.S. Attorney for the Southern District of Texas to investigate whether criminal charges against Mr. Choudhri for filing a false proof of claim were warranted. This Appeal is with respect to that decision.

### A.    Proof of Claim No. 7 and Documentation Attached Thereto.

On March 31, 2024, 2425 WL filed proof of claim no. 7 with the Bankruptcy Court and filed an amended proof of claim on June 28, 2024 (as amended, "Claim No. 7"). [R.002174-002229]. The total amount of the asserted claim was $22,968,231.58. This obligation was allegedly secured by a second lien on the real property located at 2425 West Loop South, Houston, Texas (the "Property").

2425 WL asserted that Claim No. 7 arose in connection with a transaction regarding the Property that closed on May 23, 2018 (the "2018 Transaction"). In the

2018 Transaction, the Property was sold from 2425 WL to Galleria 2425 Owner, LLC, the debtor in the underlying bankruptcy case (the "<u>Debtor</u>"). [R.002481, 002524, 003743-3744]. The purpose was essentially a refinancing of the Property allowing 2425 WL's beneficial owner—Ali Choudhri—to cash out on his equity in the Property. Mr. Choudhri was also the largest beneficial owner of both the seller (2425 WL,) and the buyer (the Debtor).

It is undisputed that there were at least two lenders in the 2018 Transaction. The National Bank of Kuwait ("<u>NBK</u>") was the senior lender, and Naissance Galleria, LLC ("<u>Naissance Galleria</u>") was the mezzanine lender. [R.002481, 002524, 003744-003745]. Naissance Galleria was an entity created by Azeemeh Zaheer for the sole purpose of making the mezzanine loan. (Sept. 6, 2024, Hrg. Tr. 21:16-21 [R.003742]). The Debtor's corporate structure and the key terms of the loans are reflected in the following chart:



[R.002598].

Together, NBK and Naissance Galleria provided the Debtor with $67.775 million to purchase the Property. [R.002481, 002524, 003744]. NBK provided a senior loan of $51.675 million to the Debtor that was secured by the Property. [R.002603, 002608-002609]. Naissance Galleria provided the mezzanine loan of $16.1 million to the 100% owner of the Debtor, Galleria 2425 JV, LLC. [R.002481, 002524, 003744-3745].

2425 WL asserted that it was *also* a lender in connection with the 2018 Transaction. Attached to Claim No. 7 were (a) a calculation of prepetition interest, (b) a note with an indicated date of May 23, 2018 (the "Purported Note") [R.002178-002181], (c) an unofficial copy of the deed of trust filed in the Harris County real property records referencing and securing that Purported Note (the "Deed of Trust") [R.002182-002195], and (d) a settlement statement with respect to the 2018 Transaction (the "Settlement Statement") [R.002196-002201]. Claim No. 7, the Purported Note, and the related Deed of Trust were each signed by Ali Choudhri. [R.002176, 002181, 002189].

**B.      Objection to Claim by the Trustee, Response by 2425 WL, and Reply by the Trustee.**

In his objection to Claim No. 7 [R.000111-000122], the Trustee asserted that the claim should be disallowed because it did not reflect an enforceable obligation

against the Debtor in the underlying chapter 11 case. The Trustee presented three

alternative bases for this position:

- First, the Trustee asserted that the Purported Note was unenforceable because it was forged by Ali Choudhri in 2021 and no consideration had been given by 2425 WL in exchange for the Purported Note.

- Second, in the alternative, if the Purported Note was not a fraud—i.e., it was created in 2018 on account of a loan—it was unenforceable because it was executed by Mr. Choudhri without actual or apparent authority because only Azeemeh Zaheer could bind the Debtor at that time.

- Third, the Trustee argued that the doctrine of quasi-estoppel applied to prevent 2425 WL from asserting that it made a loan to the Debtor in connection with a May 23, 2018, transaction because it executed a Settlement Statement that failed to reflect that loan and the other parties to the transaction (including NBK, Naissance Galleria, and the Debtor) would be negatively affected.

The Trustee attached substantial exhibits to his claim objection [R.000127-000365],

essentially previewing the evidence and arguments that he would present at trial.

After the Trustee filed his claim objection but before the deadline for 2425

WL to respond to the Trustee's claim objection, the Bankruptcy Court entered an

order confirming the Plan in the chapter 11 case. [R.000439-000479]. The Plan

addresses the treatment of Claim No. 7 as an "insider claim" [R.000450-000451;

000457-000458]. Insider claims were disallowed under the Plan. 2425 WL appealed

the confirmation order, and such appeal is pending before the United States Court of

Appeals for the Fifth Circuit as Case No. 24-20541.

After confirmation of the Plan, 2425 WL responded to the Trustee's objection

to Claim No. 7. [R.000480-000482]. In addition to procedural objections not pursued

in this Appeal, 2425 WL asserted that "[t]he evidence at trial will prove that this was an arm's-length, valid transaction." [R.000481]. Further, 2425 WL specifically argued that the confirmation of the Plan **_did not_** render the Trustee's claim objection moot:

> 8.    **Effect of Chapter 11 Plan.** The Chapter 11 plan has no binding, collateral estoppel, or _res judicata_ effect on this proof of claim or the Trustee's objection. The Trustee may argue that this Court's plan confirmation order entered June 22, 2024 (Docket No. 566), renders the proof of claim moot. However, as a matter of law, that is incorrect. Both _res judicata_ and collateral estoppel require that an order be a "final order". NBK's plan is neither effective nor substantially consummated on its own terms. This Court's confirmation order is not a final order as it remains subject to appeal. 2425 WL, LLC intends to file a notice of appeal and prosecute the appeal pursuant to 28 U.S.C.

[R.000481-000482].

Based on 2425 WL's position that the objection to Claim No. 7 was not moot, the Trustee filed a reply [R.000485-000515] and began preparing for trial set on July 24, 2024. In the reply, the Trustee specifically addressed the procedural issues raised by 2425 WL and argued that the objection and documents had already rebutted the _prima facie_ validity of Claim No. 7 [R.00493-000494]. On July 22, 2024 (i.e., two days before the scheduled trial), both the Trustee and 2425 WL filed their witness and exhibit lists. [R.000516-000521; 001343-001344; 001911-001912].

**C.      Trial on Trustee's Claim Objection.**

The trial did not go forward on July 24, 2024. [R.000065]. At the request of 2425 WL, the Bankruptcy Court continued the trial to September 6, 2024. [R.000065]. Counsel to 2425 WL agreed to that trial date. [R.003726].

During this period, the Trustee continued to develop evidence regarding his objection to Claim No. 7. The Trustee first sent written discovery consisting of interrogatories, requests for production, and requests for admission on 2425 WL. [R.002991-003015]. 2425 WL did not respond to the Trustee's written discovery, and the requests for admission were deemed admitted pursuant to Fed. R. Civ. P. 36. [R.003700-003703]. Additionally, the Trustee located and served subpoenas on two witnesses, Azeemeh Zaheer and Christopher Wyatt. (Sept. 6, 2024, Hrg. Tr. 4:15-19, 20:22-24, 60:17-18 [R.003725, 003741, 003781]). Ms. Zaheer was out of the country on July 24, 2024, and would not have been available as a witness on that date. (Sept. 6, 2024, Hrg. Tr. 20:25-21:6 [R.003741-003742]). The Trustee filed his witness and exhibit list with the Bankruptcy Court for the September 6 trial prior to 12:00 p.m. on September 4, 2024, as required by the Bankruptcy Local Rules.

At 10:05 p.m. on September 5—fewer than 11 hours before the September 6 trial—2425 WL filed an emergency motion requesting that the Bankruptcy Court terminate or deny the claim objections set for September 6, 2024, as moot or continue the hearings. [R.003704-003709, 003726]. 2425 WL asserted that (a) the

Trustee's claim objections were moot because of the confirmed Plan and (b) Mr. Choudhri was sick and therefore unable to assist in preparing for the witnesses designated by the Trustee. The Trustee filed a response. [R.003711-003717].

At the outset of the September 6 trial, the Bankruptcy Court took up 2425 WL's motion filed the night before. The Court denied the emergency motion on the record because (a) it was the second request for a continuance, (b) the motion was filed at 10:05 p.m. the night before the trial even though Mr. Choudhri's unavailability would have been known before that, and (c) the position on mootness was inconsistent with the position 2425 WL asserted in the responses to the claim objections. (Sept. 6, 2024, Hrg. Tr. 4:25-6:11 [R.003725-003727]). The Bankruptcy Court then commenced with the trial on the merits.

The trial on the Trustee's objection to Claim No. 7 was the first of several claim objections set for September 6, 2024. The Trustee, through counsel, presented arguments and introduced into evidence testimony from Ms. Zaheer and Mr. Wyatt as well as several exhibits. [R.003723]. 2425 WL cross-examined Ms. Zaheer and Mr. Wyatt but did not present any separate evidence. (Sept. 6, 2024, Hrg. Tr. 73:17-21 [R.003794]).

## D.    Evidence Presented at the Trial

The evidence presented at the trial supported the Trustee's allegations in his objection to Claim No. 7. The Purported Note was ***not*** on account of any loan made

by 2425 WL to the Debtor. Rather, Mr. Choudhri forged the Purported Note in 2021 when the Debtor was facing financial distress from the bankruptcy of Stage Stores, Inc. and disputes with the National Bank of Kuwait ("NBK") were arising. Further, Mr. Choudhri did not have authority to execute the Purported Note on May 23, 2018, the date indicated in the Purported Note. The key evidence is set out below.

      *i.*   *Claim No. 7*

The documentation attached to Claim No. 7 itself called into question the validity of the Purported Note. The Purported Note indicated that it was executed at the same time as the related Deed of Trust. [R.002178]. However, the jurat on the Deed of Trust indicated that the instrument was acknowledged in 2021. [R.002189]. Further, the jurat was typed into the document and there was reflected in the bottom left corner of the document a document control number—521550.000001 24808189.2—that was consistent throughout the Deed of Trust. [R.002194]. The Trustee argued at the September 6, 2024, trial that this demonstrated that the Purported Note and Deed of Trust were created in 2021, not in 2018 when indicated by the face of the documents. (Sept. 6, 2024, Hrg. Tr. 82:10-83:7 [R.003803-003804]).

      *ii.*   *Testimony of Azeemeh Zaheer*

The testimony presented by Ms. Zaheer confirmed the suspicions raised by the documents attached to Proof of Claim No. 7. Among other things, she testified on direct examination that:

- Ms. Zaheer was among those who devised the structure of the 2018 Transaction, she brought in Naissance Galleria as the mezzanine lender, and she set up the corporate structure of the Debtor and the entities owning the Debtor. (Sept. 6, 2024, Hrg. Tr. 21:7-22:17 [R.003742-003743]). She was "very familiar" with the 2018 Transaction. (Sept. 6, 2024, Hrg. Tr. 22:23-24:3, 25:17-21 [R.003743-003745, 003747]).

- There were two financing vehicles related to the 2018 Transaction. NBK provided a senior loan for $51.2 million to the Debtor and Naissance Galleria provided a mezzanine loan (i.e., to the equity owner of the Debtor)[1] in the amount of $16.1 million. (Sept. 6, 2024, Hrg. Tr. 23:19-25 [R.003744]). There was "absolutely not" any other financing with respect to the 2018 Transaction. (Sept. 6, 2024, Hrg. Tr. 21:7-22:17 [R.003742-003743]). Specifically, there was not any $14.7 million second lien loan that was part of the 2018 Transaction. (Sept. 6, 2024, Hrg. Tr. 32:13-15 [R.003752]).

- Ms. Zaheer, in her role as the sole managing member of Naissance Capital Real Estate, the entity in control of Galleria 2425 JV, the sole owner of the Debtor, executed on behalf of the Debtor (a) the loan agreement between the Debtor and NBK,[2] (b) the promissory note issued by the Debtor to NBK,[3] (c) the deed of trust issued to NBK,[4] and (d) the assignment of rents and leases to NBK.[5] (Sept. 6, 2024, Hrg. Tr. 27:6-30:21 [R.003748-003751]). Additionally, Ms. Zaheer executed

---

[1] [R.002666].

[2] [R.002595].

[3] [R.002616].

[4] [R.002638].

[5] [R.002653].

the mezzanine loan agreement on behalf of Galleria 2425 JV LLC, the parent company of the Debtor.[6] (Sept. 6, 2024, Hrg. Tr. 30:22-32:12 [R.003751-003753]).

- Only Naissance Capital Real Estate had authority to act on behalf of the Galleria 2425 JV, the sole owner of the Debtor, prior to January 2021. (Sept. 6, 2024, Hrg. Tr. 33:12-38:21 [R.003754-003759]).[7] Naissance Capital Real Estate acted through Ms. Zaheer or Moussa Hussein. (Sept. 6, 2024, Hrg. Tr. 33:19-37:3 [R.003754-003758]). Mr. Choudhri did not have authority to execute documents on behalf of the Debtor or Galleria 2425 JV prior to January 2021. (Sept. 6, 2024, Hrg. Tr. 37:4-38:1 [R.003758-003759]).

- Although there was no $14.7 million second lien loan in connection with the 2018 Transaction, around the end of 2020, Mr. Choudhri requested that Ms. Zaheer execute documents creating a second lien against the Property in that amount. (Sept. 6, 2024, Hrg. Tr. 32:13-33:11 [R.003753-003754]). Ms. Zaheer did not feel comfortable signing the documents, asked to send the documents to a lawyer, and ultimately never signed the documents requested by Mr. Choudhri. *Id.*

Under cross-examination by 2425 WL (Sept. 6, 2024, Hrg. Tr. 39:21-59:8 [R.003760-003780]), Ms. Zaheer reiterated the key points of her testimony.

### iii.    *Testimony of Christopher Wyatt*

Mr. Wyatt's testimony was also consistent with the Trustee's assertions in his objection. Among other things, he testified on direct examination that:

- Mr. Wyatt was the chief operating officer of Jetall Companies Inc., another entity owned by Mr. Choudhri, in which role he became familiar with the various businesses owned by Mr. Choudhri. (Sept. 6, 2024, Hrg. Tr. 61:5-21 [R.003782]). 2425 WL was among the entities

---

[6] [R.002747].

[7] The Purported Note was executed by Ali Choudhri as "authorized agent" of Galleria 2425 JV. [ROA.002181].

12

with respect to which Mr. Wyatt became familiar. (Sept. 6, 2024, Hrg. Tr. 62:1-10 [R.003783]).

- Mr. Wyatt ceased working for Jetall Companies in October 2020 after (a) Mr. Wyatt became uncomfortable with transactions reflected in business records and (b) Mr. Choudhri asked Mr. Wyatt to lie before an arbitration panel regarding Mr. Choudhri's ownership of an entity called "Dalio." (Sept. 6, 2024, Hrg. Tr. 63:1-18 [R.003784]).

- Mr. Wyatt became familiar with the 2018 Transaction in or around June 2020 after Mr. Choudhri directed Mr. Wyatt to draft a note and deed of trust for 2425 WL. (Sept. 6, 2024, Hrg. Tr. 64:1-14 [R.003785]). The idea was to have Ms. Zaheer execute that note. *Id.* Mr. Wyatt looked at the closing documents related to the 2018 Transaction to determine whether there was a $14 million loan related to the note and deed of trust Mr. Choudhri wanted created and "found out that there was never a loan . . . [t]here was never a note." *Id.*

- Mr. Wyatt told Mr. Choudhri that Mr. Wyatt "didn't think it was proper to try to after-the-fact create a document and file it and record it to try to get leverage in a bankruptcy case." (Sept. 6, 2024, Hrg. Tr. 64:15-18 [R.003785]).

- The Settlement Statement related to the 2018 Transaction was among the documents that Mr. Wyatt reviewed in connection with the 2018 Transaction. (Sept. 6, 2024, Hrg. Tr. 65:2-21 [R.003786]). The $14.7 million "Seller Credit to Buyer" reflected therein was the basis for the note that Mr. Choudhri asked Mr. Wyatt to create. (Sept. 6, 2024, Hrg. Tr. 65:22-66:5 [R.003786-003787]). Mr. Choudhri described this amount as his "equity out of the closing." (Sept. 6, 2024, Hrg. Tr. 66:6-8 [R.003787]). Mr. Wyatt's understanding based on working in banking was that this language in the Settlement Statement did not reflect a loan. (Sept. 6, 2024, Hrg. Tr. 66:3-13 [R.003787]).

- Mr. Wyatt searched "everywhere" for an existing note from the Debtor to 2425 WL in connection with the 2018 Transaction, but could not find any such note. (Sept. 6, 2024, Hrg. Tr. 67:1-8 [R.003788]). Mr. Choudhri told Mr. Wyatt that they would need to create a new note. *Id.*

13

2425 WL had the opportunity to cross-examine Mr. Wyatt, and Mr. Wyatt confirmed the key points of his testimony. (Sept. 6, 2024, Hrg. Tr. 68:12-73:12 [R.003787-003794]). Further, during that cross-examination, Mr. Wyatt testified that Mr. Choudhri forwarded Mr. Wyatt a voicemail message from Ms. Zaheer in which Ms. Zaheer informed Mr. Choudhri that she was not comfortable with executing a new note. (Sept. 6, 2024, Hrg. Tr. 70:11-15 [R.003791]).

### iv.    Admitted Documentary Evidence

In addition to the testimony of Ms. Zaheer and Mr. Wyatt, the Trustee introduced into evidence twenty-seven (27) documents filed with the Bankruptcy Court at ECF Nos. 692-1 through 692-27. [R.003723]. The key documents referenced in the Trustee's closing arguments (Sept. 6, 2024, Hrg. Tr. 73:22-87:2 [R.003794-003808]) were the following:[8]

- Settlement Statement [R.002222-002229] (admitted as ECF No. 692-4);

- January 31, 2024, Hearing Transcript [R.002230-002455] (admitted as ECF No. 692-5);

- 12 C.F.R. Pt. 1024, App. A [R.002456-002471] (admitted as ECF No. 692-6);

- Requests for Admission to 2425 WL [R.002991-003698] (admitted as ECF No. 692-25);

- NBK Loan Agreement [R.002518-002602] and specifically Ex. A [R.00259] (admitted as ECF No. 692-8).

---

[8] The Trustee also presented arguments related to these documents in his briefing.

14

- NBK Loan Memo [R.002472-002517] (admitted as ECF No. 692-7);

- Mezzanine Loan Agreement [R.002662-002763] (admitted as ECF No. 692-12);

- Purported Note issued by Debtor to 2425 WL [R.002203-002206] (admitted as ECF No. 692-2);

- Deed of Trust [R.002207-002221] (admitted as ECF No. 692-3);

- Note to NBK [R.002603-002616] (admitted as ECF No. 692-9);

- Deed of Trust to NBK [R.002617-002646] (admitted as ECF No. 692-10);

- Assignment of Leases to NBK [R.002647-002661] (admitted as ECF No. 692-11);

- Transfer of Tax Lien [R.002764-002767] (admitted as ECF No. 692-13);

- Tax Lien Contract [R.002768-002776] (admitted as ECF No. 692-14);

- Foreign LLC Application of Debtor [R.002778-002782] (admitted as ECF No. 692-16);

- Foreign LLC Application of Galleria 2425 JV LLC [R.002783-002787] (admitted as ECF No. 692-17);

- Galleria 2425 JV LLC Company Agreement [R.002788-002837] (admitted as ECF No. 692-18);

- Galleria 2425 JV LLC Unanimous Consent [R.002838-002840] (admitted as ECF No. 692-19);

- Notice of Rejection in Stage Stores Bankruptcy [R.002841-002918] (admitted as ECF No. 692-20);

- September 16, 2021, Notice of Foreclosure Sale by NBK [R.002919-002930] (admitted as ECF No. 692-21);

- September 29, 2021, Petition by Debtor against NBK [R.002931-002975] (admitted as ECF No. 692-22);

- Notice of Foreclosure Sale by 2425 WL; [R.002976-002982] (admitted as ECF No. 692-23); and

- Unrecorded Substitute Trustee's Deed to 2425 WL [R.002983-002990] (admitted as ECF No. 692-24).

The Trustee argued in closing that each of these documents supported the Trustee's objection to Claim No. 7 and confirmed the testimony of Ms. Zaheer and Mr. Wyatt.

### E. The Bankruptcy Court's Oral Ruling and Subsequent Written Disallowance Order.

After hearing closing arguments by the Trustee and 2425 WL, the Bankruptcy Court entered an oral ruling sustaining the Trustee's objection to Claim No. 7. (Sept. 6, 2024, Hrg. Tr. 88:23-91:12 [R.003809-003812]). The Bankruptcy Court found there was "clear and convincing evidence" that Claim No. 7 should be disallowed. Among other things, the Bankruptcy Court found (a) the Purported Note was not part of the 2018 Transaction, (b) there was no consideration for the Purported Note, (c) the Purported Note was a fraudulent note, and (d) Mr. Choudhri did not have authority to execute the Purported Note at the time it was allegedly signed. The Bankruptcy Court also indicated that he intended to make a criminal referral based on the false proof of claim filed.

On September 9, 2024, the Bankruptcy Court followed up on its oral ruling with the Disallowance Order. [R.003719-003721]. The Disallowance Order further set out the Bankruptcy Court's findings of fact and conclusion of law. Importantly,

the Bankruptcy Court indicated that it "finds both Zaheer and Wyatt to be incredibly competent witnesses." [R.003720].

### F.    2425 WL's Motion to Reconsider

On September 23, 2024—seventeen (17) days after the Bankruptcy Court's oral ruling and fourteen (14) days after the entry of the Disallowance Order—2425 WL filed a motion for reconsideration and relief from judgment (the "Motion for Reconsideration"). [R.003821-003840]. The Motion for Reconsideration largely follows the arguments made by Appellant in the present Appeal.

The Bankruptcy Court denied the Motion for Reconsideration on September 24, 2024, upholding its determinations in its oral ruling and the Disallowance Order and rejecting the arguments raised by 2425 WL. [R.004333-004335]. In addition to finding that the Motion for Reconsideration was untimely, the Bankruptcy Court considered the substance of the motion and set out its reasons for denying the motion.

### SUMMARY OF ARGUMENT

Failing to present evidence at the Hearing, despite having 95 days to prepare, Appellant seeks to come before this Court to litigate the validity of the Purported Note based on conclusory statements, out-of-record evidence, and misinterpretation of the applicable law. The evidence before the Bankruptcy Court supporting its decision was overwhelming. Indeed, it is difficult to see how the Bankruptcy Court could have come to any other ruling based on the evidence presented.

2425 WL first contends that both the Motion for Reconsideration and this Appeal are timely. While this is debatable based on the Bankruptcy Court's oral ruling on September 6, 2024, the Trustee does not dispute that the matters were timely raised for purposes of this Appeal.

2425 WL's second contention is that the Disallowance Order is rendered moot by the disallowance of Claim No. 7 through the Plan. As noted by the Bankruptcy Court, this is directly contrary to the arguments presented in 2425 WL's written response to the Trustee's objection to Claim No. 7. Moreover, it is simply inaccurate. Because of 2425 WL's appeal of the order confirming the Plan, the Trustee's objection to the claim was not moot. 2425 WL's ongoing appeal creates the possibility that the Plan will be overturned and thus Claim No. 7 not be disallowed pursuant to the Plan. The Trustee therefore has a concrete interest in the litigation, and the Bankruptcy Court was addressing a dispute with respect to which it could grant effectual relief.

2425 WL's third contention is that the Bankruptcy Court misinterpreted the evidence presented at the Hearing, claiming there is nothing fraudulent about the Purported Note, the Deed of Trust, or the underlying loan they represent. That is a frivolous position. The Trustee presented two live witnesses at the September 6, 2024, trial on the claim objection who testified that the Purported Note was fabricated after the fact. 2425 WL had the opportunity to—and did—cross examine

these witnesses and the Bankruptcy Court found the witnesses to be credible and "incredibly competent witnesses." Their testimony was buttressed by substantial documentary evidence indicating that there was no $14.7 million loan from 2425 WL to the Debtor in connection with the 2018 Transaction and a basis to determine that Mr. Choudhri fabricated the Purported Note in 2021.

2425 WL's fourth contention is that the Bankruptcy Court erred in crediting the Trustee's witnesses' testimony or doubting Mr. Choudhri's veracity. This lacks foundation and relies on out-of-record, conclusory statements. 2425 WL asserts essentially that the Bankruptcy Court should have granted its requested continuance. However, Bankruptcy Local Rule 9013-2(c) demonstrates the Trustee properly designated its witnesses two days before the September 6 hearing. At best, 2425 WL was simply unprepared. The Bankruptcy Court's decision not to grant a further continuance requested for the first time at 10:05 p.m. the night before a 9:00 a.m. trial is not an abuse of discretion. Further, although 2425 WL devotes seven pages of its brief to assassinating the character of Ms. Zaheer and Mr. Wyatt, there is no evidence to support these contentions, and even if there was evidence, it was not presented to the Bankruptcy Court at the September 6, 2024, trial. Credibility determinations are left to the finder of fact and are only overturned if a witness cannot be credible as a matter of law.

Finally, while not presented as an issue for appeal, Appellant requests this Court withdraw the referral made by the Bankruptcy Court to the United States Attorney. A referral to the U.S. Attorney is not a final order that can be appealed. It merely calls for the U.S. Attorney to investigate an issue and initiate criminal charges if appropriate. Any decision to criminally charge Mr. Choudhri is subject to the prosecutorial discretion of the U.S. Attorney and Mr. Choudhri would have all the rights of any other person charged with a crime. And even if the issue was appealable, the evidence presented at the September 6, 2024, trial was sufficient for the Bankruptcy Court to believe that further investigation by the U.S. Attorney was warranted.

## ARGUMENT

### A.    The Claim Objection was not moot and the Bankruptcy Court had jurisdiction to enter the Disallowance Order.

2425 WL's argument that the Trustee's objection to Claim No. 7 was moot is built on the faulty premise that the Confirmation Order extinguished the Bankruptcy Court's ability to grant any effectual relief whatsoever. This position ironically ignores the impact of 2425 WL's own appeal of the order confirming the Plan pending before the U.S. Court of Appeals for the Fifth Circuit.

A proceeding is moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012). Where the parties have a concrete interest in the outcome of

litigation, however small, the case is not moot. *Id*. Even if enforcement is uncertain, a dispute is not moot as long as the court retains the ability to issue an order that could potentially affect the parties. *Chafin v. Chafin*, 568 U.S. 165, 133 S. Ct. 1017 (2013).

First, it is worth pointing out that the Bankruptcy Court expressly retained jurisdiction to consider the Trustee's objection to Claim No. 7. The provisions of the Plan and order confirming the Plan demonstrate the Bankruptcy Court expressly intended to retain jurisdiction regarding *pending* claim objections, such as Claim No. 7, post-confirmation. Article X(d) of the Plan provides jurisdiction shall be retained post-confirmation with respect to "hearing and determining all objections to claims, controversies, suits and disputes against the Debtor or that may be pending as of or initiated after the Effective Date." [R.000466].

The parties also retained a concrete interest in the outcome of the Trustee's objection to Claim No. 7 because of 2425 WL's appeal of the confirmation of the Plan. Although perhaps unlikely, if 2425 WL is successful in its appeal of the confirmation order, Claim No. 7 would no longer be disallowed pursuant to the Plan. Without the Plan, there would be nothing disallowing Claim No. 7. This potential change in the treatment of Claim No. 7, gives the parties an interest and allowed the Bankruptcy Court grant effectual relief. Indeed, 2425 WL argued that the Trustee's objection was ***not*** moot in its response thereto. [R.000481-000482].

Under these circumstances, the allowance or disallowance of Claim No. 7 was not moot, and the Bankruptcy Court retained the authority to make that determination. Further, the Bankruptcy Court had ample basis to apply principles of estoppel to prevent 2425 WL from changing its position on the literal eve of trial after the Trustee had subpoenaed witnesses and was prepared to prove his case. Further, if the issue were really moot, 2425 WL would not be pursuing this Appeal.

**B.    Substantial evidence was presented to the Bankruptcy Court to support the conclusion that 2425 WL's claim was fraudulent.**

The second issue submitted to this Court to decide is whether there is "*any* evidence to support the Bankruptcy Court's conclusion that 2425 WL's claim is fraudulent[.]" 2425 WL goes on to argue that "there is *absolutely no evidence* to question the validity or enforceability of the Promissory Note, the Deed of Trust, or the loan they evince." That is a frivolous argument. There was ample and indeed uncontroverted evidence before the Bankruptcy Court and reflected in the record in this Appeal that Mr. Choudhri forged or caused to be forged the Purported Note upon which Claim No. 7 was based.

A properly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. Fed. R. Bankr. P. 3001(f). However, courts must disallow the claim after an objection if it is unenforceable against the debtor or property of the Debtor. 11 U.S.C. § 502(b)(1). The burden is thus on the objecting party to produce evidence that is at least of probative force to the evidence presented by the proof of

claim. *In re Fid. Holding Co.*, 837 F.2d 696, 698 (5th Cir. 1988) (citing *In re WHET, Inc.*, 33 B.R. 424, 437 (D. Mass. 1983)). If the objecting party makes this rebuttal, the burden then shifts back to the claimant who must establish the validity and amount of the claim by a preponderance of the evidence. *Id*.

2425 WL asserted that Claim No. 7 was based on the Purported Note, provided on account of a loan by 2425 WL in connection with the 2018 Transaction. The Trustee asserted that the Purported Note was fabricated by Mr. Choudhri in 2021 and 2425 WL did not make a loan to the Debtor in connection with the 2018 Transaction. Fraudulent notes and notes that lack consideration are not enforceable under either New York or Texas law.[9] *ABR Wholesalers, Inc. v. King*, 172 A.D.3d 1929, 1930 (NY App. Div. 4th Dept. 2019); *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 335 (Tex. App.—Houston [14th] 2011). Further, the Trustee asserted that Mr. Choudhri did not have authority to execute the Purported Note on May 23, 2018 (the date indicated in the Purported Note). Under New York, Texas, and Delaware law,[10] notes executed without actual or apparent authority are unenforceable. *See*, e.g., *Halevi Enters. LLC v. Waa Holdings, Inc.*, 2024 Del. Super. LEXIS 205, at *1

---

[9] The Purported Note indicates that it is governed by New York law. [R.002205]. The Trustee alleged that it was executed in Texas [R.000117], and this allegation was not disputed by 2425 WL. In either case, lack of consideration is a defense.

[10] The Debtor was a Delaware limited liability company. Delaware law should apply with respect to issues of corporate authority, but, again, the law of any potentially relevant jurisdiction is in accord.

(Super. Ct. Mar. 19, 2024) (citing *Finnegan Constr. Co. v. Robino-Ladd Co.*, 354 A.2d 142, 144 (Del. Super. Ct. 1976)); *39 Coll. Point Corp. v. Transpac Capital Corp.*, 12 A.D.3d 664, 664 (NY App. Div. 2nd Dept. 2004); *TVO Cobblestone, LLC v. ASI Capital, LLC*, 2023 Tex. App. LEXIS 8202, at *15-16 (Tex. App.—El Paso Oct. 27, 2023). The Trustee presented overwhelming evidence on these points.

  *i.* *Testimony of Azeemeh Zaheer and Christopher Wyatt*

  The Trustee presented testimony by Ms. Zaheer and Mr. Wyatt that tended to prove his theory. The Bankruptcy Court found their testimony credible despite 2425 WL's attempts to confuse the issues on cross examination.

  Ms. Zaheer was among the people who structured the 2018 Transaction. In no uncertain terms, she testified that there was not any $14.7 million loan from 2425 WL to the Debtor in connection with that transaction. Instead, years later, Ali Choudhri requested that Ms. Zaheer fabricate documentation regarding that non-obligation, but she declined. (Sept. 6, 2024, Hrg. Tr. 32:21-33-2 [R.003753-003754]). The reason Mr. Choudhri sought Ms. Zaheer's cooperation in his forgery is because only Ms. Zaheer or another representative of Naissance Capital Real Estate could execute documents on behalf of Galleria 2425 JV, the 100% owner of the Debtor. (Sept. 6, 2024, Hrg. Tr. 21:16-22-9 [R.003742-003743]).

  Mr. Wyatt was the chief operating officer of one of Mr. Choudhri's companies. He testified that, in connection with that role, Mr. Choudhri asked Mr.

Wyatt to create documentation showing a $14.7 million loan from 2425 WL to the Debtor. (Sept. 6, 2024, Hrg. Tr. 64:1-14 [R.003785]). Mr. Wyatt also testified that Mr. Choudhri forwarded him a voicemail from Ms. Zaheer in which she rejected fabricating the note and lien. (Sept. 6, 2024, Hrg. Tr. 70:10-15 [R.003791]). Based on his review of the documents, Mr. Wyatt was confident that there was no note from the Debtor to 2425 WL while he was working with Mr. Choudhri's companies. (Sept. 6, 2024, Hrg. Tr. 66:7-25 [R.003787]). Further, Mr. Wyatt ceased working for Mr. Choudhri's companies after Mr. Choudhri requested that Mr. Wyatt lie in connection with an arbitration proceeding. (Sept. 6, 2024, Hrg. Tr. 63:7-18 [R.003784].

Two witnesses testifying that the Purported Note did not exist as of 2020 and that Mr. Choudhri requested that they assist him in forging such a note is certainly *some* evidence. It is also sufficient evidence. 2425 WL contentions to the contrary are frivolous.

ii.   *The Settlement Statement*

The Settlement Statement attached to Claim No. 7 supports the testimony of Ms. Zaheer and Mr. Wyatt. Rather than a loan from 2425 WL to the Debtor, it reflected a reduction in the purchase price in the amount of $14.7 million designated as a "seller credit to buyer". [R.002196]. The evidence shows this amount was a

25

reduction to the purchase price given by 2425 WL on account of Mr. Choudhri's equity in the Property after the 2018 Transaction. [R.000362].[11] It was not a loan.

The term "seller credit to buyer" typically means that the seller is giving the buyer a reduction in the total sale price. *Johnson v. Kacimi*, 2024 Del. C.P. LEXIS 13, *1-*4 (holding that the "seller credit" was a reduction in the sale price where "seller credit" was given to buyer after seller inflated the agreed upon sale price for its own interests). Under a plain reading of the Settlement Statement, the term "seller credit to buyer" does not indicate the existence of a loan but rather a reduction in sale price.

This general usage of a seller credit is supported by the particular Settlement Statement at issue and its controlling instructions. The Settlement Statement was a "HUD-1," which is promulgated by the Consumer Financial Protection Bureau. Pursuant to the instructions governing such documents—found in Appendix A to Part 1024 (12 C.F.R. PART 1024 Appendix A) [R.002456-003471]—loans are reflected in the following lines:

- Line 202 is used for new loans to finance the acquisition;

- Line 204-209 are used for other financing arrangements or new loans not listed in Line 202;

---

[11] Absent this reduction, one entity owned by Mr. Choudhri (the Debtor) would need to come up with that cash just to pay it to another entity owned by Mr. Choudhri (2425 WL).

- Lines 506-509 are used to reflect seller financing arrangements entered on Lines 204-209.

[R.002458-002459]. 2425 WL admitted that these instructions controlled the Settlement Statement and required all loans to be placed on the above-mentioned lines.[12] [R.003009]. While the Settlement Statement indicates the loans from NBK and Naissance Galleria in lines 202 and 204, respectively [ROA.002199], it does not list any loan from 2425 WL in the appropriate place according to the applicable instructions.

Again, the Settlement Statement certainly constitutes *some* evidence that the Purported Note was not part of the 2018 Transaction but rather later forged by Mr. Choudhri. Indeed, it significantly calls into question the existence of a loan from 2425 WL to the Debtor as part of that transaction. As the Bankruptcy Court indicated at the September 6, 2024, trial on the Trustee's objection, the Settlement Statement "is pretty damn clear[.]" (Sept. 6, 2024, Hrg. Tr. 72:16-19 [R.003793]). A reasonable fact finder could infer that (a) a transaction with tens of millions of dollars changing hands would not leave a $14.7 million loan of the settlement statement and (b) if the Purported Note was not part of the 2018 Transaction, it must have been subsequently forged.

---

[12] The Trustee served on 2425 WL forty (40) requests for admission. [R.002991-3698]. 2425 WL did not respond to these requests within thirty (30) days after being served, or at all. [R.003700-003703]. Therefore, pursuant to Federal Rule of Civil Procedure 36(a)(3) they are deemed admitted. Fed. R. Civ. P. 36(a)(3).

*a. Other Documents Related to the 2018 Transaction*

The other documents effectuating the 2018 Transaction also support the plain reading of the Settlement Statement and the testimony of Ms. Zaheer and Mr. Wyatt. These documents provided the Bankruptcy Court an independent basis for its decision in the Disallowance Order. They include:

- NBK Loan Agreement—Sections 4.24, 5.26, and 6.1(g) of the loan agreement between the Debtor and NBK had specific provisions prohibiting any other loans or indebtedness by the Debtor. [R.002524, 002557].

- Ex. A to NBK Loan Agreement—Exhibit A to loan agreement between the Debtor and NBK described the corporate structure of the Debtor and contained amounts demonstrating the sources of cash related to the 2018 Transaction. [R.002598]. The document demonstrates $14,641,000 of equity going into Galleria 2425 JV. There would not be any equity into the transaction if 2425 WL's "seller credit" was actually a loan. However, reducing the sales price had the same effect as equity provided by the owners of the Debtor.

- NBK Loan Memo—The internal memo of NBK regarding the 2018 Transaction described equity coming from the owners of Galleria 2425 JV and that this additional equity placed the loan to value in an appropriate range even though the loan to cost was higher. This document demonstrates that the equity the owners of the Debtor had in the Property was important to the 2018 Transaction.

- Mezzanine Loan Agreement—Section 4.2.2 of the mezzanine loan agreement between Galleria 2425 JV and Naissance Galleria prohibited any liens in the Property other than "Permitted Encumbrances," which did not include the asserted second lien securing the Purported Note as indicated in Proof of Claim No. 7. [R.002677, 002705].

- Galleria 2425 JV Company Agreement—The company agreement for Galleria 2425 JV (the sole member of the Debtor) dated May 23, 2018 (the date 2425 WL asserts the Purported Note was executed) provided

that the "Naissance Member"—defined as Naissance Capital Real Estate, LLC—was the managing member of the entity. [R.002792, 002796]. However, the Purported Note was executed by Ali Choudhri, not a person affiliated with the Naissance Galleria or Naissance Capital Real Estate. [R.002181].

- <u>Signatures on All Other Documents</u>—Each of the other documents related to the 2018 Transaction executed by the Debtor was signed by Ms. Zaheer on behalf of Naissance Capital Real Estate, the managing Member of Galleria 2425 JV, the sole member of the Debtor. [R.002595, 002616, 002638, 002653, 002746, 002228]. The Purported Note was signed by Mr. Choudhri *directly on behalf of Galleria 2425 JV*, the sole member of the Debtor. [R.002181]. The deed of trust securing the Purported Note was signed by Mr. Choudhri on behalf of *Galleria West Loop Investments II LLC*, managing member of Galleria 2425 JV, LLC, the managing member of the Debtor. [R.002189]. These inconsistencies call into question 2425 WL's assertion that the Purported Note was part of the 2018 Transaction.

A reasonable fact finder could conclude that these documents demonstrate that there was no $14.7 million loan from 2425 WL to the Debtor in connection with the 2018 Transaction and that instead Mr. Choudhri forged the Purported Note after the fact. When coupled with the testimony, the Settlement Statement, and other documents admitted into evidence,[13] it is hard to see how a reasonable fact finder could come to any other conclusion.

---

[13] The other documents admitted largely related to, among other things, Mr. Choudhri's lack of authority to execute the Purported Note and the motivation for Mr. Choudhri's execution of the forged Purported Note. These issues are not presented for decision in this Appeal. Nevertheless, the consistent story told by those exhibits would form a further basis for the Bankruptcy Court's decision.

**C.** **The Bankruptcy Court correctly allowed and credited the testimony of the Trustee's witnesses.**

2425 WL's assertion that the "Bankruptcy Court's decision to allow [the witnesses] testimony despite that late notice separately constitutes reversable error," has no basis in law or fact. 2425 WL merely states this in its brief without any meaningful argument or reference to authority. Further, the Bankruptcy Court's decision to find the testimony of Ms. Zaheer and Mr. Wyatt competent and credibly should not be overturned.

      *i.* *The Bankruptcy Court did not abuse its discretion in 2425 WL's motion to continue or allowing the Trustee to call his witnesses.*

Charitably, 2425 WL is arguing that the Bankruptcy Court abused its discretion when it denied 2425 WL's motion to continue the September 6, 2024, hearing.[14] However, the reasons stated by the Bankruptcy Court on the record demonstrate that there was ample reason for the Bankruptcy Court's decision.

The Trustee timely disclosed his witnesses to 2425 WL. Rule 9013-2(c) of the Bankruptcy Local Rules for the U.S. Bankruptcy Court for the Southern District of Texas directs that "[c]ounsel for each party shall . . . exchange and file exhibit and witness lists with the Clerk of the Court by noon on the Day of Exchange in

---

[14] Counsel for a litigant being unprepared is not grounds to exclude the testimony of a witness. At most, that is grounds to continue a hearing.

accordance with Table 1." Table 1 is contained in Bankruptcy Local Rule 9013-2(m), and provides:

(m)    **Table 1**.

| Scheduled Day for Hearing or Trial | Day of Exchange |
|---|---|
| Monday | Previous Thursday |
| Tuesday | Previous Friday |
| Wednesday | Previous Monday |
| Thursday | Previous Tuesday |
| Friday | Previous Wednesday |

If the Day of Exchange is a legal holiday, the Day of Exchange would be the preceding Day of Exchange. For example, if the Scheduled Day for Hearing or Trial was a Wednesday and the Previous Monday was a legal holiday, the Day of Exchange would be the Previous Friday.

The trial on the Trustee's claim objection occurred on Friday, September 6, 2024. The day of exchange was therefore the previous Wednesday, September 4, 2024. The Trustee timely filed his witness and exhibit list and disclosed his witnesses.

In light of the timely disclosure by the Trustee, the reasons for the Court's denial of 2425 WL's continuance are well founded. The Bankruptcy Court had already granted one request by 2425 WL for a continuance and 2425 WL had agreed to the date and time of the September 6, 2024, trial. (Sept. 6, 2024, Hrg. Tr. 5:9-16 [R.003726]). Further, 2425 WL did not seek a continuance until 10:05 p.m. the night before the 9:00 a.m. trial. *Id.* In exercising its discretion, the Bankruptcy Court reasoned that 2425 WL could have known about Mr. Choudhri's illness before that time. *Id.* In light of the "exceedingly wide" discretion in denying a motion to continue, *Johnson v. Potter*, 364 F. App'x 159, 164 (5th Cir. 2010), the Bankruptcy Court's decision to not grant a further continuance was not an abuse of discretion.

31

> ii. *2425 WL's arguments regarding the credibility of Trustee's witnesses are not based on evidence in the record, were not presented to the Bankruptcy Court, and do not constitute clear error.*

Appellate courts can necessarily only decide the issues before them based on the record developed before the lower courts and should not rest on new evidence. *E.g.*, *Del Bosque v. AT&T Advert., L.P.*, 441 F. App'x 258, 261 n.5 (5th Cir. 2011). Similarly, unless an argument is raised with the trial court "to such a degree that the [trial] court has an opportunity to rule on it," the reviewing court should not address it on appeal. *United States v. Joseph*, 102 F.4th 686, 691 (5th Cir. 2024) (quoting *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994)).

Most of what 2425 WL argues on appeal was not presented to the Bankruptcy Court. There was no evidence before the Bankruptcy Court regarding any "clear motive to lie" by the Trustee's witnesses. Nor did 2425 WL argue to the Bankruptcy Court that the testimony by Ms. Zaheer or Mr. Wyatt was incompetent or in conflict with undisputed facts. These matters should not be raised for the first time on appeal.

Moreover, the Bankruptcy Court affirmatively and expressly found that Ms. Zaheer and Mr. Wyatt were competent witnesses. [R.003720]. Absent testimony that is "incredible as a matter of law"—i.e., a witness testifies about something he or she physically could not have seen or could not have happened under the laws of nature—appellate courts give great deference to a trial court's credibility findings. *United States v. Alaniz-Alaniz*, 38 F.3d 788, 791 (5th Cir. 1994). At *most*, 2425 WL

points to times where the Trustee's witnesses had incomplete knowledge or became confused under vigorous cross examination. But there was no confusion or hesitation in their testimony that the Purported Note was not part of the 2018 Transaction, did not exist in 2020, and that Mr. Choudhri asked them to forge a note with the same principal terms as the Purported Note. There is no basis to second-guess the Bankruptcy Court's evaluation of credibility.

### D. The criminal referral is not a final order which can be appealed under 28 U.S.C. § 158(a)(1).

A judge that has reasonable belief that a criminal bankruptcy offense has occurred, is required to report the facts and circumstances to the appropriate United States Attorney.[15] 18 U.S.C. § 3057(a). Subject to prosecutorial discretion, the U.S. Attorney must then inquire into the facts and, if it appears probable that an offense has been committed, report to the judge and present the matter to a grand jury. *See* 18 U.S.C. § 3057(b).

Federal district courts have jurisdiction to hear appeals from final judgments or orders of the bankruptcy courts. 28 U.S.C. § 158(a)(1). A criminal referral is not a final judgment or order. While it requires at least some consideration by the U.S. Attorney, it does not alter the rights of the subject of the referral. After evaluation, the U.S. Attorney may decline to bring the matter to a grand jury. Further, the grand

---

[15] Bankruptcy crimes are set out in chapter 9 of title 18 of the United States Code.

jury may decline to return an indictment. As a result, there is nothing for this Court to accomplish through the appeal.

Further, even if the issue is appealable, the Bankruptcy Court had a reasonable basis to believe that Mr. Choudhri committed an offense described by 18 U.S.C. § 152. That statute provides, among other things, that it is a criminal offense to "knowingly and fraudulently present any false claim for proof against the estate of a debtor, or uses any such claim in a case under title 11, in a personal capacity or as an agent, proxy, or attorney . . . ." 18 U.S.C. § 152(4). It is also an offense to knowingly or fraudulently make a false declaration, certificate, verification, or statement under penalty of perjury, and proofs of claim are executed under penalty of perjury. 18 U.S.C. § 152(3). For all the reasons set out above, the Bankruptcy Court had evidence before it that (a) Choudhri forged the Purported Note, (b) he knew that the Purported Note was forged, and (c) nevertheless executed Claim No. 7 under penalty of perjury and filed it in the Debtor's bankruptcy case. If so, Mr. Choudhri would have committed the relevant offenses. At a minimum, there was ample justification for further investigation.

## CONCLUSION

Based on the foregoing, the Disallowance Order should be affirmed. The Trustee's objection to Claim No. 7 was not moot, there was substantial and uncontroverted evidence before the bankruptcy court that Claim No. 7 was

fraudulent, a criminal referral is not an order or judgment that is subject to appeal, and the bankruptcy court had ample reason to believe that Mr. Choudhri had committed a criminal bankruptcy offense in any event. The Bankruptcy Court did not err in its ruling. The Disallowance Order should be affirmed.

[*Remainder of Page Intentionally Left Blank*]

Dated: September 26, 2025        **SHANNON & LEE LLP**

*/s/ R. J. Shannon*
R. J. Shannon
S.D. Tex. Bar No. 3196214
Tex. Bar No. 24108062
2100 Travis Street, STE 1525
Houston, TX 77002
Telephone: (713) 714-5770
Facsimile: (833) 71405770
rshannon@shannonleellp.com

*Counsel for Appellee Christopher R.*
*Murray, Liquidation Trustee*

## CERTIFICATE OF SERVICE

I certify that on September 26, 2025, the forgoing document was served through the Court's CM/ECF System on all parties registered to receive such notice and the following parties by separate email:

2425 WL, LLC
c/o J. Carl Cecere
6035 McCommas Blvd.
Dallas, TX 752006
ccecere@cecerepc.com

*/s/ R. J. Shannon*
R. J. Shannon

## CERTIFICATE OF COMPLIANCE
## WITH BANKRUPTCY RULE 8015(a)(7)(B)

This brief complies with the type-volume limitation of Bankruptcy Rule 8015(a)(7)(B) because it contains 8,211 words not including the cover page, table of contents, table of citations, certificates of counsel, signature block, or appendix.

*/s/ R. J. Shannon*
R. J. Shannon