**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| **GALLERIA 2425 OWNER, LLC,** | ) | **Case No. 23-34815** |
| **Debtor.** | ) | |
| **2425 WL, LLC,** | ) | |
| **Appellant,** | ) | |
| **v.** | ) | **Civil Action No. 4:24-cv-03834** |
| **Christopher Murray, Trustee,** | ) | |
| **,** | ) | |
| **Appellee.** | ) | |

_____

**APPELLANT'S REPLY BRIEF**

_____

J. Carl Cecere
State Bar No. 13268300
(admitted pro hac vice)
**Cecere PC**
6035 McCommas Blvd.
Dallas, TX 75206
Telephone: 469-600-9455
ccecere@cecerepc.com

*Counsel for Appellant 2425 WL, LLC*

# TABLE OF CONTENTS

Table of citations ...................................................................................................iii

Argument ............................................................................................................ 1

I.     2425 WL's Motion for Reconsideration and appeal are both timely. ........... 1

II.    The Trustee's Effort to Disallow 2425 WL's claim was moot because 2425 WL's claim was already disallowed under the Bankruptcy Plan. ........ 1

III.   The Bankruptcy Court's decision to disallow 2425 WL, LLP's claim was based on a misimpression of the indisputable facts. ............................ 3

Prayer ............................................................................................................... 10

Certificate of service............................................................................................. 11

Certificate of compliance with type-volume limit............................................................ 12

# TABLE OF CITATIONS

**Cases**

*Arete Partners, L.P. v. Gunnerman*,
  594 F.3d 390 (5th Cir. 2010)..................................................................................7

*Chafin v. Chafin*,
  568 U.S. 165 (2013) ..............................................................................................2

*Knox v. SEIU, Local 1000*,
  567 U.S. 298 (2012) ..............................................................................................2

*Olson v. Schweiker*,
  663 F.2d 593 (5th Cir. 1981) ................................................................................7

*United States v. Santia-Marniquez*,
  609 F.2d 1162 (5th Cir. 1980) (per curiam) ........................................................1

*Williams v. Lyondell-Citgo Ref. Co.*,
  247 F. App'x 466 (5th Cir. 2007)..........................................................................9

**Statutes**

28 U.S.C. § 152......................................................................................................4

Tex. Prop. Code § 5.079 ........................................................................................4

**Rules**

Fed. R. Bankr. 8015(g)........................................................................................12

Fed. R. Bankr. P. 8015(a)(7)(B)(i)......................................................................12

The Trustee's defense of the Bankruptcy Court's decision to disallow 2425 WL's claim serves only to highlight the deficiencies in that decision.

## ARGUMENT

**I.      2425 WL's Motion for Reconsideration and appeal are both timely.**

Indeed, from the beginning, the Trustee is forced to admit that the Bankruptcy Court got it wrong in this case. The Trustee acknowledges that the Bankruptcy Court erred in dismissing 2425 WL's motion for reconsideration as untimely, conceding that the motion was filed on time (*see* Appellee's Br. 18), meaning that the appeal is timely too. The Trustee nevertheless insists that matter is "debatable" because the Bankruptcy Court gave an oral indication of its likely ruling before entering a written order. (*Id.*) But as this issue concerns the Court's jurisdiction over this appeal, the Court should be assured that there is no debate. The timeliness of 2425 WL's motion for reconsideration—and therefore its notice of appeal—is calculated from the date of the Bankruptcy Court's "written ruling," not any "oral" indication of the order it planned to make. (*See* Appellant's Br. 9) (quoting *United States v. Santia-Marniquez*, 609 F.2d 1162 (5th Cir. 1980) (per curiam).) When calculated from the date of the written order, there is no question that the motion was timely.

**II.     The Trustee's Effort to Disallow 2425 WL's claim was moot because 2425 WL's claim was already disallowed under the Bankruptcy Plan.**

The Trustee also does nothing to overcome the fact that his effort to disallow 2425 WL's claim was rendered moot by the Plan Confirmation Order in this case. The Trustee concedes that this order disallowed 2425 WL's claim before the Trustee's own motion for disallowance was decided. So the claim had *already* been disallowed before the Trustee

1

sought to disallow it *again*. The Trustee admits that the sole reason he continued to pursue his separate motion to disallow 2425 WL's claim after entry of the Plan Confirmation Order was simply to add additional reasons why the claim ought to be disallowed—to ensure that if the Plan Confirmation Order was later vacated, then the claim's disallowance would stand. (*See* Appellee's Br. 20, 21.) But this is the very definition of a moot controversy. "[I]t is impossible for a court to grant any effective relief" when the relief requested has already been granted. (*Id*. 20) (quoting *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012).) And the Trustee cannot have a "concrete" interest in obtaining relief that has already been provided. (*Id*. 21.)

The Trustee provides no reason to believe otherwise. The Trustee has not identified a *single* case—anywhere in the country—in which a court allowed a party to bring a motion to obtain relief that had already been granted in a previous order simply as an insurance policy in case the first order was reversed. And the only case the Trustee cites, *Chafin v. Chafin*, 568 U.S. 165 (2013), is nowhere close. *Chafin* concerned the Hague Convention on the Civil Aspects of International Child Abduction, which "generally requires courts in the United States to order children returned to their countries of habitual residence." *Id*. at 168. The question that the Supreme Court addressed in *Chapin* was whether an appeal of an order under the Hague Convention requiring a child to be returned to their country of habitual residence becomes moot "after a child is returned pursuant to such an order." *Id*. The Court held that such a controversy is not moot so long as the parties "continue to vigorously contest the question of where their [child] will be raised." *Id*. at 173.

This is an entirely sensible result. A challenge to an order requiring a child to be

2

returned should not be considered moot even if the child is returned because sending the child to one country does not make the controversy over the child's proper habitual residence go away, and the appellate court can award effectual relief resolving that controversy: If the order requiring a child to be sent to one country is overturned, then the child could be ordered to be sent somewhere else.

Not so here. There is no order this Court could issue related to the Bankruptcy Court's disallowance of 2425 WL's claim that could do anything to impact the Plan Confirmation Order's disallowance of that claim. Accordingly, there is no possibility that *this court* could enter an order that "could potentially affect the parties." (Appellee's Br. 21.)

Furthermore, the fact that the Bankruptcy Court "retained jurisdiction" to consider the Trustee's objection to 2425 WL's secured claim cannot revive this moot controversy. (Appellees' Br. 21.) The court's retention of jurisdiction ensured only that it could address matters that arose after the Plan Confirmation Order was granted—when that order would normally operate as a final judgment. That order did not—and could not—empower the court to grant relief in a moot controversy. For similar reasons, 2425 WL cannot be "estopp[ed]" from challenging the mootness of the Trustee's motion. (*Id*. 22.) Parties cannot waive the right to challenge jurisdiction. And they cannot agree to jurisdiction. For all these reasons, the Trustee's motion was moot and could not be granted.

**III.    The Bankruptcy Court's decision to disallow 2425 WL, LLP's claim was based on a misimpression of the indisputable facts.**

The Trustee's defense of the Bankruptcy Court's decision also fails on the merits,

because he cannot overcome the complete absence of competent evidence to suggest that there is anything fraudulent about the Promissory Note, the Deed of Trust, or the underlying loan they represent.

The first problem is that the Trustee cannot prove that there was any point to this alleged fraud. The Trustee acknowledges that the documents evincing 2425 WL's loan to the Debtor, including the Promissory Note and Deed of Trust, were created, at the latest, in 2021—*years* before Galleria 2425 WL went into the bankruptcy—and thus cannot be part of any scheme to "present[] a false claim" in that bankruptcy. (*See* Appellant's Br. 14) (quoting 28 U.S.C. § 152.) The Trustee maintains that Choudhri "forged" the note in relation to another bankruptcy proceeding relating to "Stage Stores, Inc." (*Id*. 10.) But he offers no evidence to substantiate that accusation. So any motive for 2425 WL to commit fraud completely falls apart.

The Trustee's attempts to disprove the loan's existence are also entirely unavailing. The Trustee entirely omits to mention the fact that the $14.7 million 2425 WL loan arose as a matter of law under Tex. Prop. Code § 5.079 when Galleria 2425 Owner, LLC was unable to pay the balance of the contract price to purchase One West Loop Plaza. (*See* Appellant's Br. 13.) That alone prevents the loan from being deemed fraudulent.

The Trustee also offers no evidence to suggest that the Note and Deed of Trust evinced anything other than a loan. None of the "documentary" evidence that the Trustee relies upon proves otherwise. (Appellee's Br. 19.) The Trustee begins by contending that an entry on a settlement statement recording a "seller credit to borrower" typically reflects "a reduction in the purchase price": a discount in the amount the buyer is willing to accept

4

to close the transaction. (Appellee's Br. 26-27.) The Trustee also emphasizes that 2425 WL did not record the "seller credit" on the portion of the Settlement Statement that is typically reserved for loans. (*Id.*)

But the Trustee later admits that the loan transaction at issue in this case was anything but typical. This is because everyone agrees that the "seller credit" was not a mere reduction in the purchase price. The Trustee insists that the $14.7 million 2425 WL advanced during closing was "equity" that Choudhri obtained out of the transaction—an extra *ownership* interest he gained through the transaction.[1] (Appellee's Br. 28, 30, 32.) Of course, this explanation falls short because Choudhri already owned the entities on both sides of the transaction. (*See* Appellant's Br. 3.) He could not obtain more "equity" in the companies through the transaction.[2] So the amount could not be either "equity" or a "credit." And the Trustee cannot explain what it was—*other* than a loan.

The Trustee's emphasis on the Note fares no better. While the Trustee claims that the Note was fraudulent because Choudhri would not have had authority to execute it at the time of the original loan transaction in 2018, he concedes that Choudhri gained

---

[1] The Trustee intimates that Choudhri himself "described" the loan as "his 'equity out of the closing.'" (Appellee's Br. 13) (quoting ROA.003736-003787.) But Choudhri said no such thing. That statement was merely attributed to him by Chriss Wyatt, the corporate spy who testified against 2425 WL during the motion to disallow. But for all the reasons in 2425 WL's opening brief, his testimony was a fabrication.

[2] The Trustee also emphasizes that the Bank was encouraged to advance the loan to the Debtor based on the "equity" that the Debtor brought into the transaction. (Appellee's Br. 28.) But "equity" in this sense refers not to Choudhri's equity in the Debtor, but to the Debtor's equity in the property: the appraised value of the property over and above the indebtedness of the loan.

authority to execute the Note after "January 2021"—when he took over control of Naissance. (Appellee's Br. 12, 29.) And Choudhri acknowledges that he executed the Note after that date. (*See* Appellant's Br. 15) (citing ROA.000115; ROA.003754.) Choudhri therefore had complete authority to execute documents on its behalf at the time the Note and Deed of Trust were recorded—and to correct the previous failure to execute these documents back in 2018. (*Id*.) Accordingly, to the extent there was any doubt about the loan's validity, the 2021 execution of the Note and Deed of Trust ratified its existence. (*See id*. 16.)

The Trustee's reliance on the loan documents associated with the loan to Galleria 2425 is similarly unavailing. (Appellee's Br. 28.) To the extent the $14.7 million loan was not reflected in the loan documents and their supporting documentation, that was because 2425 WL's loan arose only after the Debtor could not come up with all the money necessary to complete the transaction; but NBK later acknowledged the existence of the loan in spite of its apparent inconsistency with the loan documents. (*See id*. 3-4, 5.) Accordingly, none of the documentary evidence gives any reason to believe that the transaction was fraudulent or improper.

The only evidence that the Trustee advanced to suggest the loan was fraudulent came from the Trustee's witnesses—Azeemah Zaheer and Chris Wyatt. But the Trustee completely fails to demonstrate the competence of their testimony. The Trustee tacitly acknowledges that Wyatt had no familiarity with 2425 WL's loan. (*See* Appellant's Br. 19) (citing ROA.003790.) And while the Trustee repeatedly emphasizes that Zaheer claimed to be familiar with the loan transaction and insisted the $14.7 million provided by 2425

WL was not a "loan" (Appellee's Br. 12) (quoting R.003742-003743), the Trustee completely fails to explain how her testimony can be squared with the facts of this case.

Zaheer insisted that the $14.5 million 2425 WL *put into* the transaction was actually an amount that Choudhri *got out* of the transaction—cash that Choudhri somehow *received* from the transaction as seller resulting from the amount that was left over *after* "the 51.6 million" provided by the Bank "plus the 16.1 million" in mezzanine financing. (*See* Appellant's Br. 20) (ROA.00468.) And the Bankruptcy Court credited that testimony (*Id.*) (citing ROA.003720.) But everyone agrees that the $14.7 million credit represented a *shortfall*, not a *surplus*—demonstrating conclusively that Zaheer *was not* familiar with the basics of the transaction and could not testify competently about its elements. Zaheer's incompetence cannot be dismissed as mere "confusion" (Appellee's Br. 33)—it is core to her ability to provide relevant testimony about the nature of that transaction and the nature of the credit. The Bankruptcy Court's decision to credit her inaccurate and unsupported testimony therefore rested on a fundamental misinterpretation of the evidence. That was clear error. *Olson v. Schweiker*, 663 F.2d 593, 596 (5th Cir. 1981) ("[A] credibility choice based on misinterpretation" of the evidence is "clearly erroneous"); *see also Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010) ("[C]lear error" occurs when "the court misinterpret[s] the effect of the evidence.").

Furthermore, while the Trustee emphasizes that both Zaheer and Wyatt testified that they could not find any note executed in 2018 and that Choudhri executed the substitute note himself only after both Wyatt and Zaheer refused to do so (*see* Appellee's Br. 12, 13-14), the Trustee fails to overcome any of the reasons why these witness's testimony was so

incredible that no rational fact-finder could believe it (*see* Appellant's Br. 18). But even if that testimony were accepted, it merely bolsters the lawfulness of the transaction lawfulness, rather than undermine it, because that testimony shows that Choudhri did not simply "forge[]" the note himself, but went through proper channels to ensure that it was properly executed. (*Id*. 22) When he found that he would have to execute a substitute note himself, he ensured that he was properly empowered to act so that the transaction could be properly ratified.

In any event, the Court erred even in permitting Zaheer and Wyatt to testify—much less treating their testimony as conclusive—when Choudhri was not given a proper opportunity to challenge these witnesses' credibility at the June 6, 2025 Hearing on the Trustee's motion to disallow 2425 WL's claim. Even if the Trustee were correct that Choudhri was given sufficient notice of these witnesses' testimony before the hearing under Southern District Local Rules (*see* Appellee's Br. 30-31), the Trustee cannot explain how Choudhri had sufficient time to develop the numerous issues with the Trustee's reliance on their testimony when he was suffering the after-effects of a debilitating stroke. (*see* Appellant's Br. 22.) The Trustee likewise makes no effort to explain how it was proper for the Bankruptcy Court to disregard the effects of that stroke based on an ex parte conversation with another bankruptcy judge rather than the evidence submitted in this case, or question Choudhri's veracity based on Choudhri's attempts to defend himself from an onslaught of litigation initiated by others. (*See id*. 22-23.)

The Trustee's contention that any of the evidence is not "in the record" is also completely off-base. (Appellee's Br. 32.) All of the evidence cited in 2425 WL's opening

brief came either from the initial briefing and hearing on the motion to disallow itself, or was cited in 2425 WL's motion for reconsideration of the Bankruptcy Court's decision granting that motion. So all of that evidence was properly before the Court. While the Bankruptcy Court had "discretion" whether to consider the "additional materials" submitted in support of the motion for reconsideration, *see, e.g.*, *Williams v. Lyondell-Citgo Ref. Co.*, 247 F. App'x 466, 471 (5th Cir. 2007), the Bankruptcy Court indicated that it did consider the evidence, "address[ing]" it directly in its decision on the motion. (ROA.004334.) That  made the evidence part of the record in this case.

Finally, even if the Court lacked authority to dispose with the referral to the U.S. Attorney, the Court can effectively remedy the erroneous referral by vacating the decision of the Bankruptcy Court and declaring that 2425 WL's claim was not fraudulent..

## PRAYER

For these reasons, and those stated in the opening brief, Appellant Ali Choudhri respectfully requests that the Court vacate the Bankruptcy Court's order on the Trustee's Motion to Disallow Claim of 2425 WL, LLC and withdraw the reference to the United States Attorney.

Respectfully submitted,

*/s/ J. Carl Cecere*

J. Carl Cecere
State Bar No. 13268300
(admitted pro hac vice)
**Cecere PC**
6035 McCommas Blvd.
Dallas, TX 75206
Telephone: 469-600-9455
ccecere@cecerepc.com

*Counsel for Appellant Ali Choudhri*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 10, 2025, a true and correct copy of the foregoing was served via the Court's CM/ECF system to all parties who are deemed to have consented to ECF electronic service, and via email to those listed below.

Christopher R Murray
Jones Murray LLP
602 Sawyer St
Ste 400
Houston, TX 77007
832-529-1999
Fax : 832-529-3393
chris@jonesmurray.com

R. J. Shannon
Shannon & Lee LLP
2100 Travis Street, STE 1525
Houston, TX 77002
713-714-5770
rshannon@shannonleellp.com

*/s/ J. Carl Cecere*
J. Carl Cecere

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

*Certificate of Compliance with Type-Volume Limit,*
*Typeface Requirements, and Type-Style Requirements*

1. This brief complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, excluding the parts of the brief exempted by Fed. R. Bankr. 8015(g), it contains 2,589 words.

2. This brief complies with the typeface and type-style requirements of Fed. R. Bankr. P. 8015(a)(5) because: it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 13-point Times New Roman (and 14 point for footnotes).

Dated: November 10, 2025                    */s/ J. Carl Cecere*
                                                               J. Carl Cecere

                                                               *Attorney of Record for Appellant*